UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ERROL RICHARD DODD,

                              Plaintiff,

                                                          5:19-cv-0560
v.                                                        (LEK/TWD)

PATRICK O'SULLIVAN, et al.,

                              Defendants.
_____

APPEARANCES:

ERROL RICHARD DODD
Plaintiff, pro se
8120 NW Hwy 225A
Ocala, FL 34482


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge


<u>**ORDER AND REPORT-RECOMMENDATION**</u>

       The Clerk has sent to the Court for initial review the *pro se* complaint of Plaintiff Errol

Richard Dodd against Defendants Judge Patrick O'Sullivan, Magistrate Todd Dexter, the State of

New York, and Madison County Family Court.  (Dkt. No. 1.)  Also before the Court is Plaintiff's

application for leave to proceed *in forma pauperis* ("IFP application").  (Dkt. No. 2.)

**I.      BACKGROUND**

       In March 2019, Plaintiff, a resident of Florida, filed his complaint and accompanying IFP

application in the United States District Court for the District of Columbia.  (Dkt. Nos. 1, 2.)  By

Transfer Order filed April 17, 2019, the case was transferred to this District because all

Defendants were located in New York and all actions giving rise to this action allegedly occurred

in Madison County.  (Dkt. No. 3.)  The Transfer Order made no ruling whether Plaintiff should be permitted to proceed without prepayment of the filing fee.  *Id*. at 2.[1]

While Plaintiff's complaint is not a model in clarity, it appears Plaintiff is dissatisfied with the manner in which Defendants have handled his child support and child custody matters. (Dkt. No. 1 at 4, 14-18.)  He alleges his "civil rights have been violated [because he] was not proven to be an 'unfit parent,'" yet his parental rights were nonetheless terminated "without due process" on November 18, 2016, by the Madison County Family Court.  *Id*. at 4.  He is also aggrieved that his children are not receiving counseling services.  *Id*. at 4, 6-7.  Plaintiff seeks restoration of his parental rights and monetary damages.  *Id*. at 4, 14-15, 18.  For a complete statement, reference is made to the complaint.[2]

## II.    IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's IFP application, the Court finds he meets this standard.  Therefore, Plaintiff's IFP application (Dkt. No. 2) is granted.

---

[1]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

[2]  Plaintiff has utilized a *pro se* form complaint for a civil case alleging negligence (28 U.S.C. § 1332; Diversity of Citizenship).  (Dkt. No. 1 at 1-5.)  He also attaches sixteen pages of mostly single spaced run-on paragraphs as "additional support."  *Id*. at 6-21.  Plaintiff devotes several pages of "additional support" to his so-called "proposal/remedy" to "correct the psychological injury that is occurring to the child and ensure [sic] each and every child is set on a course of health, wellness and prosperity through early intervention at key intervals in the child's life."  *Id*. at 6-21.  Should his "proposal/remedy" be implemented by any government, Plaintiff requests, *inter alia*, royalties or a one-time payment of $6.66 Billion.  *Id*. at 14-15.  He continues, "Mr. Trump sir if you're reading this, I know you're a business man and can appreciate a good deal. Well, here it is.  I feel this is a steal under the circumstances facing this county.  May God Bless the U.S.A.  Thank you for reading."  *Id*. at 15.  Plaintiff also invites the Court to read his "human trafficking remedy—also attached which will assist with solving some of the very difficult problems we are having in that area."  *Id*. at 19.

## III.    LEGAL STANDARDS FOR INITIAL REVIEW

Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual

allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*.
In determining whether a complaint states a claim upon which relief may be granted, "the court
must accept the material facts alleged in the complaint as true and construe all reasonable
inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)
(citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in
a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of
the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Additionally, when reviewing a complaint under § 1915(e), courts are guided by the
pleading requirements of the Federal Rules of Civil Procedure. Under Rule 8, a pleading shall
contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled
to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this rule "is to give fair notice of the claim
being asserted so as to permit the adverse party the opportunity to file a responsive answer,
prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable."
*Hudson v. Artuz*, No. 95 CIV. 4768(JSR), 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998[3])
(quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (other citations
omitted)). Under Rule 10, "[a] party must state its claims or defenses in numbered paragraphs,
each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The
purpose of this rule is to facilitate a cogent framing of the issues presented and permit defendants
to properly respond to the allegations of a complaint. *Laspisa v. Citifinancial Does 1 to 20*, 269
F. Supp. 3d 11, 13 (N.D.N.Y. 2017); *Dabney v. Sawyer*, No. 11-CV-0273 (LEK/RFT), 2012 WL
3241571, at *1 (N.D.N.Y. July 17, 2012).

---

[3] Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance
with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## IV.    ANALYSIS

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erec. Co. v. Kroger*, 437 U.S. 365, 374 (1978). If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Federal jurisdiction exists only when a "federal question" is presented (28 U.S.C. § 1331) or where there is "diversity of citizenship" and the amount in controversy exceeds $75,000 (28 U.S.C. § 1332). *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002). When a court lacks subject matter jurisdiction, dismissal is mandatory. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Id*.

Construed liberally, Plaintiff invokes both the Court's diversity jurisdiction (28 U.S.C. § 1332) and federal question jurisdiction (28 U.S.C. § 1331) by asserting claims couched in terms of constitutional deprivations pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.) Ordinarily, the Court would possess subject matter jurisdiction over this action. However, two separate legal doctrines

require dismissal of Plaintiff's complaint.  Additionally, each Defendant is absolutely immune from suit in this case.[4]

### A.    Domestic Relations Exception

The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees."  *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).  This exception recognizes "the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack."  *Thomas v. N.Y.C.*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993) (citing *Ankenbrandt*, 504 U.S. at 703-04).  "The doctrine also rests on the idea that state courts are peculiarly suited to enforce state regulations and domestic relations decrees involving alimony and child custody particularly in light of the fact that such decrees often demand substantial continuing judicial oversight."  *Id*.  The domestic relations exception "is equally applicable whether jurisdiction is asserted under § 1331 or § 1332."  *Tait v Powell*, 241 F. Supp. 3d 372, 376 (E.D.N.Y. 2017).

While Plaintiff has nominally invoked his constitutional rights and, in part, seeks monetary damages, it is clear from his complaint that the primary thrust of his claims is aimed at regaining custody of his children.  For example, Plaintiff states he has not seen his children in two years and asks the Court to restore his parental rights that were terminated without "due process."  (Dkt. No. 1 at 4, 6.)  Specifically, he seeks "full reinstatement of [his] parental rights,

---

[4]  In addition to these substantive matters, Plaintiff's complaint fails to comply with the basic pleading rules identified herein and therefore it is also subject to dismissal on that basis alone. There is nothing short nor plain about Plaintiff's twenty-one page complaint and his claims are not set forth in numbered paragraphs, each limited as far as practicable to a single set of circumstances. *See* Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 10(b).

unrestricted by government or state interest/influence in any way (custody and support)." *Id*. at 14. He also asks for "50/50 joint custody of [his children], parental rights restored." *Id*. at 18.

As the Second Circuit noted, where tort claims "begin and end in a domestic dispute," state courts are better suited to adjudicate the claims. *See Schottel v. Kutyba*, No. 06-CV-1577, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009) (affirming, based on the domestic relations exception, the district court's dismissal of the plaintiff's complaint alleging, *inter alia*, that the defendants "fraudulently misrepresented to the court the former couple's residence in order to file divorce proceedings in New York," and, as a result, plaintiff was "deprived of custody and visitation rights"). As a result, "[f]ederal courts will dismiss actions aimed at changing the results of domestic proceedings, including orders of child custody." *Rabinowitz v. New York*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004).

Here, it is clear Plaintiff's claims center around a child custody dispute litigated in state court. Inasmuch as the complaint concerns a state law domestic relations matter and, in particular, because Plaintiff seeks the return of his children and a 50/50 joint custody agreement without state interference in matter of support, the Court recommends dismissing the complaint for lack of subject matter jurisdiction. *See, e.g.*, *Demuth v. Cty. of Chenango*, No. 3:18-CV-1068 (LEK/DEP), 2018 WL 4935772, at *4 (N.D.N.Y. Oct. 11, 2018), *report-recommendation adopted by* 2019 WL 452048 (N.D.N.Y. Feb. 5, 2019); *Amato v. McGinty*, No. 17-CV-593 (MAD/ATB), 2017 WL 9487185, at *8 (N.D.N.Y. June 6, 2017), *report-recommendation adopted by* 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017).

### B. *Rooker-Feldman* Doctrine

Even if Plaintiff's complaint was not barred by the domestic relations exception, the *Rooker-Feldman* doctrine precludes review of Plaintiff's claims in this Court. *See generally*

*District of Colombia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id*. (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

In the Second Circuit, the following four requirements must be met for the doctrine to apply: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007).

A plaintiff cannot avoid the application of the *Rooker-Feldman* doctrine simply by "presenting in federal court a legal theory not raised in state court," for example, by framing claims under § 1983. *Castiglione v. Papa*, No. 1:09-CV-0967 (LEK/DRH), 2010 WL 2044688, at *6-7 (N.D.N.Y. May 24, 2010), *aff'd*, 423 F. App'x 10, 13 (2d Cir. 2011) (summary order); *see also Rabinowitz*, 329 F. Supp. 2d at 376 ("A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action."). Nor can a plaintiff circumvent the *Rooker-Feldman* doctrine by requesting monetary damages. *Voltarie v. Westchester Cty. Dep't of Social Services*, No. 11-cv-8876 (CS), 2016 WL 4540837, at *11 (S.D.N.Y. Aug. 29, 2016).

Here, Plaintiff's allegations seek to collaterally attack the state court's order against Plaintiff relating to the custody of his children. (Dkt. No. 1 at 4.) Plaintiff who has lost in state

court and who now complains of injuries caused by the state court, invites this Court to review and reject the state court order, which was issued on November 18, 2016, well before Plaintiff filed his complaint in federal court on March 4, 2019. *Id.* Thus, because all of the *Rooker-Feldman* requirements are satisfied, the Court lacks jurisdiction to adjudicate Plaintiff's claims.

Accordingly, the Court recommends dismissing the complaint on the additional ground that the *Rooker-Feldman* doctrine divests this Court of jurisdiction.

**C.      Immunity**

Plaintiff's claims against Defendants are also subject to dismissal based upon a separate and independent ground. 28 U.S.C. 1915(e)(2)(B)(iii). Plaintiff sues Madison County Family Court Judge Patrick J. O'Sullivan, Support Magistrate Todd Dexter, the State of New York, and Madison County Family Court, a court that is part of the New York State Unified Court System. (Dkt. No. 1 at 2.[5])

It is well-settled judges are absolutely immune from suit for damages for judicial acts performed in their judicial capacities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Absolute immunity protects judges for their judicial acts, even when such acts "are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation[.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). This is true however erroneous an act may have been and however injurious its consequences were to the plaintiff. *Id.*

---

[5] *See* http://ww2.nycourts.gov/courts/6jd/madison/family.shtml (last visited May 20, 2019).

Construed liberally, Plaintiff claims Judge O'Sullivan and Magistrate Dexter, *inter alia*, terminated his parental rights without due process on or about November 18, 2016. (Dkt. No. 1 at 4, 16-17.) Specifically, Plaintiff claims "we wouldn't be at this point if my parental rights were not illegally deprived by Judge P.O. of the Madison County Family Court in the State of New York." *Id*. at 17. He further contends, "my civil rights are being violated as I was not first found to be an 'unfit parent' beyond a reasonable doubt before terminating my parental rights without due process." *Id*. at 16.

Plaintiff's allegations against these Defendants relate to actions that are judicial in nature and, therefore, they are entitled to judicial immunity. *See, e.g.*, *Williams v. Williams*, No. 11-CV-246S, 2012 WL 639697, at *7 (W.D.N.Y. Feb. 27, 2012) ("This [absolute judicial] immunity has also been found to extend to support magistrates."); *Lometvas v. Cardozo*, No. 95-CV-2779 (DLI)(LB), 2006 WL 229908, at *5 (E.D.N.Y. Jan. 31, 2006) (finding that plaintiff's claims against a support magistrate in the Family Court were barred by absolute judicial immunity).

Moreover, the Eleventh Amendment bars all federal court actions "against a state or its agencies absent a waiver of immunity or congressional legislation specifically overriding immunity." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010). "[I]t is beyond dispute that the State of New York and its agencies have never consented to be sued in federal court." *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594-95 (2d Cir. 1990), *cert. denied*, 501 U.S. 1211 (1991). Moreover, Congress did not abrogate New York's Eleventh Amendment immunity by enacting § 1983. *Quern v. Jordan*, 440 U.S. 332, 343-45 (1979). "The law is clear that the State, and state agencies . . . are immune from . . . § 1983 suits because of their Eleventh Amendment sovereign immunity." *Jackson v. Johnson*, 985 F. Supp. 422, 426 (S.D.N.Y. 1997).

The Second Circuit has expressly held that "the New York State Unified Court System is unquestionably an arm of the State and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (quotation and citation omitted).  Madison County Family Court is "a part of the New York State Unified Court system and is, therefore, also protected by the State's sovereign immunity for suit in federal court."  *McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010).

Thus, the State of New York and Madison County Family Court are also entitled to Eleventh Amendment immunity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Gollomp v. Spitzer*, 568 F.3d 355, 365-67 (2d Cir. 2009); *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004); *see, e.g.*, *Robertson v. Allen*, No. 1:15-cv-11 (GLS/CFH), 2016 WL 205381, at *9 (N.D.N.Y. Jan. 15, 2016) (dismissing claims against the State of New York and Ulster Country Family Court).

## V.    CONCLUSION

Based on the foregoing, the Court finds it lacks subject matter jurisdiction to adjudicate Plaintiff's claims pursuant to the domestic relations doctrine and *Rooker-Feldman* doctrine. Even if the Court did have jurisdiction, Plaintiff would not be able to overcome Defendants' immunity.  28 U.S.C. 1915(e)(2)(B)(iii).  Given the Second Circuit's guidance that a *pro se* complaint should not be dismissed without leave to amend unless amendment would be futile, *Cuoco*, 222 F.3d at 112, the Court has carefully considered whether leave to amend is warranted here.  Because the defects identified above are substantive and would not be cured if afforded an opportunity to amend, the Court recommends dismissal without leave to amend.  *See, e.g.*, *Ogden v. Marshall Cty. Dep't of Social Services*, No. 3:18-cv-0373 (BKS/DEP), 2018 WL 2306493, at *1 (N.D.N.Y. May 21, 2018) (*sua sponte* dismissing compliant for lack of subject

matter jurisdiction as barred by the domestic relations exception and *Rooker-Feldman* doctrine and without leave to amend); *Meyers v. Hughes*, No. 18-CV-4399 (JS/GRB), 2018 WL 3748156, at *4 (E.D.N.Y. Aug. 7, 2018) (same).

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiffs' IFP Application (Dkt. No. 2) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be *sua sponte* **DISMISSED WITHOUT LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiffs, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: May 21, 2019
     Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

1998 WL 832708
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Theodore HUDSON, Plaintiff,

v.

Christopher ARTUZ, Warden Philip
Coombe, Commissioner Sergeant
Ambrosino Doctor Manion Defendants.

No. 95 CIV. 4768(JSR).
|
Nov. 30, 1998.

**Attorneys and Law Firms**

Mr. Theodore Hudson, Great Meadow Correctional
Facility, Comstock.

Alfred A. Delicata, Esq., Assistant Attorney General,
New York.

## MEMORANDUM AND ORDER

BUCHWALD, Magistrate J.

**\*1** Plaintiff Theodore Hudson filed this *pro se* action
pursuant to 42 U.S.C. § 1983 on April 26, 1995.
Plaintiff's complaint alleges defendants violated his
constitutional rights while he was an inmate at Green
Haven Correctional Facility. [1] Plaintiff's complaint was
dismissed *sua sponte* by Judge Thomas P. Griesa on June
26, 1995 pursuant to 28 U.S.C. § 1915(d). On September
26, 1995, the Second Circuit Court of Appeals vacated the
judgment and remanded the case to the district court for
further proceedings.

[1]  Plaintiff is presently incarcerated at Sullivan
Correctional Facility.

The case was reassigned to Judge Barbara S. Jones
on January 31, 1996. Defendants moved to dismiss the
complaint pursuant to Fed.R.Civ.P. 12(c) on November
25, 1996. Thereafter, the case was reassigned to Judge Jed
S. Rakoff on February 26, 1997. On February 26, 1998,
Judge Rakoff granted defendants' motion to dismiss, but
vacated the judgment on April 10, 1998 in response to
plaintiff's motion for reconsideration in which plaintiff

claimed that he never received defendants' motion to
dismiss.

By Judge Rakoff's Order dated April 14, 1998, this case
was referred to me for general pretrial purposes and
for a Report and Recommendation on any dispositive
motion. Presently pending is defendants' renewed motion
to dismiss. Plaintiff filed a reply on July 6, 1998. For the
reasons discussed below, plaintiff's complaint is dismissed
without prejudice, and plaintiff is granted leave to replead
within thirty (30) days of the date of the entry of this order.

## FACTS

Plaintiff alleges that he was assaulted by four inmates
in the Green Haven Correctional Facility mess hall on
March 14, 1995. (Complaint at 4.) He alleges that he
was struck with a pipe and a fork while in the "pop
room" between 6:00 p.m. and 6:30 p.m. (Complaint at
4–5.) Plaintiff contends that the attack left him with
11 stitches in his head, chronic headaches, nightmares,
and pain in his arm, shoulder, and back. (*Id.*) Plaintiff
also states that Sergeant Ambrosino "failed to secure
[the] area and separate" him from his attackers. (Reply
at 5.) Plaintiff's claim against Warden Artuz is that
he "fail [sic] to qualify as warden." (Complaint at 4.)
Plaintiff names Commissioner Coombes as a defendant,
alleging Coombes "fail [sic] to appoint a qualified warden
over security." (Amended Complaint at 5.) Plaintiff
further alleges that Dr. Manion refused to give him pain
medication. (Complaint at 5.) Plaintiff seeks to "prevent
violent crimes" and demands $6,000,000 in damages.
(Amended Complaint at 5.)

Defendants moved to dismiss the complaint, arguing
that: (1) the Eleventh Amendment bars suit against
state defendants for money damages; (2) the plaintiff's
allegations fail to state a claim for a constitutional
violation; (3) the defendants are qualifiedly immune from
damages; and (4) plaintiff must exhaust his administrative
remedies before bringing this suit.

## DISCUSSION

I find that plaintiff's complaint runs afoul of Rules 8 and
10 of the Federal Rules of Civil Procedure and dismiss
the complaint without prejudice and with leave to amend.

Federal Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977)); *see Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (stating that the "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial").

**\*2** Rule 10 of the Federal Rules of Civil Procedure requires, *inter alia,* that the allegations in a plaintiff's complaint be made in numbered paragraphs, each of which should recite, as far as practicable, only a single set of circumstances. *Moore's Federal Practice,* Vol. 2A, ¶ 10.03 (1996). Rule 10 also requires that each claim upon which plaintiff seeks relief be founded upon a separate transaction or occurrence. *Id.* [2] The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading." *Sandler v. Capanna,* 92 Civ. 4838, 1992 WL 392597, \*3 (E.D.Pa. Dec.17, 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1323 at 735 (1990)).

[2]    Rule 10 states:
(b)    Paragraphs; Separate Statements. All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

A complaint that fails to comply with these pleading rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of" a plaintiff's claims. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996). It may therefore be dismissed by the court. *Id.; see also Salahuddin v. Cuomo,* 861 F.2d at 42 ("When a complaint does not comply with the

requirement that it be short and plain, the court has the power to, on its own initiative, ... dismiss the complaint"). Dismissal, however, is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* In those cases in which the court dismisses a *pro se* complaint for failure to comply with Rule 8, it should give the plaintiff leave to amend when the complaint states a claim that is on its face nonfrivolous. *Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995).

In determining whether a nonfrivolous claim is stated, the complaint's allegations are taken as true, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint of a *pro se* litigant is to be liberally construed in his favor when determining whether he has stated a meritorious claim. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Even if it is difficult to determine the actual substance of the plaintiff's complaint, outright dismissal without leave to amend the complaint is generally disfavored as an abuse of discretion. *See Salahuddin,* 861 F.2d at 42–42; *see also Doe v. City of New York,* No. 97 Civ. 420, 1997 WL 124214, at \*2 (E.D.N.Y. Mar.12, 1997).

Here, plaintiff's *pro se* complaint fails to satisfy the requirements of Federal Rules 8 and 10. The complaint is often illegible and largely incomprehensible, scattering what appear to be allegations specific to plaintiff within a forest of headnotes copied from prior opinions. Defendants have answered with a boilerplate brief, which is perhaps all a defendant can do when faced with such a complaint. The Court is left with an insurmountable burden in attempting to make a reasoned ruling on such muddled pleadings.

**\*3** Although plaintiff's complaint is substantially incomprehensible, it appears to plead at least some claims that cannot be termed frivolous on their face. For example, plaintiff clearly alleges that inmates assaulted him and that Dr. Manion refused to provide him medical attention. He also appears to assert that Sergeant Ambrosino failed to protect him from the attack or take steps to prevent future attacks. (Plaintiff's Reply at 5). It is well established that an inmate's constitutional rights

are violated when prison officials act with deliberate indifference to his safety or with intent to cause him harm. *Hendricks v. Coughlin,* 942 F.2d 109 (2d Cir.1991). It is similarly well established that an inmate's constitutional rights are violated when a prison doctor denies his request for medical care with deliberate indifference to the inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). Although plaintiff provides few facts to support his allegations, I disagree with defendants' assertion that outright dismissal is appropriate because it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Defendant's Memorandum at 5 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Because plaintiff's complaint does not comply with Rules 8 and 10, it is hereby dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order. In drafting his second amended complaint, plaintiff is directed to number each paragraph and order the paragraphs chronologically, so that each incident in which he alleges a constitutional violation is described in the order that it occurred. Plaintiff is also directed to specifically describe the actions of each defendant that caused plaintiff harm, and to do so in separate paragraphs for each defendant. Plaintiff's complaint shall contain the facts specific to the incidents plaintiff alleges occurred, and not any facts relating to any case that has been decided previously by a court of law. Plaintiff's complaint shall also contain a clear statement of the relief he seeks in addition to monetary damages.

CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 1998 WL 832708

---

**End of Document**     © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 3241571
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Bartram Yihni DABNEY, Plaintiff,

v.

Donald SAWYER, Executive Director, Marcy
Mental Health Hospital; Joann Waldron, Chief
of Omh Satellite, Clinton Correctional Facility;

Dr. Berggen, [1] Psychiatrist, Clinton Correctional
Facility; Dr. Lee, Medical Director, Clinton
Correctional Facility; Dr. Farooki, Dentist;

Sharon Lockridge, [2] Omh Therapist; Savage, Omh
Therapist, Clinton Correctional Facility; Ron
Dumont, Nurse, Clinton Correctional Facility; C.O.
Beeshaw, Correctional Officer, Clinton Correctional
Facility; C.O. Foley, Correctional Officer, Clinton
Correctional Facility; Dr. Batter, [3] Psychiatrist,
Great Meadow Correctional Facility; J. Nocera,
Assistant Inspector General, Department of
Correctional Services; V. Donahue, Social Worker,
Great Meadow Correctional Facility, Defendants.

[1]  The correct spelling of this Defendant's name
is "Bergen." *See* Dkt. No. 25. Service has been
accomplished on this Defendant and counsel clearly
appeared on his behalf, yet, perhaps by simple
oversight, his name is omitted from the Notice of
Motion filed by Defendants' counsel. Dkt. No. 27.

[2]  According to the Defendants' counsel, this
Defendant's correct name was "Sara Loughran," but
she is now known as "Sara Nephew." Dkt. No. 16.

[3]  The correct spelling of this Defendant's name
is "Battu." Although it appears from the docket
that the request for acknowledgment of service
on this Defendant was returned unexecuted, Dkt.
No. 30, several appearances have been made
by Defendants' counsel on behalf of this party.
For example, on October 11, 2011, counsel for
Defendants requested an extension of time to
respond to the Complaint on behalf of this and other
Defendants. Dkt. No. 16. And, on April 30, 2012,
a notice of counsel substitution was filed on behalf
of all Defendants, without exception. Dkt. No.
28. Finally, the pending Motion to Dismiss, while

curiously missing the name of Defendant Bergen,
*see supra* note 1, specifically lists Defendant Battu
as joining the move for dismissal, again without
exception. In light of these appearances by counsel,
the Court considers any service objection that may
have been raised on behalf of Defendant Battu has
been waived.

Civ. No. 9:11–CV–273 (LEK/RFT).
|
July 17, 2012.

**Attorneys and Law Firms**

Bartram Yihni Dabney, Dannemora, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the
State of New York, Charles J. Quackenbush, Esq.,
Assistant Attorney General, of Counsel, Albany, NY, for
Defendants.

### *REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate
Judge.

**\*1** *Pro se* Plaintiff Bartram Yihni Dabney initiated this
action with the filing of a civil rights Complaint. Dkt.
No. 1, Compl. By his Complaint, Dabney asserts claims
pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 arising
out of his confinement at Great Meadow Correctional
Facility and Clinton Correctional Facility. He claims that
as retaliation for a pending litigation he had commenced
against eighteen prison officials, the Defendants used
excessive force against him and further denied him
medical and mental health care. He also asserts that he
was discriminated against because of his race and was
subjected to cruel and unusual conditions of confinement.
*See generally* Compl.

At the time this action was filed, there were two
named Plaintiffs, Bartram Yihni Dabney and Rashawn
Simpson. However, Mr. Simpson, having failed to sign
the Complaint or provide the filing fee, was subsequently
terminated from the action. *See* Dkt. No. 5, Order, dated
Aug. 18, 2011 (providing Mr. Simpson with thirty days to
comply or else be terminated from the action). Presently
pending is Defendants' Motion to Dismiss the Complaint,
which is opposed by Dabney. Dkt. Nos. 27, Defs.' Mot. to
Dismiss, & 32, Pl.'s Resp. Although Defendants noticed

the Motion as brought pursuant to Federal Rules of Civil Procedure 8, 10, and 12(b)(6), there is no substantive argument included in the terse five-paged Memorandum of Law that addresses the purported inefficacies of the claims alleged by Dabney. Instead, the Defendants' entire argument for dismissal is based upon Plaintiff's alleged failure to comport his Complaint to the formal pleading standards set forth in Rules 8 and 10. Dkt. No. 27–1, Mem. of Law, at p. 1 ("The Complaint fails to contain a short and plain statement of plaintiff's claims showing that he is entitled to relief and engenders confusion by failing to list averments in separately numbered paragraphs consisting as much as is practicable of a single set of circumstances."). According to Defendants, they are simply unable to respond, and indeed it would pose too much of a burden to respond, "where the factual and legal allegations remain so unclear and are presented in such rambling, unnumbered, protracted paragraphs." *Id.* at p. 3.

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a clam for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. P. 8(a) (2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (other citations omitted)).

Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part, that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading .... " *Sandler v. Capanna,* 1992 WL 392597, at *3 (E.D.Pa. Dec. 17, 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1323 at 735 (1990)).

**\*2** A complaint that fails to comply with these Rules presents too heavy of a burden for the defendants in shaping a comprehensive defense, provides no meaningful basis for the court to assess the sufficiency of plaintiff's claims, and may properly be dismissed by the Court.

*Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligble that its true substance, if any, is well disguised." *Hudson v. Artuz,* 1998 WL 832708, at *2 (citation omitted). In those cases in which the court dismisses a *pro se* complaint for failure to comply with these Rules, it should afford the plaintiff leave to amend the complaint to state a claim that is on its face nonfrivolous. *See Simmons II v. Abruzzo,* 49 F.3d 83, 86–87 (2d Cir.1995).

The Complaint filed by Dabney consists of two seemingly severable or distinct parts. First, there is a fourteen-page typed *pro forma* Complaint identical to those typically used by inmates who sue for relief pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. In this document, the paragraphs are pre-numbered. Pre-numbered paragraph six contains the facts underlying the civil claims asserted by Dabney. This section spans six pages and is broken down into four "Issues." Compl. at pp. 7–12. These six pages are written in narrative form and the separate sub-paragraphs are not numbered. The last page of this portion of the document, which would normally bear the signature of the plaintiff pursuant to Federal Rule of Civil Procedure 11, is unsigned. *Id.* at p. 14. The second portion of the Complaint is, substantively, an exact replica of the typed portion, with three major distinctions: 1) it is entirely handwritten, 2) each paragraph throughout the *entire* twenty handwritten pages is sequentially numbered, and 3) it bears the notarized signature of Plaintiff Dabney on the final page. Dkt. No. 1–1.

As noted above, Plaintiff Dabney is proceeding *pro se,* and is therefore entitled to leniency when it comes to pleading standards. Essentially, he is not to be held to the same pleading standards as that imposed on a licensed attorney. *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *see also Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). Furthermore, as Dabney points out in his Opposition, this Complaint has already survived the District Court's initial review wherein the pleading is reviewed, not necessarily on the merits, but at the very least for its conformity to the pleading requirements of Rules 8 and 10. *See* Dkt. No. 32 at p. 4; *see also* Dkt. No. 5 (directing service of the Complaint). In short, Dabney's pleading, though not a model of clarity, contains a short and plain statement of the claims asserted and has separately numbered paragraphs wherein facts are asserted to support the

claims raised therein. There may be instances where more than one fact is raised in a single paragraph, and certainly there are instances of commentary not necessarily related to the issues apparently at hand. But this is nothing new in the realm of prisoner litigation wherein the majority of inmates represent themselves in federal court.

**\*3** In light of the handwritten portion of the Complaint, we find Defendants' arguments regarding the onus placed on them to respond thereby justifying dismissal to be wholly without merit. While both the typed version and handwritten version constitute the entire Complaint, we concede that answering the typed version could prove somewhat challenging for Defendants. Therefore, we would recommend that Defendants only be directed to answer the handwritten version of the Complaint and may use the typed version as a means of reference should any portion of the handwritten paragraphs prove indecipherable. Thus, we would recommend **denying** Defendants' Motion for Dismissal based upon Rules 8 and 10.

Insofar as Defendants assert they also move for dismissal pursuant to Rule 12(b)(6), such request should be **denied** because they failed to make any substantive argument in support of the notion that Plaintiff's claims are not plausible. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 & 697 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). This Court will not infer any legal argument on behalf of Defendants, who are represented by counsel, where none have been proffered.

**WHEREFORE,** it is hereby

**RECOMMENDED,** that Defendants' Motion to Dismiss (Dkt. No. 27) be denied and Defendants be directed to respond only to the handwritten portion of the Complaint (Dkt. No. 1–1); and it is further

**ORDERED,** that the Clerk of the Court update the Docket Report so that the names of the following Defendants are corrected: Defendant Berggen's name should be spelled "Bergen"; Defendant Sharon Lockridge should be changed to Sara Nephew f/k/a Sara Loughran; and Defendant Batter's name should be spelled "Battu"; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

### All Citations

Not Reported in F.Supp.2d, 2012 WL 3241571

2009 WL 230106
Only the Westlaw citation is currently available.
This case was not selected for
publication in West's Federal Reporter.
United States Court of Appeals,
Second Circuit.

Wioleta SCHOTTEL, Plaintiff–Appellant,

v.

Piotr KUTYBA, Helen Kutyba, Anna
White and White Legal Publications,
Inc., Defendants–Appellees.

No. 06–1577–cv.
|
Feb. 2, 2009.

**Attorneys and Law Firms**

James W. Schottel, Jr., Schottel & Associates, P.C., St.
Louis, MO, for Appellant.

Debra E. Guston, Guston & Guston, L.L.P., Glen Rock,
NJ, for Appellees, Piotr Kutyba & Helen Kutyba.

Present JON O. NEWMAN and SONIA SOTOMAYOR,
Circuit Judges, and JED S. RAKOFF, * District Judge.

\* The Honorable Jed S. Rakoff, District Judge of the
United States District Court for the Southern District
of New York, sits by designation.

### SUMMARY ORDER

**\*1** UPON DUE CONSIDERATION, it is hereby
ORDERED, ADJUDGED AND DECREED that the
judgment of the district court is AFFIRMED.

Plaintiff-appellant Wioleta Schottel appeals from the
judgment of the United States District Court for the
Southern District of New York (Mukasey, *J.*), dismissing
Schottel's complaint for failure to state a claim on which
relief may be granted. We assume the parties' familiarity
with the facts and procedural history.

Schottel argues that the district court erred in dismissing
her complaint because she asserted tort claims that are not
subject to the domestic relations exception, which "divests

the federal courts of power to issue divorce, alimony,
and child custody decrees." *Ankenbrandt v. Richards,* 504
U.S. 689, 703 (1992). In *Ankenbrandt,* the Court held
the exception to be inapplicable to a former wife's state-
law tort claims for monetary damages against her ex-
husband and his female companion who had allegedly
committed child abuse. *Id.* at 704. The status of the
domestic relationship in *Ankenbrandt* was "determined
as a matter of state law," and had "no bearing on the
underlying torts alleged." *Id.* at 706.

Although Schottel asserts a fraud claim for monetary
damages, the district court correctly concluded that "the
gravamen of her claim involves a dissolution of marriage
—an area at the core of the domestic relations exception."
*Schottel v. Kutyba,* No. 05–3759 (S.D.N.Y. Apr. 13, 2005)
(order of dismissal). Her complaint makes clear that her
tort claim for monetary damages is, at heart, a dispute
surrounding the custody of her child. In particular, the
complaint alleges that the defendants (1) fraudulently
misrepresented to the court the former couple's residences
in order to file divorce proceedings in New York; (2)
forged Schottel's signature on documents relating to the
divorce proceeding; and (3) coerced Schottel, "a foreign
citizen of the Country of Poland ... without ... counsel,"
into signing divorce-related documents whose contents
were unknown to her. The complaint states that, as
a result of this fraud and coercion, Schottel has been
deprived of custody and visitation rights, resulting in
emotional distress, expenses arising from her challenges to
the divorce decree and "other substantial damages." [1]

[1]    Schottel argues that her complaint should not have
been dismissed because it mirrored one filed in
another case, *Moore v. Golden,* 93–3499 (S.D.N.Y.).
But that case settled before the filing of any
substantive motions and was never appealed to this
Court.

Unlike *Ankenbrandt,* where the tort claims were distinct
from the domestic relationship, Schottel's tort claims
begin and end in a domestic dispute, as evidenced by the
request in Schottel's original complaint to have the divorce
judgment declared void *ab initio.* States are better suited to
that adjudication. *See, e.g., Aguirre v. Aguirre,* 245 A.D.2d
5, 7–8, 665 N.Y.S.2d 638, 640 (1st Dep't 1997) (vacating
judgment of divorce where the plaintiff had obtained,
through fraudulent misrepresentations, his illiterate wife's
signature on a legal document). Even if Schottel had
only requested monetary damages (as was the case in

her proposed amended complaint), federal jurisdiction would still be lacking. [2] Although we recognize that the domestic relations "exception is very narrow," *Williams v. Lambert,* 46 F.3d 1275, 1283 (2d Cir.1995), a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages. *Cf. American Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990) ("A federal court presented with ... issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts."). [3]

[2]   Accordingly, the district court properly denied Schottel's motion to set aside the court's order based on her proposed amended complaint.

[3]   There is no indication that Schottel, who has continued to litigate her child's custody in state court, was denied a full and fair determination at the state level.

**\*2** We have reviewed plaintiff-appellant's remaining arguments and find them to be without merit. The judgment of the district court is therefore AFFIRMED.

**All Citations**

Slip Copy, 2009 WL 230106

---

       © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   2

2018 WL 4935772
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael A. DEMUTH, Plaintiff,

v.

COUNTY OF CHENANGO, et al., Defendants.

Civil Action No. 3:18-CV-1068 (LEK/DEP)
|
Signed 10/11/2018

**Attorneys and Law Firms**

FOR PLAINTIFF: MICHAEL A. DEMUTH, Pro se,
Chenango County Jail, 279 County Road 46, Norwich,
NY 13815.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE
JUDGE

 **\*1** *Pro se* plaintiff Michael A. Demuth, a pre-
trial detainee in a local jail facility, brings this
domestic relations suit disguised as a civil rights action
against the County of Chenango and six employees of
the Chenango County Department of Social Services
("DSS"). [1] Plaintiff's complaint and accompanying
application for leave to proceed *in forma pauperis* ("IFP")
have been referred to me for consideration. Based upon
my review of those materials, plaintiff's motion to proceed
IFP is granted, but I recommend that the complaint be
dismissed.

[1]       This action is one in an avalanche of suits that have
        been commenced by plaintiff since June 2018. *See
        Demuth v. Chenango Cty. Corr. Facility et al.*, 9:18-
        cv-01084-DNH-DEP (filed Sept. 11, 2018); *Demuth
        v. Cty. of Chenango et al.*, 3:18-cv-01068-DNH-DEP
        (filed Sept. 7, 2018); *Demuth et al. v. Chenango
        Cty. Sheriff's Office et al.*, 9:18-cv-01010-DNH-TWD
        (filed Aug. 23, 2018); *Demuth v. The People of the
        State of New York et al.*, 3:18-cv-00946-DNH-DEP
        (filed Aug. 10, 2018); *Demuth v. N.Y. State Police
        et al.*, 3:18-cv-00936-GTS-DEP (filed Aug. 8, 2018);
        *Demuth v. Chenango Cty. Sheriff's Office et al.*, 9:18-
        cv-00915-MAD-CFH (filed Aug. 3, 2018); *Franklin
        et al. v. Comm'n of Corrs. et al.*, 9:18-cv-00897-GLS-
        ATB (filed Aug. 01, 2018); *Demuth v. Chenango
        Cty. Sheriff's Office et al.*, 9:18-cv-00895-GLS-TWD
        (filed Aug. 01, 2018); *Demuth v. Chenango Cty.
        Public Defenders Office et al.*, 3:18-cv-00876-DNH-
        DEP (filed Jul. 27, 2018); *Demuth v. Chenango Cty.
        Sheriff's Office et al.*, 9:18-cv-00816-GTS-TWD (filed
        Jul. 11, 2018); *Demuth v. Chenango Cty. Sheriff's
        Office et al.*, 9:18-cv-00813-BKS-DEP (Jul. 11, 2018);
        *Demuth v. Chenango Cty. Sheriff's Office et al.*, 9:18-
        cv-00807-DNH-ATB (filed July 9, 2018); *Demuth v.
        N.Y. State Police et al.*, 3:18-cv-00796-GTS-DEP,
        (filed Jul. 5, 2018); *Demuth v. Chenango Cty. Sheriff's
        Office et al.*, 9:18-cv-00795-GTS-CFH (filed Jul. 5,
        2018); *Demuth v. Chenango Cty. Sheriff's Office et
        al.*, 9:18-cv-00789-LEK-TWD, (filed Jul. 2, 2018);
        *Demuth v. Hand et al.*, 9:18-cv-00769-LEK-TWD
        (filed Jun. 28, 2018); *Demuth v. Mcbride et al.*, 3:18-
        cv-00768-TJM-DEP (filed Jun. 28, 2018); *Demuth
        v. Chenango Cnty Dep't of Soc. Servs. et al.*, 3:18-
        cv-00767-LEK-DEP (filed Jun. 28, 2018).

I. BACKGROUND

Plaintiff commenced this action on September 7, 2018. *See
generally* Dkt. No. 1. Named as defendants in plaintiff's
complaint are the County of Chenango and six individuals
who appear to be employed in various capacities by
the DSS. [2] *Id.* at 1-2. Although plaintiff's complaint is
peppered with constitutional buzzwords, his allegations
stem from proceedings before Chenango County Family
Court and involve two nonbiological children and one
biological child—S., B., and C., respectively. *See generally
id.* at 3-8. The lack of cogency in plaintiff's complaint
makes it difficult to discern the status of any proceedings
related to S. and B. It appears that at least with respect
to C., however, an abuse or neglect proceeding against
plaintiff is pending and ongoing pursuant to Article 10 of
the New York Family Court Act. *Id.* at 7-8.

[2]       The allegations contained in the present complaint
        appear to be duplicative of, or at least significantly
        overlap with, the allegations in an earlier action filed
        by plaintiff. *See generally* Dkt. No. 1 in *Demuth
        v. Chenango Cty. Dep't of Soc. Servs. et al.*, 3:18-
        cv-00767-LEK-DEP (filed Jun, 28, 2018). On August
        30, 2018, I recommended that the complaint in
        the matter be dismissed pursuant to the domestic
        relations exception to this court's jurisdiction and
        under the *Rooker-Feldman* doctrine. *See generally*
        Dkt. No. 12 in *Demuth v. Chenango Cty. Dep't of Soc.
        Servs. et al.*, 3:18-cv-00767-LEK-DEP (filed Jun, 28,
        2018).

**\*2** As relief, plaintiff's complaint seeks a declaration that his constitutional rights have been violated, as well an award of compensatory damages in the amount of $5 million. Dkt. No. 1 at 5. Plaintiff is also seeking some form of injunctive relief of an unspecified nature from the court. *Id.* at 1 (citing 28 U.S.C. §§ 2283, 2284, relating to stays of state court proceedings and three judge panels, respectively).

## II. DISCUSSION

### A. Plaintiff's IFP Application

When a civil action is commenced in federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).[3] In this instance, because I conclude that plaintiff has now met the requirements for IFP status, his application for leave to proceed without prepayment of fees is granted.[4] Dkt. Nos. 4, 5.

[3]   The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate who is granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3).

[4]   Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

### B. Sufficiency of Plaintiff's Complaint

#### 1. Standard of Review

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. §§ 1915(e), 1915A. Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who

is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("[W]e have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis.*").

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

**\*3** When reviewing a complaint under sections 1915(e), 1915A, the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8

of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a) (2) ).

## 2. Analysis

It is well-settled that federal district courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). In accepting matters for adjudication, district courts must insure that the subject matter requirement is met, and may raise the question of jurisdiction *sua sponte*, and at any point in the litigation. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) ("[A] challenge to subject matter jurisdiction ... may be raised ... *sua sponte*." (quotation marks and alterations omitted) ). "Where jurisdiction is lacking, ... dismissal is mandatory." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301

(2d Cir. 1994); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### a. Domestic Relations Exception

The claims in this action, which are couched in terms of constitutional deprivations, are brought pursuant to 42 U.S.C. § 1983. *See generally* Dkt. No. 1. Ordinarily, the court would possess subject matter jurisdiction over such claims. 28 U.S.C. §§ 1331, 1343. There exists, however, a judicially recognized exception to federal subject matter jurisdiction in matters involving domestic relations. *Ankenbrandt v. Richards*, 504 U.S. 689, 701-04 (1992); *Thomas v. N.Y.C.*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has "recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.' " [5] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004) (quoting *Ankenbrandt*, 504 U.S. at 703).

[5]   "[A]lthough the domestic relations exception originated in the context of diversity cases, some courts have applied the exception in cases based upon federal question jurisdiction since the policy considerations which underlie the domestic relations exception may apply with equal force in cases arising under the court's federal question jurisdiction." *Thomas*, 814 F. Supp. at 1146 (citations omitted).

**\*4**   The exception recognizes that "the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack." *Thomas*, 814 F. Supp. at 1146 (citing *Ankenbrandt*, 504 U.S. at 703-04). "The doctrine also rests on the idea that state courts are peculiarly suited to enforce state regulations and domestic relations decrees involving alimony and child custody particularly in light of the fact that such decrees often demand substantial continuing judicial oversight." *Id.*

Although plaintiff styles some of his claims as raising constitutional issues, the allegations stem from state domestic relations matters, specifically abuse and neglect proceedings, and the complaint can be fairly construed as being aimed at gaining custody of S., B., and C. Dkt. No. 1 at 4 ("[P]laintiff did in fact lose his children to the system

and at this present time is struggling to gain them back."); *id.* at 5 ("[D]efendants refuse to work with or even help this plaintiff nor will provide this plaintiff with any sort of visits or calls to his children.").

Where tort claims "begin and end in a domestic dispute," state courts are better suited to adjudicate the claims. *See Schottel v. Kutyba*, No. 06-CV-1577, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009) (affirming, based on the domestic relations exception, the district court's dismissal of the plaintiff's complaint alleging, *inter alia*, that the defendants "fraudulently misrepresented to the court the former couple's residence in order to file divorce proceedings in New York," and, as a result, plaintiff was "deprived of custody and visitation rights"). Accordingly, to the extent the complaint is seeking a child custody decree from the court, the court lacks jurisdiction to adjudicate such a claim. *See, e.g., Amato v. McGinty*, No. 17-CV-593, 2017 WL 9487185, at *8 (N.D.N.Y. Jun. 6, 2017) (Baxter, M.J.), *report and recommendation adopted by* 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017) (D'Agostino, J.).

### b. The *Rooker-Feldman* [6] Doctrine and the *Younger* Doctrine

[6]    *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923).

Depending on the status of the proceedings before Chenango County Family Court, and specifically whether the state court proceedings are concluded or instead remain pending, either the *Rooker-Feldman* doctrine or the *Younger* doctrine bars plaintiff's remaining claims.

#### i. The *Rooker-Feldman* Doctrine

In the event the relevant underlying state court proceedings are concluded, plaintiff's claims in this court are precluded by the *Rooker-Feldman* doctrine. Under that doctrine, except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). In the Second Circuit, the following four requirements must be met for the doctrine to apply: (1) the federal-court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a

state-court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the state-court judgment must have been rendered before the district court proceedings commenced. *McKithen*, 491 F.3d at 97. "A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment 'simply by casting his complaint in the form of a civil rights action.' " *Rabinowitz*, 329 F. Supp.2d at 376 (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993) )."[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *McKithen*, 481 F.3d at 97 (quoting *Hoblock v. Albany Co. Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005) ).

**\*5** The status of any proceedings related to plaintiff's nonbiological children is less than clear from the fact of the complaint. Dkt. No. 1. To the extent that any proceedings regarding his paternity have been terminated, or to the extent that plaintiff seeks review of decisions that have already been issued by a judge, the complaint is barred by the *Rooker-Feldman* doctrine because plaintiff is effectively attempting to challenge the state court's decision.

#### ii. The *Younger* Doctrine

In the event the underlying state court proceedings remain pending, plaintiff's request for this court's involvement implicates the *Younger* abstention doctrine. Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002); *see generally Younger v. Harris*, 401 U.S. 37 (1971); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 n.16 (1975) (extending the equitable principles that required abstention with respect to injunctive relief in *Younger* apply to requests for declaratory relief as well). In *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* doctrine is limited to three exceptional circumstances, including (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial

functions." *Id.* at 72-73. State-initiated child abuse and neglect proceedings are " 'in aid of and closely related to criminal statues.' " *Moore v. Sims*, 442 U.S. 415, 423 (1979) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975) ).

At least with respect to C., the letter appended to plaintiff's complaint suggests that abuse and neglect proceedings are ongoing inasmuch as it indicates that plaintiff's visitation with that child was suspended pending, *inter alia*, his release from his incarceration. Dkt. No. 1 at 7-8. That letter further encouraged plaintiff to "start complying" with state court orders and notes that the goal "has been and continues to be" C.'s reunification with plaintiff. *Id.* It would be inappropriate to assume jurisdiction over plaintiff's federal constitutional claims at this time, given the ongoing status of the state court proceeding. *See, e.g., Reinhardt v. Com. of Mass. Dep't of Soc. Servs.*, 715 F. Supp. 1253, 1256 (S.D.N.Y. 1989) (noting "questions of family relations, especially when issues of custody and abuse are involved, are traditionally an area of state concern") (citing *Moore v. Sims*, 442 U.S. 415, 435 (1979) ). To the extent that plaintiff desires to raise any potential constitutional claims arising from the state court proceedings, he may do so in that forum. Accordingly, if proceedings involving plaintiff remain pending in state court, his claims in this action are barred by the *Younger* doctrine. *See Morpurgo v. Incorporated Vill. of Sag Harbor*, 327 F. App'x 284, 285-86 (2d Cir. 2009).

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could not "determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to

allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

**\*6** In this case, I am unable to say with complete certainty that, if permitted leave to amend, plaintiff could not state a cognizable civil rights claim that would not be precluded by the domestic relations exception to jurisdiction, the *Rooker-Feldman* doctrine, or the *Younger* abstention doctrine. Accordingly, I recommend that leave to amend be granted.

If plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted) ). Finally, plaintiff is reminded that, pursuant to Rule 10 of the Federal Rules of Civil Procedure, any amended complaints "must state its claims ... in numbered

paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

## III. SUMMARY AND RECOMMENDATION

Because plaintiff's IFP application is complete and demonstrates his inability to pay the required filing fee for commencing this action in advance, his request for leave to proceed without prepayment of fees is granted. Turning to the merits of plaintiff's complaint, however, I conclude that his claims are precluded by the domestic relations exception to jurisdiction, the *Rooker-Feldman* doctrine, and/or the *Younger* doctrine.

Based upon the foregoing, it is hereby

ORDERED that plaintiff's application for leave to proceed *in forma pauperis* (Dkt. No. 4) is GRANTED; and it is further hereby respectfully

RECOMMENDED that all of plaintiff's claims in this action be DISMISSED, with leave to amend.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.

Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [7] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

[7]    If you are proceeding *pro se* and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**\*7** It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Slip Copy, 2018 WL 4935772

---

2019 WL 452048
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael A. DEMUTH, Plaintiff,
v.
COUNTY OF CHENANGO; Sarah C. Fitzpatrick;
Brandi Guinn; Nicole Sheeran; Misty Davis; Beth
Beers; and Teresa Foster-Jones, Defendants.

3:18-CV-1068 (DNH/DEP)
|
Signed 02/05/2019

**Attorneys and Law Firms**

MICHAEL A. DEMUTH, Plaintiff pro se, 642 New
Virginia Road, Oxford, NY 13830.

### DECISION and ORDER

DAVID N. HURD, United States District Judge

 **\*1** Pro se plaintiff Michael A. Demuth brought this
domestic relations suit disguised as a civil rights action
against the County of Chenango and six employees of
the Chenango County Department of Social Services
("DSS"). On October 11, 2018, the Honorable David
E. Peebles, United States Magistrate Judge, advised by
Report-Recommendation that the complaint be dismissed

in its entirety but that plaintiff be granted an opportunity
to replead. No objections to the Report-Recommendation
have been filed.

Based upon a careful review of the entire file and the
recommendations of the Magistrate Judge, the Report-
Recommendation is accepted in whole. See 28 U.S.C. §
636(b)(1).

Therefore, it is

ORDERED that

1. The complaint is DISMISSED WITHOUT
PREJUDICE and plaintiff is given an opportunity to
amend his complaint within thirty (30) days of the date
of this Decision and Order to properly present the facts
which would support his claim for entitlement to relief;

2. If plaintiff files a timely amended complaint, it be
forwarded to the Magistrate Judge for review; and

3. If plaintiff fails to file an amended complaint within
thirty (30) days of the date of this Decision and Order, the
complaint will be dismissed in its entirety.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2019 WL 452048

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 9487185
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francis AMATO, et al., Plaintiffs,

v.

Judge Anthony MCGINTY, et al., Defendants.

1:17-CV-593 (MAD/ATB)
|
Signed 06/06/2017

## Attorneys and Law Firms

Frances Amato, Marlboro, NY, pro se.

John Doe, pro se.

Adrienne Auchmoody, pro se.

Toni Jean Kulpinski, pro se.

Vladimir Kulpinski, pro se.

Michaela Kulpinski, pro se.

Michelle Arzola, pro se.

Jane Doe, pro se.

Adrienne J. Kerwin, Office of Attorney General, David B. Cabaniss, Cabaniss Casey LLP, Albany, NY, for Defendants.

## ORDER and REPORT-RECOMMENDATION

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**\*1** The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiffs Francis Amato, her son "John Doe," Adirenne Auchmoody, Toni Jean Kulpinski, Vladimir Kulpinski, Michaela Kulpinski, Michelle Arzola, and Ms. Arzola's two children, who have also been referred to as Jane and John Doe. (Complaint ("Compl.") at 1). Plaintiffs have paid the filing fee for this action. However, the court will conduct an initial review of the complaint.[1] Plaintiff Amato has also filed a motion to obtain an ECF Login and Password. (Dkt. No. 10).

[1] The court notes that on June 2, 2017, plaintiff Amato filed a motion for a Temporary Restraining Order. (Dkt. No. 8). District Judge D'Agostino denied the motion on the same day. (Dkt. No. 9).

A complaint must allege " 'enough facts to state a claim to relief that is plausible on its face.' " *Preacely v. City of New York*, 622 Fed.Appx. 14, 15 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). A claim " 'has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ). A case is "frivolous" when either the factual contentions are "clearly baseless or when the claim is based upon "an indisputably meritless legal theory." " *Id.* (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ). A district court has inherent authority to dismiss a frivolous action sua sponte "even when the plaintiff has paid the required filing fee." *Id.* (quoting *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ). Finally, a federal court has a continuing and independent obligation to examine its subject matter jurisdiction sua sponte. *Robbins v. City of New York*, 254 F.Supp.3d 434, 436 (E.D.N.Y. 2017) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ). *See also Forde v. Hornblower New York, LLC*, 243 F.Supp.3d 461, ——, 2017 WL 1078585, at \*2 (S.D.N.Y. 2017) (citations omitted).

## I. Complaint

This civil rights action has been brought by plaintiffs Frances Amato, her son ("CB"), Adrienne Auchmoody (CB's grandmother), Toni Jean Kulpinski (CB's Aunt and Godmother), Vladimir Kulpinski (CB's Uncle and Godfather), Michaela Kulpinski (CB's cousin), and Michelle Arzola and her two minor children (CB's sister, niece, and nephew). (Compl. ¶¶ 1-7).

Plaintiffs appear to challenge the conduct of defendant Ulster County Family Court Judge Anthony McGinty relative to a custody proceeding involving CB. (Compl. ¶¶ 8, 16). Plaintiffs have also named Attorney Andrew Gilday, who plaintiffs state is a "Public Defender," but appears to be the assigned counsel for Patrick Bessmer —CB's father[2]—in the custody proceeding. (Compl. ¶ 9). Patrick Bessmer and his alleged "paramour," Pamela

Augustine are also named as defendants. (Compl. ¶¶ 11, 12). Plaintiffs have also named Amy Ingram, Esq., CB's assigned attorney for the custody proceeding.

[2]     Plaintiff Amato and defendant Patrick Bessmer were apparently not married.

**\*2** Plaintiffs allege that defendant McGinty was "highly abusive" to "all" plaintiffs; violated "constitutional" and "ADA rights;" caused "extreme pain, suffering, and trauma to "all" plaintiffs when he violated their constitutional rights; endangered the welfare of "a child;" and "illegally extended fictitious authority in CLEAR ABSENCE of subject matter jurisdiction." " (Compl. ¶ 18(a)-18(e) ). Plaintiff Amato then describes conduct that was allegedly directed at her. [3] (Compl. ¶ 20). Plaintiff Amato alleges that defendant McGinty denied access to " 'his court,' " denied plaintiff Amato her "rights to proper serving process," denied "any evidence into the court for purpose of record," and denied "the serious risk and harm to [her] child- who is currently and not by [her] consent in public governmental counseling for high risk children." (Compl. ¶ 20). Plaintiff Amato believes that the state proceedings "remain plagued by retributions [sic] for plaintiff's exercise of First Amendment rights to free speech and petition government [sic] for redress of grievances." (Compl. ¶ 19).

[3]     The court notes that, although there are multiple plaintiffs, most of the defendants' alleged conduct was directed at plaintiff Amato alone. Plaintiff Amato appears to allege that the defendants' conduct toward her and CB injured the other defendants because of their family relationship to plaintiff Amato and CB. (*See* Compl. ¶ 45) (stating that "no parties had a due process court hearing or trial, [and] were never served any form of order").

Plaintiff Amato alleges that she is an "outspoken advocate," working along side the District Attorney of Ulster County to compile evidence and to file numerous complaints against defendant McGinty. (*Id.*) Plaintiff Amato states that she has been interviewed by many local newspapers and television stations regarding her concerns about Ulster County Family Court and attorney Amy Ingram. Plaintiff claims she has been "very outspoken" regarding the "countless children" endangered by the "decisions of these judges and the negligence of these public servants and child attorneys mentioned [in the complaint.]" (*Id.*)

Plaintiff Amato lists a series of alleged violations which were committed by defendant McGinty, together with defendants Ingram and Gilday, resulting in the "kidnaping" and "endangerment of a minor." (Compl. ¶ 22). [4] Plaintiff Amato states that these three defendants intentionally inflicted emotional distress by removing her child, "altering the 9 year status quo from me and my entire family, violating *our* due process...." (Compl. ¶ 22(a) ). These three defendants also allegedly committed "Malicious Trespass," "Abuse of Process," "Retaliation," "False and Unlawful Arrest," "Pre decided trial with no evidence allowed, Obstructing Justice," "Child Endangerment," and "Falsely placing mother and child on a missing persons clearinghouse...." (Compl. ¶ 22(b)-22(h) ).

[4]     There appears to be no ¶ 21 in the complaint.

The complaint contains three "Causes of Action," which contain additional facts and various citations to case law. (Compl. ¶¶ 30-41). The first cause of action is "First Amendment." (Compl. ¶¶ 30-33). The second cause of action is "Parental Impairment," and the third cause of action is "Due Process." (Compl. ¶¶ 34-37, 38-41). Because of the way that the complaint is written, rather than repeating all of the facts, the court will discuss the additional facts as necessary to the analysis of plaintiff's complaint.

## II. Judicial Immunity

### A. Legal Standards

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The only two circumstances in which

judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12, 112 S.Ct. 286.

**\*3** Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F.Supp.2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam) ). Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences...." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10, 112 S.Ct. 286).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself"—whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ). The parties must have dealt with the judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) ). The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13, 112 S.Ct. 286).

**B. Application**

Plaintiffs have named Ulster County Family Court Judge Anthony McGinty as a defendant. Plaintiff states that the "defendants" have violated "clearly established laws." (Compl. ¶ 31). Plaintiffs allege that defendant McGinty is biased, discriminates against women who are victims of domestic violence, and has retaliated against plaintiff Amato because she has spoken out against him and other Family Court judges, staff, and appointed counsel for her child.

Plaintiffs claim that the "federal funding law" rewards "states and judicial agents," based on the "number and size of child support orders." (Compl. ¶ 32). Based on this "fact," plaintiffs state that a "financial bias has impaired fair and proper consideration of plaintiff's claims and defenses in the challenged proceedings." However, all of

Judge McGinty's alleged "biased" or "illegal" conduct was taken in connection with his position as a Family Court judge presiding over plaintiff Amato's custody case. Whether the judge's conduct involved issuing orders based on "funding," allegedly biased decisions in favor of defendant Bessmer, or making decisions that were not in the best interest of CB, these were all actions taken in the course of a custody proceeding in his capacity as a Family Court Judge. Thus, Judge McGinty is entitled to judicial immunity.

Plaintiff attempts to argue that Judge McGinty acted "in absence" of jurisdiction because he took over plaintiff's custody case from another judge in violation of N.Y. Judiciary Law § 21. (Compl. ¶ 18). Plaintiff Amato's argument is misplaced. N.Y. Judiciary Law § 21 reads as follows:

> A judge other than a judge of the court of appeals, or of the appellate division of the supreme court, shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present and sitting therein as a judge.

N.Y. Jud. Law § 21. This means that a trial-level judge shall not decide factual issues that were tried before a different judge. *See People v. Hampton*, 21 N.Y.3d 277, 284-85, 970 N.Y.S.2d 716, 992 N.E.2d 1059 (2013). This applies to situations in which the new judge is called upon to make rulings based on an evaluation of testimony that he or she did not hear. *Id.* at 286, 970 N.Y.S.2d 716, 992 N.E.2d 1059. It does not apply to motions involving pure issues of law. *Id.* at 285, 970 N.Y.S.2d 716, 992 N.E.2d 1059. This also does not mean that a judge cannot take over a custody case, or any other action, after another judge has recused herself. *See id.* Otherwise, no judge could ever be replaced after a case has begun.

**\*4** Plaintiff does not allege that there were motions pending that the previous judge did not address when Judge McGinty took over the case. In fact, the complaint indicates that Judge McGinty presided over the challenged proceedings himself. (Compl. ¶ 22(f) ). Plaintiff Amato states that Judge McGinty "pre-decided" the trial with

no evidence allowed. (*Id.*) Plaintiff Amato states that defendant McGinty "struck from the record anything that was pertinent to the safety of the child and mother...." (*Id.*) Finally, plaintiff alleges that defendant McGinty and defendants Gilday and Ingram held a "mock trial." (*Id.*) Thus, the judge heard the factual issues in question, and plaintiff has not alleged a violation of Judiciary Law § 21.

In any event, even if the judge acted in violation of Judiciary Law § 21, the appropriate remedy in state court would be remand to the same judge for his or her own hearing of the issue and a subsequent decision. *Id.* at 286, 970 N.Y.S.2d 716, 992 N.E.2d 1059. Although the state court has referred to this statute as "jurisdictional," it is only with respect to the particular decision that the judge made without hearing the evidence him or herself. *Id.* It does not deprive the court of "jurisdiction" over custody cases. Judge McGinty was still a family court judge with jurisdiction over custody matters. At worst, if Judge McGinty decided a motion or issue improperly, he would have been acting "in excess" of jurisdiction, and he would still be entitled to judicial immunity.

Plaintiffs challenge rulings by Judge McGinty and complain of the way that he managed his courtroom, allegedly "denying access to what the judge called 'his court.' " (Compl. ¶ 20). Judge McGinty allegedly placed CB in "governmental counseling for high risk children" without plaintiff Amato's consent, "denied evidence ... for purpose of record; and "falsely" placed plaintiff Amato and CB on a "missing persons clearinghouse." " (Compl. ¶¶ 20, 22(h) ). Plaintiffs allege that on January 31, 2017, defendant McGinty "issued a directive to plaintiff [Amato] under penalty of imprisonment .... sixty days in county jail on a civil offense of a woman with no background at all because she wanted to protect her child from further addiction and domestic violence." (Compl. ¶ 24). Plaintiff Amato alleges that the court mocked her and endangered CB with its rulings. (*Id.*) Plaintiff Amato also claims that a "stay" was granted by the Appellate Division, which ordered plaintiff's immediate release from the Ulster County Jail "false arrest and abuse of power." (*Id.*)

Notwithstanding plaintiffs' allegations that the Judge made improper adverse rulings against plaintiff Amato during the custody proceeding with malice or in retaliation for her "exposing" abuses in Family Court, the judge was still performing judicial functions and presiding over

plaintiff's custody action. As stated above, a judge does not lose his or her judicial immunity because he or she is accused of acting with malice or corruptly.

In *Koziol v. King*, the plaintiff sued a variety of judges in connection with custody and support proceedings. *Koziol v. King*, No. 6:14-CV-946, 2015 WL 2453481 (N.D.N.Y. May 22, 2015). In *Koziol*, then-Chief District Court Judge Gary Sharpe dismissed claims against County Court Judge King which related primarily to visitation and custody orders in matters pending before him, based on absolute immunity. *Id.* at *8. Plaintiff Koziol had also challenged that way that Judge King "managed his courtroom." *Id.*

In dismissing the claims against Judge King, Judge Sharpe cited *Davis v. Kushner*, No. 1:14-CV-511, 2014 WL 5308142, at *5 (N.D.N.Y. Oct. 16, 2014), in which the court held that a family court judge was protected by judicial immunity where the plaintiff alleged that the judge denied him custodial and visitation rights because he was a Muslim, which violated his civil rights. Thus, judicial immunity is not lost because plaintiff alleges that the judge's decision was unconstitutional. Plaintiffs in this case disagree with the judge's decisions. (Compl. ¶ 29). Plaintiff Amato quotes the judge's order awarding custody to defendant Bessmer, and states that the judge did not properly consider CB's father's drug dealing, drug abuse, arrests, domestic violence, and probation violations. (*Id.*)

**\*5** Plaintiff Amato also states that defendant McGinty abused his authority when he issued an order of protection without "a trial or hearing," and subjected plaintiff Amato to supervised visitation, allegedly contrary to New York law. (Compl. ¶ 35). Plaintiff discusses the proper procedure for "imposing supervised visitation," and faults the judge as well as the other defendants for imposing such restrictions on her. However, these decisions are also within the purview of the Family Court Judge. Even if the judge was incorrect in imposing the alleged restrictions to plaintiff Amato's visitation, it would not deprive Judge McGinty of judicial immunity.

Plaintiff Amato clearly has issues with the Family Court system and claims that the system has been abused by Judge McGinty. The complaint also contains two paragraphs which refer to "financially based custody laws" and states that "Plaintiff" seeks an order declaring

Sections 236 and 240 of the Domestic Relations Law unconstitutional. (Compl. ¶¶ 36). Judge McGinty's application of the laws that he has jurisdiction to interpret does not deprive him of judicial immunity, even if those laws were unconstitutional. The constitutionality of state statutes is an issue separate from judicial immunity. [5]

[5]     Although plaintiffs' complaint asks that two sections of New York Domestic Relations Law be declared "unconstitutional," the court must first note that, to the extent that claim could be asserted at all, it could only be asserted by plaintiff Amato because she is the only plaintiff who has been a party to the custody proceedings and to whom the statute would have been applied. In addition, none of the individuals named as defendants are proper defendants in such an action. Finally, in cases involving Domestic Relations issues, the court must afford the state court appropriate deference in light of ongoing proceedings involving the plaintiff. *See Kahn v. Shaiswit*, 414 F.Supp. 1064, 1068 (S.D.N.Y. 1976) (dismissing an action by plaintiff husband in a divorce matter in which he challenged the constitutionality of New York Domestic Relations Law § 239). The court in *Kahn* cited *Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976), in which Judge Oakes stated in a concurring opinion, that " 'probate and domestic relations are matters which have long been recognized as invoking, at least initially, interests which are predominantly of state concern.' " *Id.* at 1067 (quoting *Mendez*, 530 F.2d at 461). Thus, to the extent that plaintiff Amato may be attempting to challenge the constitutionality of sections of the New York Domestic Relations Law, the claim may be dismissed.

Plaintiff Amato claims in her third cause of action that she was denied the right to a "rational, orderly and timely court proceeding before a neutral and detached magistrate or judge." (Compl. ¶ 39). This is clearly an action that is judicial in nature, and Judge McGinty would be entitled to judicial immunity for any such claim. The same is true for plaintiff's state law claims of intentional and negligent infliction of emotional distress. Thus, plaintiffs' [6] complaint must be dismissed as against defendant McGinty.

[6]     Judicial immunity applies to shield Judge McGinty's liability as to all the plaintiffs, although plaintiff Amato is generally the plaintiff to whom the complaint refers. Plaintiff Amato appears to attempt to include the other plaintiffs by stating that they did

not get "hearings," they do not appear to have been parties to the custody case. To the extent that any of the other "plaintiffs," uncle, aunt, grandmother, sister, niece and nephew had dealings with Judge McGinty, it was only in connection with the custody action, and the judge is entitled to absolute immunity no matter who the plaintiff is.

**\*6** It has also been held that law guardians are entitled to absolute quasi-judicial immunity for their actions in representing children in Family Court. *Davis v. Kushner*, No. 1:14-CV-511, 2014 WL 5308142, at \*5 (N.D.N.Y. Oct. 16, 2014) (citing inter alia *Yapi v. Kondratyeva*, 340 Fed.Appx. 683, 685 (2d Cir. 2009) (citations omitted) ); *Holland v. Morgenstern*, No. 12-CV-4870, 2013 WL 2237550, at \*4 (E.D.N.Y. May 20, 2013) (citations omitted); *Lewittes v. Lobis*, No. 04 Civ. 155, 2004 WL 1854082, at \*11 (S.D.N.Y. Aug. 19, 2004) (citations omitted). In *Lewittes*, the court held that the plaintiff would have other available remedies if the child's attorney were derelict in performing his or her duties. 2004 WL 1854082, at \*12. This holding is supported by New York State court decisions holding that such guardians are protected by quasi-judicial immunity. *Id.* at \*11-12, 112 S.Ct. 286 (citing inter alia *Bluntt v. O'Connor*, 291 A.D.2d 106, 737 N.Y.S.2d 471 (4th Dep't), appeal denied, 98 N.Y.2d 605, 746 N.Y.S.2d 279, 773 N.E.2d 1017 (2002) ). Thus, defendant Ingram, as the attorney for CB would also be entitled to absolute immunity, and the complaint must be dismissed as against her.

### III. State Action

#### A. Legal Standards

To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk*, 693 F.Supp.2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at \*5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ). The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No.

07-CV-6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson,* 454 U.S. 312, 315, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ).

Private conduct is simply beyond the reach of section 1983 " 'no matter how discriminatory or wrongful that conduct may be.' " *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ). A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

### B. Application

Plaintiffs have sued Attorneys Andrew Gilday and Amy Ingram [7] as well as Patrick Bessmer and his girlfriend, Pamela Augustine. With respect to Attorneys Gilday and Ingram, it is well-established that private attorneys do not act under color of state law even if they are court-appointed attorneys, performing their traditional function as counsel. *See Harmon v. New York County Dist. Attorney's Office,* No. 13 Civ. 1711, 2014 WL 1044310, at *9 (S.D.N.Y. March 17, 2014) (citing inter alia *Brown v. Legal Aid Soc'y,* 367 Fed.Appx. 215, 216 (2d Cir. 2010); *Rodriguez v. Weprin,* 116 F.3d 62, 65-66 (2d Cir. 1997) ). *See also Licari v. Voog,* 374 Fed.Appx. 230, 231 (2d Cir. 2010) (private attorneys, even if they are court-appointed, and/or associated with a Legal Aid organization, do not act under color of state law when representing their clients). According to plaintiffs, defendant Gilday is the court-appointed attorney for defendant Bessmer, and defendant Ingram was appointed by the court as the attorney for CB.

[7] As stated above, defendant Ingram is entitled to immunity. The lack of state action is an alternative basis for dismissal as against this defendant.

**\*7** Defendants Bessmer (CB's father) and Augustine are clearly private parties who do not act under color of state law for purposes of section 1983. Although plaintiffs allege that Bessmer and Augustine "conspired" with other defendants, plaintiff states no facts to support these conclusory statements that are dispersed throughout the complaint. (Compl. ¶¶ 11, 12). Conclusory allegations

of conspiracy are insufficient to state a claim under the civil rights laws. *See Brown,* 367 Fed.Appx. at 216 (color of state law may be established if the individual conspired with a state actor, however, conclusory allegations of conspiracy are insufficient). The only state actor is Judge McGinty, and there is no indication, other than the judge's decision in Bessmer's favor, how defendant Bessmer or defendant Augustine would have "conspired" with the judge sufficient to establish that they acted under color of state law. [8]

[8] Plaintiff alleges that she was verbally and physically threatened by defendants Bessmer and Augustine outside the court, and that Judge McGinty only issued an order of protection for plaintiff Amato and not for CB. (Compl. ¶ 29). The alleged attack by Bessmer and Augustine was certainly a "private action," and the judge's failure to issue a protective order for CB is not alleged to have been the result of any "conspiracy."

Plaintiffs allege that defendants Gilday, Ingram, and Judge McGinty "co-conspired," violated her rights and placed CB in the custody of a dangerous criminal in violation of "Statute." (Compl. ¶ 22). "Merely resorting to the courts and being on the winning side of a lawsuit does not rise to the level of "conspiracy." " *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1988). Defendant Gilday was appointed to represent defendant Bessmer and had a duty to represent his interests in the custody proceeding. Defendant Ingram was appointed to protect the interests of CB during the proceedings. Plaintiff faults Attorney Ingram for being ill prepared, not returning plaintiff Amato's calls, and was generally an ineffective advocate for CB. Plaintiff claims that defendant Ingram also "fought vehemently" in favor of custody for defendant Bessmer (Compl. ¶ 26). Plaintiff also states that her "adversary," the judge, and the appointed child attorney "ganged up" on her. (Id.)

Defendant Ingram's alleged incompetence and the fact that the judge ultimately ruled in defendant Bessmer's favor does not indicate that the judge conspired with the attorneys regarding his ruling or that defendants Bessmer and Augustine somehow conspired with the judge to obtain a favorable result. Thus, the complaint may be dismissed in its entirety as against defendants Attorney Gilday, Attorney Ingram, Bessmer and Augustine.

### IV. <u>Minor Child Plaintiffs</u>

### A. Legal Standards

It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself. [9] *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654.

[9]   An limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case. An exception has also been established for parents representing their children in applications for Supplemental Security Income ("SSI"). *Machadio v. Apfel*, 276 F.3d 103, 106-07 (2d Cir. 2002). However, the interests of the child and the parent were "intertwined," and the Social Security regulations provided for such representation.

### B. Application

Plaintiff's have listed various "John" or "Jane" Doe minors as plaintiffs, including CB, plaintiff Amato's child. The adult plaintiffs have all signed the complaint and added their John or Jane Doe children under their names. [10] (Compl. CM/ECF pp. 27, 28, 32). However, while the adults may represent their own interests, they may not represent the interests of their children. *See Cheung v. Youth Orchestra Found. of Buffalo*, 906 F.2d 59, 61 (2d Cir. 1990) (a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child because the choice to appear pro se is not a true choice for minors who, under state law, cannot determine their own legal actions) (citing Fed. R. Civ. P. 17(b) ). The court in *Cheung* further stated that it is not in the interests of minors or incompetents that they be represented by non-attorneys. *Id.* "Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.* Thus, the minor children may not be plaintiffs on their own because they are minors, [11] and the adult plaintiffs may not represent their children. *See also Armatas v. Maroulleti*, 484 Fed.Appx. 576 (2d Cir. 2012).

[10]   One plaintiff has attempted to sign the complaint herself as a "minor," with her "guardian" signing the complaint underneath the minor's name. (Compl. at CM/ECF p.32).

[11]   Fed. R. Civ. P. 17(e).

**\*8** The court would also point out that although all the adult plaintiffs have signed the complaint, they did not include their addresses. The only specific contact information is for plaintiff Amato. The complaint contains a description of the various plaintiffs and generally where they live, [12] but no specific addresses have been provided. (Compl. ¶¶ 3-7). Plaintiff Amato may not act on behalf of any of the other plaintiffs because she is not an attorney. This includes accepting mail from the court and sending it to the other plaintiffs. In any event, as discussed below, the adults, other than the plaintiff have no standing to bring this action.

[12]   Most of the plaintiffs live in New York State, but Michelle Arzola and her two "Doe" "children" live in Ohio. (Compl. ¶ 7).

### V. Standing

#### A. Legal Standards

A plaintiff bears the burden of establishing that he or she has standing to bring an action in federal court. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "To establish constitutional standing, a plaintiff must show (1) an injury in fact, (2) causation between the injury and the offensive conduct, and (3) 'a likelihood that the injury will be redressed by a favorable decision.' " *Heath v. Banks*, No. 16-3493-cv, slip. op. at 2 (2d Cir. June 5, 2017) (quoting *Susan B. Anthony List v. Driehous*, ––– U.S. ––––, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) ). In addition, there is a "prudential standing rule" which states that, normally litigants are barred from "asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Id.* (quoting *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2014) ).

#### B. Application

In this case, plaintiff Amato has added other adult plaintiffs, including her mother, CB's Aunt and Uncle, and CB's adult cousin. None of these individuals are parties to the custody action, and it is unclear how family that lives in Ohio, (Compl. ¶ 7), would have standing to assert claims in this case. According to the prudential standing rule, the additional plaintiffs would be barred from asserting the legal interests of either plaintiff Amato or CB even if the other plaintiffs claimed that they are "injured" by any of the defendants' actions. Thus, the

complaint may also be dismissed for lack of standing as against all plaintiffs other than plaintiff Amato and CB.

## VI. *Rooker-Feldman*, The Domestic Relations Exception, and *Younger v. Harris*

### A. The Domestic Relations Exception

#### 1. Legal Standards

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshal v. Marshall*, 547 U.S. 293, 308, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which the federal courts lack." *Thomas v. N.Y. City*, 814 F.Supp. 1139, 1146 (E.D.N.Y. 1993). In *Bukowski v. Spinner*, No. 17-CV-845, 2017 WL 1592578 (E.D.N.Y. Apr. 28, 2017), the District Court dismissed a fee-paid action, sua sponte which raised very similar claims to the case herein. In *Bukowski*, the plaintiff sought to challenge rulings made in an underlying state court child custody case, [13] naming the Judge, law guardian, and County Attorney, among other defendants. *Id.* Plaintiff in *Bukowski* criticized the Judge, stated that the law guardian was "not troubled" by the judge's actions, criticized the caseworkers, and claimed that she was subjected to "unfounded" charges. *Id.* at *1.

[13]   One of the rulings granted sole custody to the father of the child. 2017 WL 1592578, at *1.

#### 2. Application

**\*9** Plaintiffs in this case are making the same claims and challenging similar actions by the state court judge and the state court attorneys who appeared in plaintiff Amato's custody case. The plaintiff in *Bukowski* also raised "constitutional" issues, but the court recognized that the allegations essentially challenged a state domestic relations matter, and were therefore, outside the federal court's jurisdiction. 2017 WL 1592578, at *3 (citations omitted). A review of plaintiffs' request for relief in this case shows that they are essentially challenging the state court's action. In addition to substantial monetary

damages, plaintiffs seek "immediate return" of CB, together with a judgment "declaring the orders, edicts, and processes described in this Complaint unconstitutional with an order permanently enjoining the enforcement of these orders." (Compl. at CM/ECF p. 26).

In order to return custody of CB to plaintiff, or to "enjoin" the state court's orders, this court would have to re-determine the judge's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See also Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F.Supp.3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Thus, the case may be dismissed based on the domestic relations exception. To the extent that the custody case has been concluded, the court will also discuss alternate bases for dismissal.

### B. *Rooker-Feldman*

#### 1. Legal Standards

A dismissal pursuant to the *Rooker Feldman*[14] doctrine is for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 Fed.Appx. 16, 18 (2d Cir. 2013). This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999) ).

[14]   *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 17, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

There are four requirements to the application of *Rooker Feldman*: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff's injuries must have been caused by the state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the judgment must have been rendered prior to filing the federal court action. *Bukowski*, 2017 WL 1592578, at *3 (citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) ).

### 2. Application

As Judge D'Agostino stated in her June 2, 2017 decision, under the *Rooker Feldman* doctrine, the district court also does not have subject matter jurisdiction over claims that effectively challenge state court judgments in general. (Dkt. No. 9) (quoting *Arena v. Dep't of Soc. Servs. of Nassau Cty.*, 216 F.Supp.2d 146, 151 (E.D.N.Y. 2002) ). Although it is unclear whether the plaintiff's custody case is finally decided because plaintiff claims that the Judge scheduled a proceeding in "October" notwithstanding that the witnesses were ready to testify.[15] (Dkt. No. 8 at CM/ECF p.4). To the extent that plaintiff's custody case is terminated, or to the extent that plaintiff seeks review of decisions that the judge has already issued, this complaint is barred by *Rooker Feldman* because plaintiff is essentially challenging the state court's decision. Plaintiff lost in state court, her injuries are allegedly causes by the state court judgment that she seeks to overturn, plaintiff is asking this court to overturn Judge McGinty's rulings, and it appears that custody was awarded to Mr. Bessmer prior to plaintiff bringing this action. Thus, all the requirements for *Rooker Feldman* have been met with respect to orders that have already been issued by Judge McGinty.

[15]     Plaintiff Amato does allege that custody has already been awarded to defendant Bessmer.

### C. *Younger v. Harris*[16]

[16]     401 U.S. 37 (1971).

### 1. Legal Standards

**\*10** In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. at 43-44.

The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id.* *Younger* abstention has been expanded to include state civil proceedings which are akin to criminal prosecutions[17] and state court proceedings which implicate a state's interest in enforcing the orders and judgments of its courts.[18] Until 2013, the abstention analysis involved determining (1) whether there was an ongoing state proceeding; (2) whether an important state interest was implicated; and (3) whether the plaintiff had an avenue open for review of constitutional claims in state court. *See Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Parent v. New York*, 485 Fed.Appx. 500, 503 (2d Cir. 2012) (quoting *Younger, supra; Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 1997) ).

[17]     *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

[18]     *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 134 S.Ct. 584, 588, 187 L.Ed.2d 505 (2013), the Court revisited the analysis required to invoke abstention under *Younger.* In *Sprint*, the Court rejected the three-part test in favor of a "categorical approach." *Mir v. Shah*, 569 Fed.Appx. 48, 51 (2d Cir. 2014) (citing *Sprint*, 134 S.Ct. at 591-94). *Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) civil proceedings that are akin to criminal proceedings; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* (quoting *Sprint*, 134 S.Ct. at 588). In *Sprint*, the Court used state-initiated custody proceedings in its analysis[19] as an example of civil proceedings which are akin to criminal proceedings. 134 S.Ct. at 592 (citing *Moore v. Sims*, 442 U.S. 415, 419–420, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents) ). *See also Davis v. Baldwin*, 594 Fed.Appx. 49, 51 (2d Cir. 2015) (same).

[19]     *Sprint* did not involve custody proceedings.

"If the federal court action falls into one of the three categories listed above, the court may then consider additional factors, such as "whether the state interest is vital and whether the state proceeding affords an adequate

opportunity to raise the constitutional claims.' " *Torres v. Gaines*, 130 F.Supp.3d 630, 636 (D. Conn. 2015). In Judge D'Agostino's decision, she stated that "several courts in the Circuit have held that *Younger* abstention applies in similar circumstances as this case." (Dkt. No. 9 at 5) (citing *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 456 S.W.3d 545, 2015 WL 1120121, at *2-3 (E.D.N.Y. Mar. 12, 2015)* (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding) ).

In *Graham*, the court stated that " 'there can be no doubt that a custody dispute ... raises important state interests.' " *2015 WL 1120121, at *3, 456 S.W.3d 545* (quoting *Reinhardt v. Com. of Mass. Dep't of Social Servs.*, 715 F.Supp. 1253, 1256 (S.D.N.Y. 1989) ). In addition, the court held that plaintiff was able to raise any potential constitutional claims in state court. *Id.* Therefore, the court applied *Younger* to dismiss plaintiff's claims for injunctive relief. The same is true in this action to the extent that any of the issues upon which plaintiffs base their action are still pending or are to be tried in the future. [20] In fact, plaintiff Amato has cited a quote from a letter, signed by Judge McGinty, telling plaintiff Amato that, if she is unhappy with the court's decision, her recourse is an appeal of that decision. [21] (Compl. ¶ 41).

[20]    *Younger* does not apply to monetary damages, thus, the dismissal of plaintiff's damage claims would be governed by the domestic relations exception and not *Younger*.

[21]    The letter is referring to a "decision" from 2016. It is unclear what that decision may have been or whether it was the judge's actual custody decision.

## VII. Opportunity to Amend

### A. Legal Standards

**\*11** Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

Because Judge McGinty and Attorney Ingram are entitled to absolute immunity, it would be futile to allow the plaintiffs to amend their complaint. No amendment will cure this deficiency. Defendant Gilday does not act under color of state law, and plaintiffs have made no sufficient allegations of a conspiracy with Judge McGinty that would be sufficient to establish state action by defendant Gilday. Thus, the court also recommends that no amendment be allowed. Defendants Bessmer and Augustine also do not act under color of state law, and defendant Bessmer is simply plaintiff Amato's adversary in the custody dispute. Defendant Augustine does not appear to be involved in the litigation at all. Thus, no amendment would change this court's recommendation with respect to defendants Bessmer and Augustine.

The court notes that, as stated above, in two of the paragraphs of her complaint, plaintiff appears to state that New York Domestic Relations Law §§ 236 and 240 are "unconstitutional," but her reasoning for this allegations is completely unclear. (Compl. ¶ 36). While plaintiff Amato might in certain circumstances be entitled to challenge the constitutionality of laws as they applied to her without running afoul of the domestic relations exception, *Younger*, or *Rooker Feldman*, the other plaintiff's do not have standing to assert this claim because the laws have not been applied to them, and plaintiff Amato has not named any defendants that would be able to afford her the relief that she seeks with respect to the sections of the law that she appears to challenge. In addition, it is likely that even a proper challenge to the statute would have to be brought first in state court. *See Kahn, supra.* The court also points out that this claim does not appear in plaintiff's "relief" section. Thus, the court will recommend dismissing this claim without prejudice to filing an amended complaint with only plaintiff Amato as the plaintiff, against the proper defendant, at the proper time, and in the appropriate forum. [22]

[22]    Although plaintiff also mentions the Family Court Act in paragraph 36 of her complaint, she does not indicate which sections of the Act she believes to be unconstitutional.

## VIII. Motion to Obtain ECF Login and Password

Because this court is recommending dismissal at this time, the court will deny plaintiff's motion to obtain ECF privileges without prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiffs' complaint be dismissed in its entirety **WITH PREJUDICE** as against defendants McGinty, Ingram, Gilday, Bessmer, and Augustine, and it is

**RECOMMENDED**, that plaintiff Amato's complaint be dismissed **WITHOUT PREJUDICE** only with respect to any claim challenging the constitutionality of New York Domestic Relations Law, and only against the proper defendant for such challenge, at the proper time for such challenge, and in the proper forum, as discussed above, and it is

**\*12 ORDERED**, that plaintiff Amato's motion to obtain ECF privileges (Dkt. No. 10) is **DENIED**, and it is

**ORDERED**, that the Clerk serve a copy of this order on plaintiffs to the extent that addresses are available.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2017 WL 9487185

---

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 4083575

2017 WL 4083575
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Frances AMATO; John Doe, progeny minor child;
Adrienne Auchmoody; Toni Jean Kulpinski;
Vladimir Kulpinski; Michaela Kulpinski; Michelle
Arzola; Jane Doe, minor child; and John Doe,
minor child of Michelle Arzola, Plaintiffs,
v.
Judge Anthony MCGINTY, individually and as
Ulster County Family Court Judge; Attorney Andrew
Gilday, individually and as a public defender
of New York; Amy Ingram, state attorney for
the child; Patrick V. Beesmer, individually; and
Pamela Augustine, individually, Defendants.

1:17-CV-00593 (MAD/ATB)
|
Signed 09/15/2017

**Attorneys and Law Firms**

FRANCES AMATO, P.O. Box 820, Marlboro, New
York 12542, Plaintiff, pro se.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge

**I. INTRODUCTION**

 *1 On May 26, 2017, *pro se* Plaintiff Frances Amato
("Plaintiff Amato") commenced this action pursuant
to 42 U.S.C. § 1983 ("Section 1983"). *See* Dkt. No.
1 at 1, 4. Plaintiff Amato is joined in this action
with her son ("Plaintiff CB"); her mother, Adrienne
Auchmoody ("Plaintiff Auchmoody"); Plaintiff CB's
aunt, Toni Jean Kulpinski ("Plaintiff TK"); Plaintiff CB's
uncle, Vladimir Kulpinski ("Plaintiff VK"); Plaintiff CB's
cousin, Michaela Kulpinski ("Plaintiff MK"); Plaintiff
CB's sister, Michelle Arzola ("Plaintiff Arzola"); Plaintiff
CB's niece ("Plaintiff Jane Doe"); and Plaintiff CB's
nephew ("Plaintiff John Doe"). *See id.* at 1-2. Plaintiffs
have brought this action against Ulster County Family
Court Judge Anthony McGinty ("Defendant McGinty")
for his role in a decision dictating the custody of Plaintiff

CB entered on October 24, 2016. *See* Dkt. No. 17 at 67;
Dkt. No. 1 at 3. Plaintiffs have also sued Plaintiff CB's
father, Patrick Beesmer ("Defendant Beesmer"); Plaintiff
CB's assigned counsel for the custody proceedings, Amy
Ingram, ("Defendant Ingram"); Defendant Beesmer's
assigned counsel for the custody proceedings, Attorney
Andrew Gilday ("Defendant Gilday"); and Defendant
Beesmer's "paramour" as Plaintiffs refer to her, Pamela
Augustine ("Defendant Augustine"), for their roles in the
custody proceeding. *See* Dkt. No. 1 at 3-4.

Plaintiffs filed a motion for a temporary restraining
order on June 2, 2017, *see* Dkt. No. 8, which the
Court denied that day, *see* Dkt. No. 9. On June 6,
2017, Magistrate Judge Baxter issued an Order and
Report-Recommendation recommending that Plaintiffs'
complaint be dismissed in its entirety with prejudice as
to all named Defendants in this action. *See* Dkt. No.
11 at 26. Plaintiffs submitted objections to Magistrate
Judge Baxter's Order and Report-Recommendation on
June 19, 2017. *See* Dkt. No. 17. Currently before the
Court is Magistrate Judge Baxter's Order and Report-
Recommendation and Plaintiffs' objections thereto.

**II. BACKGROUND**

Plaintiff Amato and Defendant Beesmer are the parents
of Plaintiff CB and were involved in custody proceedings
over Plaintiff CB. *See* Dkt. No. 1 at 5. According to
the complaint, Defendant McGinty presided over the
custody proceedings after the originally assigned judge
recused herself. *See id.* In an order dated October 24, 2016,
Defendant McGinty granted Defendant Beesmer primary
custody of Plaintiff CB. *See* Dkt. No. 17 at 64-65, 67.

Upset with the outcome of the custody proceedings,
Plaintiff Amato commenced the instant action against
Defendants for their roles in the proceedings. [1] *See* Dkt.
No. 1. Plaintiff Amato claims that during the custody
proceedings, Defendant McGinty was "[h]ighly abusive"
to "all" plaintiffs; violated Plaintiffs' "constitutional" and
"ADA rights;" induced "[e]xtreme pain and suffering and
trauma to all plaintiffs;" "endanger[ed] the welfare of
a child;" and "[i]llegally extended fictious authority in
CLEAR ABSENCE of subject matter jurisdiction." *Id.*
at 6-7. Plaintiff Amato claims that Defendant McGinty
denied her access to "his court," denied her "rights to

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 4083575

proper serving process," and denied the admission of "any evidence into the court for purpose of record." *Id.* at 7.

1    While all Plaintiffs have submitted claims against Defendants, the narrative in the complaint and objections is written in a singular voice referring to Plaintiff Amato as "I," "me," and "myself." *See generally* Dkt. Nos. 1, 17.

**\*2** Plaintiff Amato claims that Defendant McGinty "co-conspired" with other Defendants in a "mock trial" to punish Plaintiff Amato for her role as an "outspoken community advocate" for human rights and family court reform. *See id.* at 7, 9, 15. Plaintiff Amato alleges that Plaintiff CB's custody proceedings were "plagued by retributions" for Plaintiff Amato's public criticism of Defendant McGinty prior to the custody proceedings. *Id.* at 7.

Plaintiff Amato alleges that Defendant McGinty, with cooperation from Defendants Ingram and Gilday, committed a number of violations resulting in the "kidnaping and endangerment of a minor." *Id.* at 8. Plaintiff Amato claims that Defendants McGinty, Ingram and Gilday committed "Malicious Trespass," "Abuse of Process," "Retaliation," "False [and] unlawful arrest," and "Child Endangerment." *See id.* at 8-9. Plaintiff Amato alleges that Defendant McGinty "[p]re decided [a] trial with no evidence allowed." *Id.* at 8.

Plaintiffs allege "Causes of Action" for "First Amendment," "Parental Impairment," and "Due Process." *Id.* at 14-26. Plaintiffs also allege additional state law claims for "intentional and negligent emotional distress." *Id.* at 24. Plaintiffs request the "immediate return of the child," compensatory damages of $10,000,000 on each cause of action, punitive damages, costs and attorneys' fees, and a "[j]udgment declaring the orders, edicts and processes in th[e] [c]omplaint unconstitutional[,] together with an order permanently enjoining the enforcement of [the family court] orders." *Id.* at 26.

## III. DISCUSSION

### A. Standard of Review

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289

F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, "[t]he right of self-representation does not exempt a party from compliance with the relevant rules of procedural and substantive law." *Massie v. Ikon Office Solutions, Inc.*, 381 F. Supp. 2d 91, 94 (N.D.N.Y. 2005) (quoting *Clarke v. Bank of New York*, 687 F. Supp. 863, 871 (S.D.N.Y. 1988)).

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections to a magistrate judge's report, the district court engages in *de novo* review of the issues raised in the objections. *See id.*; *Farid v. Bouey*, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008). When a party fails to make specific objections, the court reviews the magistrate judge's report for clear error. *See Farid*, 554 F. Supp. 2d at 307; *see also Gamble v. Barnhart*, No. 02-CV-1126, 2004 WL 2725126, \*1 (S.D.N.Y. Nov. 29, 2004).

Although a *pro se* litigant's objections should be accorded leniency, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (quotation omitted); *see also IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865, 2008 WL 4810043, \*1 (S.D.N.Y. Nov. 3, 2008) ("To the extent ... that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error.").

**\*3** As mentioned, Plaintiffs have submitted objections to the Order and Report-Recommendation issued by Magistrate Judge Baxter. *See* Dkt. No. 17. The objections submitted by Plaintiffs are 117 pages long. *See id.* Despite the correct caption at the top of the document, the first 25 pages of the document appear to be an appellate brief to the State of New York Supreme Court, Appellate Division, Third Department. [2] *See id.* at 1-25.

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 4083575

The remaining 92 pages include a brief analysis of custody factors, Defendant McGinty's custody decision, court transcripts, testimonial statements, and documents outlining the history of the custody proceedings. *See id.* at 25-117. There is no mention of Magistrate Judge Baxter or the Order and Report-Recommendation in any of these documents. Accordingly, Plaintiffs have failed to file specific objections. However, regardless of whether the Court reviews the Order and Report-Recommendation *de novo* or for clear error, Plaintiffs' complaint is still subject to dismissal.

<sup>2</sup> The objections make several comments claiming that "this court" "held" or "ruled" and cited case law from the Third Department. *See, e.g.*, Dkt. No. 17 at 23.

**B. Judicial Immunity**

Judges are afforded absolute immunity from suit for actions related to the exercise of their judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). Judges maintain judicial immunity "even when [the] judge is accused of acting maliciously and corruptly." *Id.* at 554. Judicial immunity is only defeated by "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity;" or "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citations omitted). A judicial action is "a function normally performed by a judge, and to the expectations of the parties." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). A judge's actions are in "absence of all jurisdiction" when the court has no "statutory or constitutional *power* to adjudicate the case." *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Judicial actions made in error or "in excess of his authority" do not defeat judicial immunity. *Mireles*, 502 U.S. at 12-13 (quoting *Stump*, 435 U.S. at 356). Furthermore, a district court cannot grant injunctive relief "against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (quotation omitted).

Plaintiffs have brought a number of allegations against Defendant McGinty, including that he violated their constitutional rights, co-conspired with the remaining Defendants, endangered the welfare of Plaintiff CB, and retaliated against Plaintiff Amato for being outspoken about Defendant McGinty's purported "abuses and

discrimination against mothers and children." Dkt. No. 1 at 5-9. Accepting Plaintiff's claims as true, all claims occurred while Defendant McGinty was working within his judicial capacity to determine the proper custody for Plaintiff CB. Accordingly, Defendant McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13. Magistrate Judge Baxter correctly reasoned that any action Defendant McGinty committed with malice or in retaliation of Plaintiff Amato's criticisms was still performed within the judicial functions of a family court judge presiding over a custody dispute. Magistrate Judge Baxter also correctly concluded that Plaintiff's arguments with respect to N.Y. Jud. Law § 21 are unavailing, as Defendant McGinty did not violate that provsion, and, even if he did, he would still be entitled to judicial immunity. *See generally Gross*, 585 F.3d at 84.

Furthermore, law guardians are entitled to quasi-judicial immunity for actions pertaining to their representation of a child in family court. *See Yapi v. Kondratyeva*, 340 Fed. Appx. 683, 685 (2d Cir. 2009) (citations omitted); *Lewittes v. Lobis*, No. 04 Civ. 0155, 2004 WL 1854082, *11 (S.D.N.Y. Aug. 19, 2004). Therefore, Magistrate Judge Baxter correctly concluded that Defendant Ingram is entitled to quasi-judicial immunity by virtue of her appointment as Plaintiff CB's law guardian. *See* Dkt. No. 11 at 12-13.

**C. State Action**

**\*4** To state a claim under Section 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Moreover, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005) (quoting *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)).

The conduct of a private actor may be considered state action when the private actor "is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). However, "private attorneys—even if the attorney was

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 4083575

court appointed—are not state actors for the purposes of § 1983 claims." *Licari v. Voog*, 374 Fed. Appx. 230, 231 (2d Cir. 2010) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)). The mere conduct of a private party is excluded from the reach of Section 1983 "no matter how discriminatory or wrongful" that conduct may be. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted).

Plaintiffs filed suit against Defendant Gilday for his role as Defendant Beesmer's assigned counsel and against Defendant Ingram for her role as Plaintiff CB's assigned attorney. Defendants Gilday and Ingram, even if they were court appointed, cannot be considered state actors. *See Licari*, 374 Fed. Appx. at 231. Furthermore, Defendants Beesmer and Augustine are obvious private parties who are not state actors under Section 1983. Defendants Beesmer and Augustine had no connection to the state beyond their participation in the custody proceedings.

While Plaintiffs have claimed that Defendants Beesmer and Augustine "conspired" with the other Defendants to achieve the custody outcome, as Magistrate Judge Baxter found, there have been no facts to support these conclusory statements. [3] Conspiracy allegations that are wholly conclusory are insufficient to state a claim under Section 1983. *See Tapp v. Champagne*, 164 Fed. Appx. 106, 108 (2d Cir. 2006) (citing *Ciambriello*, 292 F.3d at 325); *see also Brito v. Arthur*, 403 Fed. Appx. 620, 621 (2d Cir. 2010) ("Complaints containing only 'conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights' will be dismissed.") (citing *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977)). Accordingly, this Court agrees with Magistrate Judge Baxter that Defendants Gilday, Ingram, Beesmer, and Augustine were not state actors, and the complaint is dismissed as to each of these Defendants.

---

[3]     Similarly, Plaintiffs' purported state law claims are entirely conclusory and do not come close to alleging facts to support a valid cause of action. *See* Dkt. No. 1 at 24-26.

**D. Minor Child Plaintiffs**
An individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007)).

Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). Three minor plaintiffs, Plaintiff CB, Plaintiff John Doe, and Plaintiff Jane Doe, have been listed as *pro se* litigants in this action. *See* Dkt. No. 1 at 1-2; Dkt. No. 11 at 16. While the adult Plaintiffs may bring this lawsuit *pro se*, they may not act as counsel for the minor children without being a licensed attorney. *See Cheung*, 906 F.2d at 61. Therefore, this Court agrees with Magistrate Judge Baxter's determination that the adult Plaintiffs in this matter may not bring suit on behalf of the minor Plaintiffs.

**E. Standing**
 **\*5**  A plaintiff who wishes to invoke federal jurisdiction bears the burden of establishing that he or she has adequate standing to bring the action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)) (other citation omitted). To establish standing, "a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009) (citations omitted). Moreover, there is a "prudential standing rule" which generally bars litigants "from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (quotation omitted).

Here, despite multiple adult Plaintiffs filing suit against Defendants, Plaintiff Amato is the only Plaintiff that was a party to the custody proceedings regarding Plaintiff CB. Plaintiffs Auchmoody, TK, VK, MK, and Arzola only appear to be connected to the custody proceedings by their relationship with Plaintiffs Amato and CB. *See generally* Dkt. No. 1. Pursuant to the prudential standing rule, Plaintiffs Auchmoody, TK, VK, MK, and Arzola cannot assert the rights of Plaintiff Amato or Plaintiff CB. *See Rajamin*, 757 F.3d at 86. Therefore, all Plaintiffs other than Plaintiffs Amato and CB lack standing, and the complaint with respect to these Plaintiffs is dismissed.

**F. Domestic Relations Exception**

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 4083575

Magistrate Judge Baxter also noted that the Court lacks subject matter jurisdiction over several of Plaintiffs' claims pursuant to various legal doctrines. Due to the nature of Plaintiffs' complaint, it is difficult to precisely determine exactly which doctrines apply, but the Court will discuss several doctrines which preclude the Court from exercising subject matter jurisdiction over several of Plaintiffs' claims.

The domestic relations exception to federal jurisdiction divests federal courts of jurisdiction in matters involving divorce, alimony, and child custody. *Marshall v. Marshall*, 547 U.S. 293, 307-08 (2006) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992)); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) ("[I]t has been uniformly held that federal courts do not adjudicate cases involving the custody of minors"). In *Bukowski v. Spinner*, No. 17-CV-0845, 2017 WL 1592578, *1 (E.D.N.Y. Apr. 28, 2017), the Eastern District of New York dismissed a case with similar allegations as those brought in this case.[4]

4    The court determined that despite the plaintiff "raising constitutional issues, the allegations stem from a state domestic relations matter and are thus outside this Court's jurisdiction." *Bukowski*, 2017 WL 1592578, at *3.

Plaintiffs allege that the "orders and processes" of the family court are unconstitutional; however, the crux of their argument arises out of the alleged improper custody determination by Defendant McGinty. *See* Dkt. No. 1 at 14-15, 21, 24, 26. Plaintiffs' alleged injuries stem directly from the disputed family court custody decision. *See id.* at 5-9, 14-16, 21, 24. Additionally, Plaintiffs request that this Court overturn the custody decision and permanently enjoin the enforcement of family court decisions. *See id.* at 26. Accordingly, to the extent that Plaintiffs request that this Court overturn the custody determination, this Court lacks jurisdiction to adjudicate such a case.

## G. *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998) (citation omitted). "Such jurisdiction is lacking

because within the federal system, only the Supreme Court may review a state court judgment." *Id.*

**\*6** In *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court held that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments." *Exxon Mobile*, 544 U.S. at 284. In light of *Exxon Mobile*, the Second Circuit has held that "there are four 'requirements' that must be met before the *Rooker-Feldman* doctrine applies." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (citation omitted). The requirements are as follows:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Id.* (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

Plaintiffs request that this Court overturn and enjoin the unfavorable decisions of the family court. *See* Dkt. No. 1 at 26. Plaintiffs claim that their injuries resulted from the custody determination made by Defendant McGinty prior to the commencement of this action.[5] *See id.* As such, to the extent that Plaintiffs seek to challenge the family court decision, this Court does not have jurisdiction to grant such relief under *Rooker-Feldman*.

5    Plaintiffs filed this action on May 26, 2017 and Defendant McGinty rendered his custody determination on October 24, 2016. *See* Dkt. No. 17 at 4-5, 67.

## H. *Younger* Abstention[6]

6    *See Younger v. Harris*, 401 U.S. 37 (1971).

*Younger* abstention "requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings." *Torres v. Gaines*, 130 F.

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 4083575

Supp. 3d 630, 635 (D. Conn. 2015) (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). This doctrine "applies if the federal action involves ongoing: (1) 'state criminal prosecutions'; (2) 'civil proceedings that are akin to criminal prosecutions'; or (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.' " *Id.* at 636 (quoting *Sprint Comme'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)). "If the federal action falls into one of these three categories, a [c]ourt may then consider the additional factors described in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)." [7] *Id.* Since the Supreme Court's decision in *Sprint*, several courts in this Circuit have held that *Younger* abstention applies in similar circumstances as this case. *See id.*; *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459, 2015 WL 1120120, *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that the plaintiff's claims for injunctive relief were barred by *Younger* where the plaintiff sought to challenge ongoing family court proceedings regarding the loss of custody of her son).

[7]   The factors examine "whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." *Torres*, 130 F. Supp. 3d at 636

Accordingly, as Magistrate Judge Baxter concluded, to the extent that any issues in this litigation are still pending in family court, this Court is barred from exercising such jurisdiction pursuant to *Younger*.

### I. Opportunity to Amend

**\*7**  When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

Defendants McGinty and Ingram are entitled to immunity, and, thus, better pleading would not be able to cure the defects in Plaintiffs' allegations against them. Defendants Gilday, Ingram, Beesmer, and Augustine were not state actors, and the conspiracy allegations

against them are entirely conclusory. Therefore, better pleading would not cure the substantive defects in the complaint. Accordingly, to the extent that Plaintiffs allege constitutional and state law violations that this Court has subject matter jurisdiction over, those claims are dismissed without leave to amend with respect to all named Defendants in this action.

However, Magistrate Judge Baxter recommended that, to the extent Plaintiff Amato challenges the constitutionality of the New York Domestic Relations Law §§ 236 and 240, she may be able to do so in certain circumstances. *See* Dkt. No. 11 at 25-26. The Court agrees, and Plaintiff's complaint is dismissed without prejudice with respect to a claim challenging the constitutionality of the New York Domestic Relations Law, with only Plaintiff Amato as the named plaintiff, and the complaint must be filed against the proper defendant, at the proper time, and in the appropriate forum, as set forth more fully in the Order and Report-Recommendation. *See id.* at 25-26.

### IV. CONCLUSION

After carefully reviewing the record in this matter, Plaintiffs' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Baxter's Order and Report-Recommendation (Dkt. No. 11) is **ADOPTED** consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiffs' complaint (Dkt. No. 1) is **DISMISSED** as against Defendants McGinty, Ingram, Gilday, Beesmer, and Augustine; and the Court further

**ORDERS** that Plaintiff Amato's complaint (Dkt. No. 1) is **DISMISSED without prejudice** with respect to any claim challenging the constitutionality of the New York Domestic Relations Law, and only against the proper defendant for such challenge, at the proper time for such challenge, and in the proper forum, as discussed above; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the court further

**Amato v. McGinty, Not Reported in Fed. Supp. (2017)**

2017 WL 4083575

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4083575

---

End of Document   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 5823116
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Edwin FERNANDEZ, Plaintiff,

v.

Vicky TURETSKY, et al., Defendants.

No. 12–cv–4092 (SLT)(MDG).
|
Signed Nov. 5, 2014.
|
Filed Nov. 7, 2014.

### Attorneys and Law Firms

Edwin Fernandez, Staten Island, NY, pro se.

Kathleen Anne Mahoney, United States Attorneys Office, Elizabeth A. Forman, Attorney General of the State of New York, Gloria Mihee Yi, NYC Law Department, Omar Hani Tuffaha, New York City Law Department Office of the Corporation Counsel, New York, NY, for Defendants.

### MEMORANDUM & ORDER

TOWNES, District Judge.

**\*1** Plaintiff Edwin Fernandez, proceeding *pro se,* alleges that his constitutional right to due process was violated by (1) federal defendants: Vicki Turetsky and Joyce A. Thomas, respectively, the Commissioner and Regional Administrator of the U.S. Department of Health and Human Services, Office of Child Support Enforcement; (2) state defendants: Thomas H. Mattox and C. Duncan Kerr, respectively, the Commissioner and Deputy Tax Commissioner of the New York State Department of Taxation and Finance, Office of Child Support Enforcement; and three Tax Compliance Agents employed by the New York State Department of Taxation and Finance, Child Support Enforcement Section–Patty Whitford, Georgia Brown, and Margaret Ramsay; and (3) a municipal defendant: Robert Doar, a former Commissioner of the New York City Human Resources Administration. Plaintiff alleges that his vehicles and funds were seized, wages garnished, and tax refunds

intercepted in order to collect child support arrears even though "Plaintiff was in compliance paying child support arrears." [Dkt. 4, Amd. Compl. ¶ 26.] This action was reassigned to this Court on March 18, 2014, after Judge Mauskopf entered a recusal order on March 17, 2014. Currently before the Court is state defendants' ("Defendants") motion to dismiss for, *inter alia,* lack of subject matter jurisdiction. [1]

---

[1] Defendants also seeks to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's claims are time-barred. This Court need not reach the issue because it lacks subject matter jurisdiction over the case.

### Legal Standard

Defendants move to dismiss on the grounds that this Court lacks subject matter jurisdiction. *Remy v. New York State Dep't of Taxation & Fin.,* 507 F. App'x 16, 18 (2d Cir.2013) ("A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction.") (quoting *Moccio v. N.Y. State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996)). "A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.' " *Sobel v. Prudenti,* 12 CV 3258 DRH WDW, 2014 WL 2750364, at \*10 (E.D.N.Y. June 18, 2014) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)). Unlike on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." ' *Mac Pherson v. State St. Bank & Trust Co.,* 452 F.Supp.2d 133, 136 (E.D.N.Y.2006) *aff'd,* 273 F. App'x 61 (2008) (quoting *Makarova,* 201 F.3d at 113). In resolving a motion to dismiss under Rule 12(b)(1), the Court is not limited to the face of the complaint, but may also consider evidence such as affidavits submitted by the parties. *Robinson v. Government of Malaysia,* 269 F.3d 133, 141 (2d Cir.2001).

### Factual History

According to the factual recitation in the May 13, 2008 Decision and Order of the Honorable Francois A. Rivera, Justice of the Supreme Court of the State of New York,

Kings County dismissing Plaintiff's CPLR Article 78 petition, Plaintiff's obligation to pay child support to his ex-wife, custodial parent of their child, arises out of a June 7, 1990 divorce decree. After Plaintiff did not comply with his child support obligations, in June 1999, his ex-wife requested that the New York City Support Collection Unit assist her in enforcing Plaintiff's support obligations. Justice Rivera's May 13, 2008 Order finds that although the child support order was terminated *nunc pro tunc* to January 9, 2007, the day that the subject child turned 21 Plaintiff still owed outstanding support arrears. Subsequently, a Supreme Court of the State of New York, Kings County Family Court Support Magistrate, at an October 23, 2007 hearing, set Plaintiff's child support arrears at $33,468.80. Justice Rivera's Order rejects Plaintiff's contention "that he has paid the required child support and now that the child is emancipated, he no longer owes any money," because "[i]n actuality, though Mr. Fernandez's [*sic*] paid child support through an income execution of his wages, and the child in question is now emancipated, *he is still in arrears for prior child support payments that he never paid.*" (emphasis added). Accordingly, Justice Rivera dismissed Plaintiff's CPLR Article 78 petition.

**\*2** Plaintiff filed the instant lawsuit pursuant to [42 U.S.C. § 1983](#) against employees of federal, state, and municipal child support enforcement agencies alleging that, because his ongoing support obligations were terminated *nunc pro tunc* to January 9, 2007 when his child turned 21, he had no further support obligations and all subsequent child support collection efforts were unconstitutional.[2] In his papers, Plaintiff challenges the October 23, 2007 decision of a Family Court Support Magistrate setting Plaintiff's child support arrears at $33,468.80. Although he does not mention his unsuccessful CPLR Article 78 petition in his pleadings, he, in effect, asks this Court to reconsider Justice Rivera's May 13, 2008 Order finding that Plaintiff owed money under a valid child support arrears decree. Defendants have moved to dismiss Plaintiff's action for, *inter alia*, lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction and the *Rooker–Feldman* doctrine.

[2] *Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *[Triestman v. Fed. Bureau of Prisons,](#) 470*

[F.3d 471, 474 (2d Cir.2006)](#) (internal quotation marks omitted).

### Discussion

#### A. *Domestic Relations Exception to Jurisdiction*

Defendants contend that this Court lacks subject matter jurisdiction over the action under the domestic relations exception to federal court jurisdiction. *See [Ankenbrandt v. Richards,](#) 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992).* The so-called "domestic relations exception" dates back to 1858, when the Supreme Court announced that federal courts have no jurisdiction over suits for divorce or the allowance of alimony. *[Barber v. Barber,](#) 62 U.S. 582, 584, 21 How. 582, 16 L.Ed. 226 (1858); [Ankenbrandt,](#) 504 U.S. at 703* (explaining that exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees.") Although courts frequently use broad language when characterizing the exception, the Supreme Court has clarified that, in actuality, the exception is narrow, and "encompasses *only* cases involving the issuance of a divorce, alimony, or child custody decree." *[Ankenbrandt,](#) 504 U.S. at 704* (emphasis added). Thus, where a lawsuit "in no way seeks such a decree," the exception's invocation is inappropriate. *Id.; [Williams v. Lambert,](#) 46 F.3d 1275, 1283 (2d Cir.1995)* ("[T]he exception is very narrow."); *but see [McKnight v. Middleton,](#) 699 F.Supp.2d 507, 516–17 (E.D.N.Y.2010) affd, 434 F. App'x 32 (2d Cir.2011)* (observing that in *[Schottel v. Kutyba,](#) 06–1577–CV, 2009 WL 230106 (2d Cir. Feb.2, 2009),* the Second Circuit expanded the exception to claims that, in fact, challenge domestic relations decrees, even where they are recast as actions seeking monetary relief).

The domestic relations exception is rooted in an understanding that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *In re [Burrus,](#) 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890).* "[T]he exception is grounded, not in the Constitution, but as a matter of 'statutory construction' of the federal diversity statute." *[Tilley v. Anixter Inc.,](#) 283 F.Supp.2d 729, 733–34 (D.Conn.2003)* (citing *[Ankenbrandt,](#) 504 U.S. at 703*). Despite its origins in the federal diversity statute, courts in this district routinely apply the exception to cases brought under the federal courts' federal question jurisdiction. *See [Mitchell–Angel v. Cronin,](#) 101 F.3d 108 (2d Cir.1996)* ("District courts in this

Circuit have held that the exception includes civil rights actions directed at challenging the results of domestic relations proceedings.") (citing *McArthur v. Bell,* 788 F.Supp. 706, 708 (E.D.N.Y.1992)); *see also Sobel,* 2014 WL 2750364, at *11 (finding exception strips federal court of jurisdiction where "Plaintiff's complaint is, in effect, a civil rights action directed at challenging the results of domestic relations proceedings, and, in particular, a state court's decisions regarding child support."); *Sullivan v. Xu,* No. 10–CV–3626 (ENV), 2010 WL 3238979, at *2 (E.D.N.Y. Aug.13, 2010) ("Although plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic relations matters."). That said, the Second Circuit recently noted in a summary order that the Circuit "expressly decline[s] to address whether the domestic relations exception to federal subject matter jurisdiction applies to federal question actions." *See Ashmore v. Prus,* 12–2760–CV, 2013 WL 362998, at *2 (2d Cir. Jan.31, 2013) (summary order); *see also Ahlawat v. State of Connecticut Superior Court,* 3:12–CV–1042 JBA, 2013 WL 3338572, at *1 n. 2 (D.Conn. July 2, 2013) (noting that "the Second Circuit has not resolved whether [the domestic relations] exception would provide a further bar to Plaintiff's federal question lawsuit.").

**\*3** Here, if Plaintiff's claim is read to challenge the enforcement of a child support decree on the grounds it is erroneous, his lawsuit, even though framed as a civil rights action, would be barred by the domestic relations exception. However, reading *pro se* Plaintiff's complaint to "raise the strongest arguments that they suggest," *Triestman,* 470 F.3d at 474, Plaintiff's complaint can be read more narrowly-to seek monetary damages for violations of his due process rights that occurred during the enforcement of a *valid* child support decree. *Ankenbrandt,* 504 U.S. at 704 (noting that the exception has no application where the lawsuit "in no way seeks [a domestic relation] decree"). Even so, some courts in this district have held that lawsuits seeking monetary relief for purportedly unlawful conduct undertaken to enforce valid support decrees are also barred by the domestic relations exception. *See Joseph v. Stewart,* 13–CV–1678 NGG LB, 2013 WL 3863915, at *2 (E.D.N.Y. July 24, 2013) (applying domestic relations exception where "Plaintiff challenges the enforcement and effect of his child support obligations, and although he invokes his constitutional rights, the essence of his allegations concern state law domestic relations matters."). [3] This Court need not resolve whether such a narrow challenge would be

barred by the domestic relations exception because the Court lacks subject matter jurisdiction over this action under, *inter alia,* [4] the *Rooker–Feldman* doctrine.

[3]   But see *King v. Comm'r & New York City Police Dep't,* 60 F. App'x 873, 874–75 (2d Cir.2003) (summary order) ("The instant appeal is brought pursuant to the court's federal question jurisdiction, not its diversity jurisdiction. Nevertheless, the City argues that the domestic relations exception is not limited to diversity cases. Although this seems contrary to precedent, the city does cite language to support its argument. We need not examine this question, however, because even under the broadest interpretation of the exception, it applies only to cases that seek issuance or modification of divorce, alimony, or child custody decrees. Appellant is not seeking a domestic relations award, and he is not asking that his parental rights be reinstated. Instead, his complaint seeks monetary damages. The domestic relations exception to federal jurisdiction is therefore irrelevant to this action.") (citation and parenthetical explanation omitted.)

[4]   Even if this Court has jurisdiction, "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990).

## B. *Rooker–Feldman* Doctrine

The so-called *Rooker–Feldman* doctrine divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Additionally, the doctrine "bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 185 (2d Cir.1999) (citations and internal quotation marks omitted). In *Exxon Mobil,* the Supreme Court reined in the use of the doctrine, explaining that the doctrine "is confined to cases ... brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* In the wake of *Exxon Mobil,* the Second Circuit revisited its prior precedents and limited the application *of Rooker–Feldman* to cases satisfying four "requirements":

First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

**\*4** *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005) (quoting *Exxon Mobil,* 544 U.S. at 284); *see also McKit hen v. Brown,* 626 F.3d 143, 154 (2d Cir.2010).

Courts have repeatedly invoked the doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears. *See Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau,* 07–CV–03755JFBAKT, 2009 WL 580426, at \*6–7 (E.D.N.Y. Mar.5, 2009) (finding plaintiff, who previously unsuccessfully sought to have child support "arrears vacated ... in state court" cannot "utilize the federal courts to, in essence, challenge the existing judgment regarding child support arrears, or the County's enforcement of that judgment."); *Remy,* 507 F. App'x at 18–19 (finding that court was barred under *Rooker–Felman* from exercising jurisdiction over suit challenging "Family Court's arrears order[, where plaintiff] ... had a full and fair opportunity to litigate [the arrears order in state court]."); *Chestnut v. Gabler,* No. 06 Civ. 34E(F), 2007 WL 529556, at \*3 (W.D.N.Y.Feb.13, 2007) ("Construed liberally, the complaint essentially alleges that plaintiff's constitutional rights were violated during the course of the Family Court proceedings and plaintiff now seeks, in part, to challenge in this Court the orders issued in those proceedings. To the extent plaintiff is asking this Court to review the proceedings before the Allegany County Family Court, said review by this Court is barred by the *Rooker–Feldman* doctrine and the complaint must be dismissed accordingly."). In *Sorenson,* the Court explained that although the plaintiff attempted to recast his claims as alleging "improper enforcement of the Family Court judgment rather than [challenging] the judgment itself[,] ... *Rooker–Feldman* also bars such claims because the enforcement is inextricably intertwined with

the state court judgment." *Sorenson,* 2009 WL 580426, at \*7 (collecting cases).

Plaintiff expressly asks this Court to review the October 23, 2007 family court order setting arrears on the grounds that the decision was erroneous because he had complied with all previous child support obligations and thus could not be liable for arrears. Under the *Rooker–Feldman* doctrine, this Court may not do so. As in *Sorenson,* to the extent Plaintiff recasts his claims as alleging improper enforcement of the child support arrears decree, under these circumstances, the enforcement of the arrears decree is inextricably intertwined with the validity of the decree, itself. Thus this Court is barred under the *Rooker–Feldman* doctrine from reviewing the claim. Additionally, this Court is precluded from reviewing Plaintiff's claims for the separate reason that Plaintiff has already brought an Article 78 petition in state court raising these exact arguments. Thus, the instant lawsuit, in effect, challenges not only the October 23, 2007 arrears order, but also the May 13, 2008 decision of Justice Rivera dismissing the Article 78 petition. Plaintiff's attempts to appeal to this Court the decisions of the Family Court Support Magistrate and Justice Rivera are barred by the *Rooker–Feldman* doctrine. Accordingly, Defendant's motion to dismiss is granted.

**\*5** The above reasoning applies with equal force to Plaintiff's claims against the other defendants who allegedly enforced the child support arrears decree. Thus, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims against all of the remaining defendants in the action. Given that this Court has determined that it lacks subject matter jurisdiction over the entire action, the Court, *sua sponte,* dismisses Plaintiff's claims against the remaining defendants and dismisses Plaintiff's complaint in its entirety. *Morris v. Rosen,* 12–3143–CV, ––– F. App'x ––––, 2014 WL 4233392, at \*1 (2d Cir. Aug.28, 2014) (affirming district court's *sua sponte* dismissal of *pro se* plaintiff's complaint for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.)

### Conclusion

For the foregoing reasons, the State Defendant's motion to dismiss is granted on the grounds that this Court lacks subject matter jurisdiction over the instant action under the *RookerFeldman* doctrine. For the same reasons, the

Court *sua sponte* dismisses the action against all other defendants. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5823116

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 2044688
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

Elaine CASTIGLIONE, Plaintiff,

v.

Mario PAPA; Hodgson Russ, LLP; Carl J. Kempf, Esq.; Louis J. Castiglione, Jr.; Barbara Keller Castiglione; Gem Jewelers, Inc.; Christina A. Chaite; Mark P. Lasch; Keybank N.A.; Keycorp; Polly Hoye; Karen K. Peters Jad, Defendants.

No. 1:09–CV–0967 (LEK/DRH).
|
May 24, 2010.

*MEMORANDUM–DECISION AND ORDER*

LAWRENCE E. KAHN, District Judge.

**\*1** On August 26, 2009, Plaintiff Elaine Castiglione ("Plaintiff"), acting *pro se*, filed her Complaint against Defendants Louis J. Castiglione, Jr.; Barbara K. Castiglione; Christine A. Chaite; Gem Jewelers, Inc. ("Gem Jewelers"); [1] Mario Papa; Hodgson Russ LLP; [2] Carl J. Kempf; Mark P. Lasch; Key Private Bank; KeyBank, N .A.; KeyCorp; [3] Judge Polly A. Hoye; and Judge Karen K. Peters [4] (collectively, "Defendants"). Dkt. No. 1. On December 23, 2009, Plaintiff amended her Complaint, deleting Key Private Bank as a Defendant, and, pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 28 U.S.C. § 1367, alleging constitutional and state law violations by the remaining Defendants. Am. Compl. (Dkt. No. 15). Presently before the Court are Motions to dismiss filed separately by the Castiglione and Hodgson Russ Defendants (Dkt. No. 23); the Judicial Defendants (Dkt. No. 24); and the KeyBank Defendants (Dkt. No. 26); as well as Plaintiff's Cross–Motion seeking a stay, sanctions, and other forms of relief (Dkt. No. 34); Plaintiff's request for entry of default judgment as to Defendant Carl J. Kempf (Dkt. No 37); Defendant Kempf's Cross–Motion in opposition to default judgment and request to join the Hodgson Russ Defendants' Motion to dismiss (Dkt. No. 40); and Plaintiff's Motion for service costs and other relief (Dkt. No. 38).

[1]    Louis J. Castiglione, Jr.,Carbara K. Castiglione Christine A. Chaite, and Gem Jewelers shall be referred to collectively as the "Castiglione Defendants."

[2]    Defendant Papa and Hodgson Russ LLP shall be referred to collectively as the "Hodgson Russ Defendants."

[3]    Defendants Lasch; Key Private Bank; Keybank, N.A.; and KeyCorp shall be referred to collectively as the "KeyBank Defendants."

[4]    Defendants Hoye and Peters shall be referred to collectively as the "Judicial Defendants."

## I. BACKGROUND

Plaintiff, a *pro se* litigant, asserts that each of the named Defendants played a role in an alleged conspiracy ultimately meant to deprive her of her rightful inheritance under her father's will and accomplished through constitutional and state law violations. The precise facts and legal claims asserted by Plaintiff are difficult to discern, though her broad allegations are apparent.

Louis J. Castiglione, Plaintiff's father died on November 12, 2004, leaving his wife, Elaine Castigilione, and two children, Defendant Louis Castiglione, Jr. ("Junior") and Plaintiff Elaine Castiglione, as well as Plaintiff's daughter, Defendant Christine A. Chaite ("Chaite"). Plaintiff's mother sought probate of an unsigned copy of Plaintiff's father's will ("the will") and codicil ("the codicil") in the New York State Surrogate Court. Plaintiff challenged the aforementioned will and codicil on various grounds relating to their authenticity and whether they accurately reflect her father's testamentary intent. Defendant Judge Polly A. Hoye ("Hoye"), a Fulton County Surrogate Court Judge, heard the challenges, "found them to be frivolous," and, on January 11, 2006, allowed probate of the will. *See* Dkt. No. 23 Ex. A ("Hoye Order") at 8. Plaintiff appealed this decision, and on March 29, 2007, Defendant Karen K. Peters ("Peters"), a New York Supreme Court Justice serving on the Appellate Division, New York Supreme Court, Third Judicial Department, affirmed the Hoye Order, with Judges Spain, Mugglin, Rose, and Lahtinen (all non-parties in this action) concurring. *See* Dkt. No. 23 Ex. B ("Peters Order").

**\*2** The instant action stems from events leading up to and occurring during the probate process. Plaintiff claims not to be appealing the state court rulings regarding the actual probate of her father's will, insisting instead that she is alleging constitutional and state violations committed by various actors participating in the probate process.

Plaintiff's Amended Complaint begins with allegations seeking to document the "ruthless and unlawful measures that Junior was willing to take in order to ensure his inheritance would ... jump for 50% to 100% .... [by] depriving his ill sister of any financial benefit [under the will] ... [and] to also commit 'the perfect murder' of his only remaining sibling." Am. Compl. ¶ 2. Primarily, Plaintiff alleges that Junior, in a display of "sociopathic vindictiveness" toward her, forged their father's signature on the codicil, fraudulently created an unsigned version of the will for use in the Surrogate Court hearing Plaintiff's probate challenge to the will, fraudulently concealed parental assets, unduly influenced Plaintiff's father and mother, and, in conspiracy with Defendant Mario Papa ("Papa"), an attorney and relative, sought to bribe judicial figures, namely Defendants Hoye and Peters, to induce a fraud upon the court and achieve a predetermined outcome to Plaintiff's probate challenge. *Id.* ¶¶ 3–4, 8, 12.

Plaintiff claims that Papa, acting individually and as an agent of his law firm, Defendant Hodgson Russ, LLP, played an instrumental role in the alleged conspiracy, which she claims "divest[ed] Plaintiff [of her] due process rights in the Probate matter." *Id* . Plaintiff alleges that Papa taught Junior how to conceal unnamed assets, and then, in breach of fiduciary duties and in furtherance of a fraud upon the court, advised Junior to create a codicil naming the latter as executor of the trust and last will and endowing him with authority to remove all trust funds. This latter power, it is alleged, was designed to ensure, and did ensure, the cooperation of Defendants Mark P. Lasch ("Lasch"), the trustee of a trust created by the will, and KeyBank, N.A. and KeyCorp, the institutions in which the funds were held. *Id.* ¶ 6. Lasch, Plaintiff alleges, acting individually and as an agent of the KeyBank Defendants, breached his fiduciary obligations as trustee,[5] was unjustly enriched, and knowingly participated in the conspiracy to conceal assets and defraud the court and Plaintiff, by going along with the scheme orchestrated by Junior and Papa.[6] *Id.*

5    Specifically, Plaintiff alleges that Defendant Lasch "thumbed his nose at Plaintiff's repeated letters" demanding an accounting and distribution under the allegedly false will. Am. Compl. ¶ 6.

6    KeyBank NA and KeyCorp are alleged to be liable as well under theories of respondeat superior as well as negligence. *See* Am. Compl. ¶ 3 Causes of Action.

Plaintiff alleges that Junior, Papa, and Lasch's alleged scheme to defraud was further secured when Papa "enlisted the help the help of [Defendant Carl] Kempf to create fraudulent documents and to fraudulently misrepresent facts at oral argument at Appeal."[7] *Id.* Junior's wife, Defendant Barbara Castiglione and niece (Plaintiff's daughter) Defendant Christine Chaite "were also given supportive roles to play in the fraud." *Id.* Plaintiff does not allege any further facts about what those supportive role included. Plaintiff sues Gem Jewelers, of which Barbara Keller Castiglione is allegedly the agent, owner, principle, stockholder, or employee. Am. Compl. at 10. Plaintiff apparently seeks to hold Gem Jewelers liable for the role played by Barbara Keller Castiglione, or derivatively, for the acts of Barbara Keller Castiglione's husband, Papa. *Id.*

7    Defendant Kempf is sued individually and as an agent/employee of Hodgson Russ, LLP. It may be inferred from the Amended Complaint that the alleged production fraudulent documents and misrepresentation of facts occurred in his providing services for the proponents of probate.

**\*3** Finally, Plaintiff alleges that Junior, Papa, and the other Defendants secured their unlawful goals through providing bribes to the Judicial Defendants in exchange for "a predetermined case outcome" in which the Judicial Defendants would accept the fraudulent codicil and a testator witness' affidavit as accurate and reliable. *Id.* 6–12. Plaintiff alleges that neither Judge Hoye nor Peters truly believed these documents to be authentic, but rather participated in the fraud for their personal gain. *Id.* Plaintiff does not assert the form or value of the bribes; in fact, her Amended Complaint asks the Judicial Defendants very directly "what was the price of your integrity?". Dkt. No. 15 ¶¶ 9, 12. She alleges, however, that certain occurrences attest to the fact that bribes were made. As to Judge Hoye, these include four "secret ex parte meetings" between Hoye and Papa prior to Hoye's Order and an "invitation" by Hoye for Plaintiff to appeal her decision. *Id.* ¶ 8–9.

Plaintiff became aware of the ex parte meetings after discovering court documents, which mention them and allegedly read as "a veritable contractus criminis for predetermined case outcome." She does not attach or otherwise describe these documents other than to state that they evince those "terms and conditions [that] were precisely stated by Papa and precisely fulfilled by Hoye." *Id.* ¶ 11.

As to Judge Peters, Plaintiff alleges she also partook in ex parte contacts, admitted hearsay evidence, and eventually issued an opinion "affirming Hoye's Opinion in the face of all of Papa's fraud upon a court and bogus documents." *Id.* ¶ 12. The Peters Order allegedly "bear[s] no relationship to either the facts of the case or controlling law and, remarkably, directly affirms that it is OK to divest a party of their Federal rights to due process [in a manner] ... this very Appellate tribunal is well on record" as holding is a basis for reversal. *Id.* From this, Plaintiff concludes that Peters delivered her opinion in exchange for a bribe.

Plaintiff admits that the facts in her Amended Complaint are not fully developed. Am. Compl.; *see also* Dkt. No. 34 at 56. Plaintiff contends that the "full facts and causes of action against each defendant" will be included in a forthcoming second amended complaint. Am. Compl. at 1, *see also* Dkt. No. 34 at 56. Plaintiff has been unable to provide these facts and causes of action as a result of medical issues, which, because she is acting *pro se,* have prevented her from being able to craft a detailed complaint. *See* Dkt. No. 34 at 56. Defendants, meanwhile, have filed three separate Motions to dismiss (Dkt.Nos.23, 24, 26). Defendant Kempf was not party to any of these Motions and filed no response to Plaintiff's Amended Complaint, claiming not to be properly served until May 5, 2010 at the earliest, *see* Dkt. No. 40–2, the same date Plaintiff filed a Request for default judgment as to Kempf, (Dkt. No. 37) and a separate Motion seeking service costs and other relief (Dkt. No. 38). On May 10, 2010, Kempf filed a Cross–Motion to vacate Plaintiff's request for entry of default against him and for leave to join in the Hodgson Russ Defendants' Motion to dismiss. Dkt. No. 40.

## II. THE KEMPF MOTIONS

**\*4** Before reviewing the merit of Defendants' Motions to dismiss, the Court will first address the issues surrounding Defendant Kempf. Specifically, the Court will address whether default judgment should lie against Kempf for his

failure to respond to Plaintiff's Complaint and Amended Complaint, or whether the Court should grant leave for Kempf to join the Hodgson Russ Defendants' Motion to dismiss.

### A. Default Judgment and Proper Service

Federal Rule of Civil Procedure 55(a) provides, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). The Court may "set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b) ." FED. R. CIV. P. 55(c). Plaintiff, pursuant to Rule 55, seeks default judgment against Defendant Kempf as a result of his failure to timely respond to her pleadings.

Generally, defendants must serve a responsive pleading "within 21 days after being served with the summons and complaint." FED. R. CIV. P. 12(a)(1)(A)(i). Unless otherwise ordered by a court, plaintiff must "serve [ ] on every party ... a pleading filed after the original complaint." FED. R. CIV. P. 5(1)(B). However, "[n]o service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." FED. R. CIV. P. 5(2).

Federal Rule of Civil Procedure 4 requires that a plaintiff serve a summons and copy of the complaint, generally within 120 days of filing that complaint. FED. R. CIV. P. 4(a), (c), (m). Generally, for plaintiffs located within a judicial district of the United States, service is proper if it: "follow[s] state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1). New York law allows for personal service; delivery of the summons and complaint to a person of suitable age and discretion at the defendant's "actual place of business," and then mailing copies to the defendant at his last known residence or at his actual place of business; or service upon an authorized agent. N.Y. C.P.L.R. § 308. [8] Alternatively, under the Federal Rules, proper service may be accomplished by:

[8]    Where service cannot be made with due diligence through the first to methods, New York additionally

provides for "affix and mail" service. *See* N.Y. C.P.L.R. § 308(4).

    (A) delivering a copy of the summons and of the complaint to the individual personally;

      (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

      (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e)(2)

In the instant action, Plaintiff filed her initial Complaint (Dkt. No. 1), naming Kempf as a Defendant, on August 26, 2009 and allegedly personally delivered him a copy on December 16, 2009. *See* Dkt. No. 37 ¶ 6. Plaintiff served Kempf with a copy of her Amended Complaint via First Class mail to his home address on December 24, 2009. *Id.* ¶ 10. Kempf filed no response until May 5, 2010, when he moved (Dkt. No. 40) to vacate Plaintiff's request for default judgment against him (Dkt. No. 37). For the purpose of his opposition to Plaintiff's request for default judgment, Kempf does not deny receiving service of the original Complaint. Mem. in Opp'n to Default Judgment (Dkt. No. 40–2) at 3. Kempf claims however, that such service "was without legal significance, because the complaint did not contain any cognizable claim against him.... [Furthermore, h]ad Kempf had any obligation to respond ... it was eliminated by the filing of an Amended Complaint which contains certain claims against him." *Id* .

 *5 Kempf's latter argument is correct; Plaintiff's Complaint alleges only that Kempf was involved in a "criminal nexus" with state officials through which she was divested of her Sixth Amendment right to representation in the probate litigation and the instant matter. Dkt. No. 1 ¶ 4. Her Amended Complaint, greatly expands her claims against Kempf, naming at least nine causes of action. [9] Am. Compl. at 11. Given that Plaintiff's amended pleading asserts new claims for relief, she was required to serve that Amended Complaint on Kempf. FED. R. CIV. P. 5(2). Plaintiff attempted to do so via First Class mail on December 24, 2009, but there is no indication that such mailing was accompanied by personal service, or that Plaintiff served a copy of the summons and Amended Complaint on a person of suitable age

and discretion at the Kempf's actual place of business or with his authorized agent. See Dkt. No. 37 Ex. A. Proper service of the Amended Complaint has, therefore, not been accomplished as to Kempf. Accordingly, granting default judgment against him for failure to respond would be inappropriate. Accordingly, Plaintiff's request for default judgment against Kempf (Dkt. No. 37) is denied.

[9]    The Court notes that some of these causes of action may be duplicative or invalid. Nevertheless, the Amended Complaint undeniably asserts new claims against Kempf from those in her original Complaint. *Compare* Dkt. No. 1 *with* Dkt. No. 15.

**B. Leave to Join the Hodgson Russ Defendants' Motion to Dismiss**

On May 10, 2010, Defendant Kempf Cross–Motioned to vacate Plaintiff's request for default judgment and request leave to join the Hodgson Russ Defendants' Motion to dismiss (Dkt. No. 23). Dkt. No. 40. The Court hereby grants Kempf leave to so join the Hodgson Russ Motion (Dkt. No. 23), which shall serve as Defendant Kempf's response to Plaintiff's Amended Complaint.

**III. MOTIONS TO DISMISS**

The Judicial Defendants, the Castiglione and Hodgson Russ Defendants, and the KeyBank Defendants have each filed separate Motions to dismiss Plaintiff's Amended Complaint. These Motions argue certain bases for dismissal that are specific to the filing Defendant group, as well as other bases for dismissal are common to all. The Court finds ample grounds to dismiss Plaintiff's action based on these commonly alleged bases.

**A. The Amended Complaint Fails to Conform to Federal Rules of Civil Procedure 8 & 10**

Rule 8(a) (2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Second Circuit has explained the rationale behind the rule, stating,

> [t]he statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair

notice of the claim asserted so as to enable him to answer and prepare for trial. The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.

*Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (citations and quotations omitted). In furtherance of the above goals, Rule 8 additionally requires that "each averment of a pleading shall be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

**\*6** Similarly, to ensure defendants are provided notice and afforded the opportunity to properly and thoroughly respond to allegations made against them, Rule 10(b) provides, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.... If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense." FED. R. CIV. P. 10(b).

Plaintiff's Amended Complaint fails to conform to these Rules. While providing a host of colorful remembrances, asides, and legal conclusions, Plaintiff's Amended Complaint is anything but simple, concise, and direct. Defendants cannot be required to respond, and be held to those responses in future litigation, where the factual and legal allegations remain so unclear. Plaintiff's promise that she plans to file "[her] Second Amended complaint, which will contain full facts and causes of action against each defendant" only reinforces this conclusion. Am. Compl. at 3. While this fact alone requires the Court to dismiss the instant Amended Complaint without prejudice, for the reasons discussed below, Plaintiff's cause of action is also inadequate for substantive and procedural reasons that require more than a properly drafted complaint to correct.

### B. The Amended Complaint is Barred Under the *Rooker–Feldman* Doctrine

Plaintiff's Amended Complaint is barred under the *Rooker–Feldman* doctrine. That doctrine recognizes that "a United States District Court has no authority to review

final judgments of a state court in judicial proceedings," *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983), as "[t]o do so would be an exercise of appellate jurisdiction" reserved exclusively for the Supreme Court. *Rooker v. Fidelity Trsut Co.,* 263 U.S. 413, 416 (1923); *see also Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77 (2d Cir.2005). The Supreme Court has limited the applicability of the *Rooker–Feldman* doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). Accordingly, the Second Circuit has recognized

that there are four requirements for the application of *Rooker–Feldman.* First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced."

*Hoblock,* 422 F.3d at 85 (quoting *Exxon Mobil Corp.,* 544 U.S. 280) (footnote omitted). Applying these factors, a

**\*7** federal suit is therefore barred by *Rooker–Feldman* only if it complains of injury from the state-court judgment and seeks review and rejection of that judgment, but not if it raises "some independent claim."…. Just presenting in federal court a legal theory not raised in state court, however, cannot insulate a federal plaintiff's suit from *Rooker–Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed.

*Id.* at 86.

Thus conceived, the *Rooker–Feldman* doctrine bars this Court's adjudication of Plaintiff's action. First, Plaintiff lost her probate challenge in the New York State Surrogate Court, *see* Hoye Order (Dkt. No. 23 Ex. A), a decision affirmed on appeal. *See* Peters Order (Dkt. No. 23 Ex. B). While Plaintiff now alleges that Defendants denied her due process, [10] her claim essentially is that the state court's decision to allow probate of the will was incorrect and resulted in her not receiving an inheritance she claims to be rightfully hers. *See, e.g.,* Am. Compl. ¶¶ 5, 7.

[10]      Plaintiff alleges violations of her rights under the Fifth, Sixth, Seventh and Fourteenth Amendments. Am. Compl. at 13. Her due process claim appears to be limited to denial of her due process rights by New York State officials. It is properly brought under the Fourteenth Amendment and not under the Fifth Amendment. The Court is unable to identify any basis for Plaintiff's Sixth and Seventh Amendment claims.

While Plaintiff seeks to frame her current action in terms of constitutional violations and various claims not before the state court, this Court cannot overlook the plain fact that her Amended Complaint consists of an array of reasons why her father's will should not have been admitted to probate. *See, e.g., id.* ¶¶ 3, 5, 7. Plaintiff is essentially complaining that she suffered a lesser inheritance than she was rightfully due as a result of the state court's conclusion regarding the authenticity of the will and codicil. *Id.* Insofar as she seeks a determination from this Court that the will and codicil were not authentic, but rather the result of forgery and fraud committed primarily by Junior and Papa, Plaintiff is asking this Court to review and reject the state court's decision to allow probate of the will.

Plaintiff's present action adds new claims as well, but "a federal suit is not free from *Rooker–Feldman*'s bar simply because the suit proceeds on legal theories not addressed in state court." *Hoblock,* 422 F.3d at 87. The new claims, such as those involving the bribery of judges and the like, are wholly conclusory, completely unsupported by facts, and simply asserted as a way of explaining the state court decisions that Plaintiff now seeks this Court to review and reject. *See infra* at Sec. III.D. Thus, Plaintiff is asking this Court to review, under the guise of a constitutional due process claim, the judgments rendered in state court from which her complained of injury directly flows. *See Hoblock,* 422 F.3d at 88 ("in some circumstances, federal suits that

purport to complain of injury by individuals in reality complain of injury by state-court judgments.").

The injury Plaintiff complains of is actually one caused by the state court's judgment to allow probate of her the will and codicil rather than Papa and Junior's alleged forgery of that will and codicil. Therefore, the second and third requirements for the application of the *Rooker–Feldman* doctrine are present.

**\*8** Finally, the state court judgment and appeal were both rendered years before Plaintiff filed her Complaint. *Compare* Hoye Order (Dkt. No. 23 Ex. A) (issued Jan. 11, 2006) and Peters Order (Dkt. No. 23 Ex. B) (issued May 10, 2007) *with* Compl. (Dkt. No. 1) (filed Aug. 26, 2009). The *Rooker–Feldman* doctrine is applicable, and this Court, therefore, lacks subject matter jurisdiction to hear Plaintiff's action. Hence, her Amended Complaint must be dismissed.

### C. The Amended Complaint is Barred Under the Doctrine of Collateral Estoppel

The above finding that the *Rooker–Feldman* doctrine applies depends upon the inescapable conclusion that the gravamen of Plaintiff's action arises from what she believes is the Surrogate Court's incorrect decision, and the Appellate Division's affirming that decision. *See generally* Am. Compl. Relatedly, the essence of her current action consists of the same issues she litigated in state court. Specifically, those issues such as the alleged forgery of her father's signature that were litigated and actually decided in her probate challenge form the basis of her instant action. *See* Hoye Order; Peters Oder. Thus, in addition to the fact that the Court is divested of jurisdiction under the *Rooker–Feldman* doctrine, the doctrine of collateral estoppel, or issue preclusion, prohibits Plaintiff from re-litigating the issues central to her action. *See Cent. Hudson Gas & Elec. Corp v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir.1995) (collateral estoppel applies where: "(1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits.").

Plaintiff's Amended Complaint is inextricably based on contentions about identical issues already decided in the

state court's decision to allow probate of the will. The state court considered Plaintiff's claims that the will and codicil were inauthentic and/or the result of undue influence. *See* Hoye Order. Plaintiff's new allegations of judicial bribery are wholly unsupported, *see infra* at Sec. III.D, and do not persuade this Court that she was not given a "full and fair opportunity" to litigate those issues in the prior proceedings. To the extent that Plaintiff wished to raise these allegations, she could have done so on appeal or as the basis of a motion for reconsideration before the state court. She did not. Rather, she has simply restated the same allegations that she litigated in her probate challenge, this time framed as constitutional claims. She is barred from doing so, and because her Amended Complaint is utterly dependent upon those previously litigated issues, it must be dismissed.

### D. The Amended Complaint Fails to State a Plausible Claim for Relief

**\*9** Plaintiff's Amended Complaint is replete with unsupported legal conclusions. Defendants assert that Plaintiff's Amended Complaint must, therefore, be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a plausible claim for relief. In reviewing this ground for dismissal the Court shall accept Plaintiff's factual allegations as true and "draw all inferences in the light most favorable" to her. *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007); *Ruggles v. Wellpoint, Inc.,* 253 F.R.D. 61, 65 (N.D.N.Y.2008). Under this standard, "[t]he movant's burden is very substantial, as 'the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (internal quotation and citations omitted)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* — U.S. ——, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facial plausibility exists "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting *Twombly,* 550 U.S. at 557). Additionally, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Thus, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. As to Plaintiff's well-pleaded factual allegations, the Court will "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Plaintiff alleges that Defendants Barbara Keller Castiglione, Gem Jewelers, Christine Chaite, Carl Kempf engaged in an unlawful conspiracy that ultimately deprived her of her constitutional rights, but she provides absolutely no factual support for her claims. Defendant Barbara Keller Castiglione, through whose actions Plaintiff's claims against Gem Jewelers apparently lie, and Defendant Christine Chaite are alleged to have participated in the overall collusion and had "supportive roles to play in the fraud." Aside from that conclusion, these three Defendants are barely mentioned in the Amended Complaint. Plaintiff provides no factual support or even explanation of her legal claims as to these Defendants. Those claims, therefore, are dismissed.

**\*10** Plaintiff similarly provides no support for her claims against Kempf. She asserts that Papa enlisted Kempf's support to create fraudulent documents and misrepresent facts at oral argument. Am. Compl.¶ 6. Presumably, Plaintiff is commenting on the legal work Kempf preformed as an employee at Hodgson Russ, LLP in its work on the will probate. From that single, conclusory allegation, unsupported by any facts, Plaintiff alleges at least nine causes of action against Kempf. She thus fails to allege a plausible claim for relief, and her action as to Kempf is dismissed.

Plaintiff seeks to hold liable Mark Lasch, and via Lasch's actions, the remaining KeyBank Defendants for breach of fiduciary duties, fraud, negligence, unjust enrichment, and other causes of action. The wrongful conduct alleged, as far as the Court is able to discern, is Lasch's failure to respond to Plaintiff's request for an accounting and distribution of her father's trust assets which were managed by Lasch and held in the KeyBank

institutions. From this, Plaintiff concludes, again without factual support aside from the alleged failure to respond to Plaintiff's request, that these Defendants were involved in the conspiracy and engaged in the fraudulent concealment of Plaintiff's father's assets. Plaintiff also alleges that Lasch "worked in collusion" with Hoye, *see* Am. Compl. ¶ 6, but offers absolutely no factual support. The same is true of Plaintiff's allegation that Lasch (and presumably KeyBank) "colluded" with Papa and Junior "to fraudulently conceal from Plaintiff all assets of the Trust." *Id.* The Court will not assume the truth of Plaintiff's legal conclusions that Lasch's involvement with Hoye, Papa, and Junior constitutes conspiracy or fraud. Simply put, without describing, and in the case of fraud, without describing with particularity, *see* FED. R. CIV. P. 9, the facts upon which she reaches her conclusions, Plaintiff's pleadings fail to state a plausible claim. Assuming the truth of Plaintiff's assertion that Lasch disregarded her request for an accounting, Plaintiff has alleged nothing more than facts merely consistent with liability. This is insufficient to state a plausible claim. *Iqbal,* 129 S.Ct. at 1949. Plaintiff's action as to the KeyBank Defendants is, accordingly, dismissed.

Plaintiff asserts that Papa and Junior offered bribes, which Hoye and Peters took, and that these illegal payments, rather than the substance of Plaintiff's probate challenge formed the basis for the Judicial Defendants' rulings. Plaintiff reaches the conclusion that these Defendants were involved in this conspiracy to defraud the court and deprive her of her constitutional right to due process in her probate challenge because there were ex parte communications between the Judicial Defendants and Papa, who was acting as counsel to a party coming before them. Further, Plaintiff notes that the decision issued by the Hoye closely tracked the arguments made by Papa. Again, while these facts may be consistent with Defendants' liability, they fall far short of stating a plausible claim. *Iqbal,* 129 S.Ct. at 1949. Ex parte communications and judicial opinions that closely match one party's arguments are not so uncommon as to support an inference capable of sustaining that a conspiracy or bribe occurred. Plaintiff's allegation that Peters admitted hearsay evidence and ruled inconsistently with governing authority, similarly fails, as these are legal conclusions not entitled to an assumption of truth. Plaintiff's pleadings are bereft of facts supporting these conclusions, providing another ground for dismissal of these claims.

**\*11** Additionally, to the extent Plaintiff seeks to hold the Judicial Defendants personally liable for issuing their decisions, admitting evidence, etc., her action cannot survive. Not only are these unsupported legal conclusions, the challenged actions also constitute judicial decisions made in the course of a proceeding. As such, the Judicial Defendants enjoy absolute immunity from personal liability for these acts. *See Pierson v. Ray,* 386 U.S. 547, 553–55 (1967) ("immunity applies even when the judge is accused of acting maliciously and corruptly"); *see also Dennis v. Sparks,* 449 U.S. 24 (1980); *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994).

Plaintiff's Amended Complaint names Peters, though not Hoye, in her official as well as individual capacity. Here too, however, Peters is immune from suit, in this case under the Eleventh Amendment. That Amendment generally protects the state and arms of the state from liability. *See Will v. Michigan Dept of State Police,* 491 U.S. 58, 71 (1989); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100–101 (1984). This immunity would not extend Plaintiff's seeking declaratory relief against to Peters' enforcement of an unconstitutional state statute. *See Ex Parte Young,* 209 U.S. 123 (1908). The Amended Complaint alleges that the New York State Surrogate Court law is an unconstitutional statute, and to the extent that Plaintiff seeks to preclude Peters from enforcing it, Eleventh Amendment immunity may not apply. Given this Court's dismissal of Plaintiff's Amended Complaint, it need not address the constitutionality of the challenged law.

### F. Plaintiff Fails to Allege Facts Sufficient to Maintain an Action Pursuant to 42 U.S.C. § 1983 or 42 U.S.C. § 1985

Plaintiff alleges that the private actors named as Defendants were involved in the conspiracy with the Judicial Defendants and thus were acting under color of state law as required to commence an action pursuant to 42 U.S.C. § 1983. Am. Compl. at 12. Plaintiff alleges certain facts, mentioned above, that she claims support her contention that Junior, Papa, and Hodgson Ross, LLP offered bribes to the Judicial Defendants. Plaintiff offers no such facts against any of the other private Defendants. In fact, from her Amended Complaint, the only party who could be construed to have had any interaction with the Judicial Defendants is Kempf, who allegedly submitted false documents and misrepresented facts at oral argument. *See generally* Am. Compl.

"[A] person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law,' " *Polk County v. Dodson,* 454 U.S. 312, 317–18 (1981) (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)). Private actors, of course, may act "under color of state law" for purposes of § 1983 if they are jointly engaged with state actors. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 151 (1970). Indeed, the Supreme Court has specifically ruled that where a plaintiff alleges "that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge ... private parties conspiring with the judge were acting under color of state law." *Dennis v. Sparks,* 449 U.S. 24, 28 (1980). Nevertheless, after the Supreme Court's ruling in *Iqbal,* 129 S.Ct. 1937, this Court affords no assumption of truth to Plaintiff's conclusory allegation that Defendants "engaged in a kind of a conspiratorial involvement and intimate nexus with state officials ... that justifies treating them as state actors [and] subjects them to liability under 42 U.S.C. § 1983." Am. Compl. at 12. Plaintiff's factual allegations, even when viewed in the light most favorable to her, do not give rise to a plausible inference that the private actor Defendants were acting under color of state law.

*12 A markedly different situation existed in *Dennis,* 449 U.S. 24,* where the alleged conspiracy at the center of the dispute involved a trial court judge who, allegedly in exchange for a bribe, granted a temporary injunction in favor of his alleged private party co-conspirators thereby depriving plaintiffs of their ability to produce oil on land adjacent to defendants. *See Sparks v. Duval County Ranch Co., Inc.,* 588 F.2d 124 (5th Cir.1979). The Supreme Court rested its finding that the private parties alleged to have conspired with a corrupt judge should be considered to be acting under color of state law for purposes of § 1983 on a complaint with far more factual support for its conspiracy allegation than that provided by Plaintiff. Notably, the allegedly corrupt judge's decision had already been repudiated on appeal as an abuse of discretion. *Winslow v. Duval County Ranch Co., Inc.,* 519 S.W.2d 217 (Tex.Ct.App.1975). The Appeals Court excoriated the trial judge's ruling stating,

under broad conclusory allegations of a very general nature applicable

to all defendants alike (when the proof showed a lack of concert of similarity of action), the trial court enjoined All defendants in a common order prohibiting them from the further exercise of their lawful right to produce oil. This was done upon a record which did not support the broad order which was entered; upon a record which contained neither pleading nor proof of the lack of an adequate remedy at law; where there was no allegation of insolvency or proof of inability to respond in damages; done without giving any consideration to the doctrine of clean hands, laches, balancing of equities, or a showing that a less drastic injunctive order ... was not adequate to protect plaintiff's alleged rights.

*Id.* (footnotes omitted).

In the instant action, in contrast, Judge Peters affirmed Judge Hoye's decision. Plaintiff submits that Peters' Order was also the result of a bribe, though she does not so explain the concurring votes of the four other judges on the panel, none of whom are alleged to have been bribed.

Additionally, in the Texas case, in support of its § 1983 action against the private parties, Plaintiff provided a pleading "assert[ing] the existence of a conspiracy in considerable detail ... [and] sufficiently stated the facts on which [the allegations] relied" *Sparks v. Duval County Ranch Co., Inc.,* 604 F.2d 976, 978 (Tex.Ct.App.1979). Plaintiff's Amended Complaint, in contrast, alleges no facts suggesting any interaction or connection between most of the private actor Defendants and the Judicial Defendants. For those few who are alleged to have interacted with the Judicial Defendants, namely Junior, Papa, Hodgson Russ LLP, and Kempf, Plaintiff's allegations are too implausible to support the conclusions she reaches.

Finally, in the Texas case, the Appeals Court took note that the allegedly corrupt judge had been removed from

office by the Texas Supreme Court for acts of willful misconduct and was serving time in a federal penitentiary for income tax evasion. *Sparks v. Duval County Ranch Co., Inc.,* 588 F.2d 124, XX (Tex.Ct.App.1979) (citing *Matter of Carrillo,* 542 S.W.2d 105 (Tex.1976)). Certainly no such judgments have been made in the case of Hoye or Peters.

**\*13** None of the facts making plausible the alleged conspiracy, which allowed the plaintiff in *Dennis,* 449 U.S. 24, to proceed against private parties pursuant to § 1983 exist in the instant action. Having alleged no plausible conspiracy, Plaintiff necessarily fails to allege the precondition for maintaining her § 1983 action.

This Circuit has similarly made explicit that a factual basis supporting an allegation of conspiracy must exist in order to maintain and action under § 1985. *See Webb v. Goord,* 340 F.3d 105, 110–11 (2d Cir.2003) (in the context of a § 1985 claim "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.") (internal quotation omitted). Moreover, in order to maintain her action under § 1985 [11] Plaintiff must "allege a class-based, invidiously discriminatory animus." *Dacey v. Dorsey,* 568 F.2d 275, 277 (2d Cir.1978) (internal quotation omitted); *Redcross v. Rensselaer County,* 511 F.Supp. 364, 373 (N.D.N.Y.1981). Plaintiff fails to allege any such class-based animus on the part of any of the Defendants. In sum, Plaintiff has not alleged facts sufficient to support an action brought pursuant to 42 U.S.C. §§ 1983 or 1985. This provides another basis for dismissal of her Amended Complaint.

[11]     Presumably, Plaintiff intends to bring her action pursuant to § 1985(2), which provides a cause of action where, "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws." 42 U.S.C. § 1985(2).

## IV. PLAINTIFF'S MOTION FOR SANCTIONS AND OTHER FORMS OF RELIEF

Plaintiff's response to Defendants' Motions to dismiss includes a Cross–Motion seeking various forms of relief. Dkt. No. 34. Firstly, Plaintiff seeks a 90–day stay of her case, during which time she can "refine [her] initial case pleading into a Second Amended Complaint." *Id.* at 56.

Plaintiff notes that medical issues have prevented her from perfecting her filings previously. Plaintiff further "seek[s] from the [Court] the names of 1–3 cases similar in content to [hers], where the [Court] believes the complaint ... is well written." *Id.* Plaintiff also seeks an Order mandating that Defendants' "counsel henceforth place their factual allegations into an attorney Certification with perjury jurat," and an additional "Order that sanctions each counsel about falsifying facts or law in a motion for relief and for attaching extra-pleading material in a R. 12(b)(6) motion." *Id.* She claims that Defendants' Motions should be struck and sanctions imposed to correct the "disgrace to the profession and to the people's legal system" they reflect and to protect Plaintiff from having to "continuously correct these intentional misrepresentations crafted to poison the well and seek unfair advantage." *Id.*

Plaintiff's Motion is denied in its entirety. Plaintiff's request for a stay so she may draft a Second Amended Complaint shall be treated as a Motion to amend pursuant to Federal Rule of Civil Procedure 15. Pursuant to that Rule, leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Manson v. Stacescu,* 11 F.3d 1127, 1133 (2d Cir.1993). Leave shall not be granted, however, where amendment would be futile. *Foman,* 371 U.S. at 182; *Freeman v. Marine Midland Bank–New York,* 494 F.2d 1334, 1338 (2d Cir.1974); *Esposito v. Metro–North Commuter R. Co.,* No. 91–CV–946, 1992 WL 165821, at \*2 (N.D.N.Y. July 8, 1992). Given the above findings, particularly those relating to *Rooker–Feldman* and collateral estoppel, but also in light of the myriad of other insufficiencies of Plaintiff's pleadings, this Court finds that amendment would be futile. As noted, Plaintiff is barred from re-litigating the central issues of her Amended Complaint, and this Court has no jurisdiction to conduct the review of the state court decisions that form the essence of her action. Since amendment would be futile, leave to amend is denied.

**\*14** Additionally, this Court is unable to dispense legal advice to Plaintiff. *See Muskrat v. United States,* 219 U.S. 346 (1911). Furthermore, in light of the above, such request is moot. Thirdly, the Court shall not issue the orders requested by Plaintiff. The first, requiring Defendants' counsel to place their factual allegations into an attorney certification with perjury jurat, is moot. Finally, the Court finds such an order unnecessary.

Counsel has attested to the accuracy of their submissions and the Court finds no evidence to doubt their veracity.

For similar reasons, Plaintiff's request that sanctions be imposed for alleged misrepresentations by Defendants' counsel is denied. The Court concludes that issuing such sanctions is inappropriate and unwarranted. Defendants have advocated zealously and successfully for their clients, but there is absolutely no evidence that in so doing they falsified facts or knowingly misrepresented law. Plaintiff's Cross–Motion is, accordingly, denied.

### V. SERVICE COSTS AND OTHER RELIEF
Plaintiff further seeks service costs pursuant to Federal Rule of Civil Procedure 4(d)(2) and other forms of relief including declaratory judgment as to the timeliness of her service. Dkt. No. 38. Plaintiff's Motion (Dkt. No. 38) reiterates her request for default judgment as to Defendant Kempf. *Id.* For reasons discussed above, Plaintiff's Motion is denied.

### VI. CONCLUSION
Based on the foregoing discussion, it is hereby

**ORDERED,** that Plaintiff's Request for default judgment as to Defendant Kempf (Dkt. No. 37) is **DENIED;** and it is further

**ORDERED,** that Defendant Kempf's Motion to vacate Plaintiff's request for default judgment and for leave to join the Hodgson Russ Defendants' Motion to dismiss (Dkt. No. 40) is **GRANTED;** and it is further

**ORDERED,** that Defendants' Motions to dismiss Plaintiff's Amended Complaint (Dkt.Nos.23, 24, 26) are **GRANTED;** and it is further

**ORDERED,** that Plaintiff's First Amended Complaint (Dkt. No. 15) is **DISMISSED in its entirety with prejudice;** and it is further

**ORDERED,** that Plaintiff's Cross–Motion (Dkt. No. 34) is **DENIED;** and it is further

**ORDERED,** that Plaintiff's Motion for service costs and other relief (Dkt. No. 38) is **DENIED;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2044688

---

**End of Document**
© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 4540837
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Chantal Jeangilles VOLTAIRE, Plaintiff,
v.
WESTCHESTER COUNTY DEPARTMENT
OF SOCIAL SERVICES and
Ossining High School, Defendants.

No. 11-CV-8876 (CS)
|
Signed 08/29/2016

**Attorneys and Law Firms**

Chantal Jeangilles Voltaire, Ossining, New York, Plaintiff
Pro Se.

Fay A. Jones, Westchester County Attorney's Office,
White Plains, New York, Counsel for Defendant
Westchester County Department of Social Services.

Lewis R. Silverman, Silverman & Associates, White
Plains, New York, Counsel for Defendant Ossining High
School.

**OPINION & ORDER**

Seibel, U.S.D.J.

**\*1** Before the Court are Defendants' Motions to Dismiss
Plaintiff's Complaint, (Docs. 75, 84), for lack of subject
matter jurisdiction pursuant to Federal Rule of Civil
Procedure 12(b)(1), failure to state a claim pursuant
to Rule 12(b)(6) and failure to comply with pleading
requirements pursuant to Rule 8(a)(2).[1] For the reasons
stated below, Defendants' motions are GRANTED as to
the federal claims, and I decline to exercise supplemental
jurisdiction over the state law claims.

[1]    Defendant Westchester County Department of Social
Services ("Westchester County") filed its reply
memorandum of law on April 20, 2016, (Doc. 95),
in accordance with the briefing schedule ordered by
the Court, (Doc. 82), yet submitted an amended
reply brief on April 22, 2016, (Doc. 97), that was
substantively different, without having sought or

obtained permission. I disregard this unexplained
submission.

**I. Background**

  A. **Facts**

Plaintiff Chantal Jeangilles Voltaire is the mother of
children who were students at Defendant Ossining High
School ("Ossining").[2] (See Fourth Amended Complaint
("FAC"), (Doc. 71), at 3.) Plaintiff alleges that Ossining
failed to place her children into foster care, as she had
requested and as an employee of Ossining had promised,
and that as a result her children were left home alone
for a period of days with insufficient food, security and
adult supervision. (See id.) An attachment to the FAC
further alleges that Vincent Agnano, a supervisor with
Westchester County Child Protective Services, failed to
intervene after Ossining did not place Plaintiff's children
in foster care. (See id. at 7.) Plaintiff also alleges that
Defendant Westchester County[3] subsequently accused
her of abandoning and neglecting her children. (See
id. at 3.) The FAC also states that Robert Byrnes, a
Westchester County case worker, was violent toward
Plaintiff and physically harmed her, and that accordingly
the County Department of Social Services ("DSS") and
Police Department breached their duty to maintain a
secure and safe environment. (See id. at 8.) The FAC
states that these events occurred sometime between 2004
and 2007. (See id. at 3.) Plaintiff's parental rights were
eventually terminated in spring 2008, although it is not
clear when this officially occurred. According to an order
issued by the Family Court of the State of New York, this
termination occurred on March 3, 2008, (see Declaration
of Fay Angela Jones in Support of Motion to Dismiss
("Jones Decl."), (Doc. 87), Ex. A, at 1), but on appeal
the Appellate Division of the New York Supreme Court
indicated that the Family Court had issued "two orders
of fact-finding and disposition dated April 9, 2008"
terminating Plaintiff's parental rights, (see id. Ex. B, at
1).[4]

[2]    Plaintiff incorrectly named as a party "Ossining
High School" when in fact Plaintiff should have
named the Ossining Union Free School District.
(See Memorandum of Law in Support of Defendant
Ossining High School's Motion to Dismiss ("Ossining
Mem."), (Doc. 80), 1.) The error is immaterial given
my disposition below.

3   Plaintiff incorrectly named as a party "Westchester County Department of Social Services" when in fact Plaintiff should have named the County of Westchester. (*See* Memorandum of Law in Support of County Defendants Motion to Dismiss ("Westchester Mem."), (Doc. 86), 1.) The error is immaterial given my disposition below.

4   I may consider public records in deciding a motion to dismiss. *See Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

### B. Procedural History

**\*2** On December 2, 2011, Plaintiff filed her initial complaint, (Doc. 2), which then-Chief Judge Loretta A. Preska dismissed for lack of subject matter jurisdiction, (*see* Doc. 4). The Second Circuit on appeal vacated the judgment and remanded the case for further proceedings. (*See* Doc. 7.) Plaintiff filed an amended complaint on August 8, 2012, (Doc. 19), and a second amended complaint on October 10, 2014, (Doc. 25). The case was then transferred from Judge Thomas P. Griesa to me. On January 13, 2015, I dismissed Plaintiff's claims against the Family Court of the State of New York, the Supreme Court of the State of New York, Appellate Division, Second Judicial Department, and Kevin Mahon, former Commissioner of DSS, leaving only Plaintiff's claims against Westchester County. (*See* Doc. 26.) Plaintiff filed a third amended complaint on February 27, 2015, (Doc. 27), which for the first time alleged claims against Ossining in addition to those against Westchester County, and the FAC on February 4, 2016, (Doc. 71). 5 Although it is not entirely clear, Plaintiff appears to be bringing claims under 42 U.S.C. § 1983 alleging violations of her right against unreasonable seizure under the Fourth Amendment and her right to due process under the Fourteenth Amendment. Plaintiff also appears to seek vacatur of the state court judgment terminating her parental rights, (*see, e.g.*, Doc. 2, at 7; Doc. 15, at 1; Doc. 19, at 9, 15), although she does not assert a desire for such relief in each document she has filed. On February 19, 2016, Defendant Ossining moved to dismiss all claims, (Doc. 75), as did Defendant Westchester County on March 4, 2016, (Doc. 84).

5   Prior to filing the FAC, Plaintiff submitted several letters requesting to amend the caption to include Vincent Agnano and Robert Byrnes as new defendants, (*see* Docs. 60, 61, 63, 66); one was received well past the deadline for Plaintiff to file

the FAC, (Doc. 66). Ossining opposed Plaintiff's request. (*See* Doc. 62.) I initially denied Plaintiff's request because I could not discern on what basis she believed she could amend the caption to include new defendants, or what claims she believed she might have against them, and because Plaintiff had not filed the FAC by the Court-ordered deadline. (*See* Doc. 67.) Nonetheless, because Plaintiff is proceeding *pro se*, I ultimately excused her lateness and accepted the FAC, which when filed included Agnano and Byrnes as defendants, as well as a "Ms. Bohannon," (*see* FAC at 1), who apparently is Agnano's supervisor but who Plaintiff never identified in any of her previous letters requesting to amend the caption. In any event, as Westchester County notes in its memorandum of law, (*see* Westchester Mem. 1 n.1), Plaintiff has not served any of the three new defendants named in the FAC, and therefore Plaintiff's claims against them are dismissed under Fed. R. Civ. P. 4(m), as well as for the reasons stated below.

## II. Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is

"a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.' " *Id.* (alteration omitted) (quoting [Fed. R. Civ. P. 8(a)(2)](link)).

**\*3** A motion to dismiss pursuant to [Federal Rule of Civil Procedure 12(b)(1)](link) based on lack of jurisdiction allows a court to consider evidence and materials outside of the pleadings. *See [LeBlanc v. Cleveland, 198 F.3d 353, 356 (2d Cir. 1999)](link); [Liberty Cable Co. v. City of N.Y., 893 F. Supp. 191, 199 n.11 (S.D.N.Y.)](link)* (collecting cases), *aff'd,* [60 F.3d 961 (2d Cir. 1995)](link). A motion to dismiss based on a statute of limitations defense, however, is properly considered under [Federal Rule of Civil Procedure 12(b)(6)](link), rather than under [Rule 12(b)(1)](link), *see [Frederick v. Jetblue Airways Corp., No. 14-CV-7238, 2016 WL 1306535, at \*4 (E.D.N.Y. Mar. 31, 2016)](link)*,[6] which entitles the court to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under [Rule 201 of the Federal Rules of Evidence](link).

*[Weiss v. Inc. Vill. of Sag Harbor, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011)](link)* (internal quotation marks omitted).

[6] The Court will send Plaintiff copies of all unpublished decisions cited in this opinion.

Although her intent is not clear, Plaintiff in the FAC refers to allegations attached to that complaint as well as "all the previous documents," (*see* FAC at 1), a statement which Defendants construe liberally, (*see* Ossining Mem. 1-2; Westchester Mem. 4), as incorporating by reference claims Plaintiff made in previously filed complaints, (*see* Docs. 1, 19, 25, 27, 71), or in her letters to this Court, (*see, e.g.,* Docs. 43, 44, 50, 56). It is well established that a district court may rely on matters of public record, including prior filings in an action, in deciding motions to dismiss under either [Rule 12(b)(6) or 12(b)(1)](link), *see [Burfeindt v. Postupack, 509 Fed.Appx. 65, 67 (2d Cir. 2013)](link)* (summary order), although ordinarily an amended complaint "supersedes the original and renders it of no legal effect," *[Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977)](link)*. But because complaints made by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *[Shibeshi v. City of N.Y., 475 Fed.Appx. 807, 808 (2d Cir. 2012)](link)* (summary order) (internal quotation marks and emphasis omitted), and "held to less stringent standards than formal pleadings drafted by lawyers," *[Hughes v. Rowe, 449 U.S. 5, 9 (1980)](link)* (*per curiam*) (internal quotation marks omitted), a court is permitted to consider factual allegations in *pro se* plaintiffs' preceding complaints in order to supplement those in amended complaints, *see [Sommerville v. Wright, No. 12-CV-165, 2014 WL 794275, at \*4 (E.D.N.Y. Feb. 25, 2014)](link)*. Accordingly, I will consider (to the extent I can understand them) the claims Plaintiff previously alleged in filings with this Court, including in previously filed complaints as well as in the FAC. *Cf. [Marcel v. United States, No. 12-CV-4404, 2012 WL 5463926, at \*2 (E.D.N.Y. Nov. 8, 2012)](link)* (taking judicial notice of facts contained in *pro se* plaintiff's earlier actions in order to obtain "fuller picture" of plaintiff's claims, and "exercis[ing] extraordinary caution in review[ing]" plaintiff's claims).

### III. Federal Claims

#### A. Statute of Limitations

##### 1. Ossining High School

**\*4** The FAC, (Doc. 71), does not appear to allege any federal law claims against Ossining, nor do Plaintiff's

previously filed letters with this Court, (*see* Docs. 43, 50, 56). Ossining in its memorandum of law suggests that certain allegations made in the third amended complaint, (*see* Doc. 27), and in Plaintiff's letters, (*see* Docs. 50, 56), might be construed to constitute federal causes of action brought against it, (*see* Ossining Mem. 6-7). Plaintiff's submissions conceivably might be construed to allege a violation of the Due Process Clause of the Fourteenth Amendment, with respect to a wrongful deprivation of her parental rights, or a violation of her Fourth Amendment right against unreasonable seizure, based on the alleged assault by the DSS case worker. But such claims would implicate Westchester County's conduct, not Ossining, and therefore Plaintiff has not plausibly alleged federal claims against Ossining.

In any event, even if Plaintiff had articulated federal claims, Ossining argues that any such claims would be time-barred. (*See id.* at 7.) "The statute of limitations is an affirmative defense on which the defendant bears the burden of proof," *Voiceone Commc'ns, LLC v. Google Inc.*, No. 12-CV-9433, 2014 WL 10936546, at *7 (S.D.N.Y. Mar. 31, 2014) (internal quotation marks omitted), although "a motion to dismiss may be granted if a complaint's allegations affirmatively establish an action's untimeliness," *Slainte Invs. Ltd. P'ship v. Jeffrey*, 142 F. Supp. 3d 239, 253 (D. Conn. 2015). To the extent Plaintiff alleges violations by Ossining under 42 U.S.C. § 1983, such actions are governed by New York's three-year statute of limitations. *See Lawson v. Rochester City Sch. Dist.*, 446 Fed.Appx. 327, 328 (2d Cir. 2011) (summary order). As Ossining notes, (*see* Ossining Mem. 7), the same three-year statute of limitations would apply to a claim brought under the Individuals with Disabilities Education Act, which Plaintiff never mentions but which Ossining suggests could, construed liberally, flow from Plaintiff's reference in a letter to an "educational accommodation" claim, (*see* Doc. 50, at 3). Insofar as Plaintiff's stray references in the third amended complaint to insufficient "consumer protection" or "willful intent to injure" could constitute federal violations, (*see* Doc. 27, at 4),[7] Ossining notes that such claims would be governed by a four-year statute of limitations pursuant to 28 U.S.C. § 1658, (*see* Ossining Mem. 7).

[7]    Plaintiff has not clearly identified which statutes give rise to these claims. She briefly alleges a "violation of consumer protection" in complaints preceding the FAC, (*see* Doc. 19, at 12; Doc. 27, at 4), but

there, too, fails to clarify what cause of action she is pursuing. Defendant suggests that perhaps her consumer protection claim is brought pursuant to the Consumer Credit Protection Act, 15 U.S.C. § 1601, and that her willful intent to injure claim arises in the context of workman's compensation or bankruptcy laws. (*See* Ossining Mem. 7.) In any event, neither claim is plausibly alleged.

It is clear that any possible federal claim by Plaintiff against Ossining would be based on events that occurred well outside the relevant statutes of limitations. The FAC states that the allegations in the complaint occurred sometime between 2004 and 2007. (*See* FAC at 3.) Plaintiff's third amended complaint appears to allege that the events giving rise to her federal claims against Ossining occurred in June 2006, when an Ossining employee failed to secure foster care for Plaintiff's children, (*see* Doc. 27, at 3), and in fact the documents Plaintiff attached to that complaint suggest that the relevant events may have even occurred in 2005, (*see id.* Ex. 1, at 3). Plaintiff did not name Ossining as a defendant until the third amended complaint, which was filed February 27, 2015, and accordingly Plaintiff's federal claims against Ossining are plainly time-barred.

## 2. Westchester County

**\*5** As noted above, Plaintiff's submissions, taken liberally, might be construed to allege violations of the Fourth and Fourteenth Amendments based on purported conduct by agents of Westchester County. But while Westchester County does not argue in its memorandum of law that Plaintiff's federal claims against it are similarly time-barred, they, too, are untimely.[8] As noted, violations of 42 U.S.C. § 1983 are governed by a three-year statute of limitations. *See Lawson*, 446 Fed.Appx. at 328. The FAC and third amended complaint together indicate that the relevant events giving rise to claims against Westchester County occurred between 2004 and August 2007, (*see* FAC at 3; Doc. 27, at 3),[9] and the family court proceedings that terminated Plaintiff's parental rights took place, at the latest, in April 2008, (*see* Jones Decl. Ex. A, at 1; *id.* Ex. B, at 1).[10] Plaintiff commenced the instant action against Westchester County on December 2, 2011, (Doc. 2), which is more than three years after spring 2008. Accordingly, Plaintiff's federal claims against Westchester County are also time-barred. To the extent Plaintiff means to assert a claim against the County for its defense of the

2008 ruling in the face of Plaintiff's subsequent challenges to it, such a claim might be timely but is substantively without merit, as discussed in Part III.B below.

8   Although the statute of limitations is an affirmative defense on which defendants generally bear the burden of proof, I may dismiss a complaint *sua sponte*, "after notice to the plaintiff and an opportunity to be heard, where an affirmative defense is readily apparent, or unambiguously established in the record." *Andersen v. Young & Rubicam Advert.*, No. 11-CV-4466, 2011 WL 10644197, at *2 (S.D.N.Y. Oct. 14, 2011) (internal quotation marks omitted), *aff'd*, 487 Fed.Appx. 675 (2d Cir. 2012) (summary order); *see Klein v. City of N.Y.*, No. 10-CV-9568, 2011 WL 5248169, at *8 (S.D.N.Y. Oct. 28, 2011) (district court may dismiss action *sua sponte* on statute of limitations grounds where "facts supporting the statute of limitations defense are set forth in the papers plaintiff [herself] submitted" and "plaintiff is given notice and an opportunity to be heard") (internal quotation marks omitted), *report and recommendation adopted*, 2012 WL 546786 (S.D.N.Y. Feb. 21, 2012). As discussed below, Plaintiff was advised by this Court at two pre-motion conferences, as well as by pre-motion letters that both Defendants submitted, that her allegations on their face appeared untimely. Accordingly, I may dismiss claims against Westchester County on statute of limitations grounds even though Defendant did not argue this point in its briefs.

9   Even if Plaintiff had successfully served the new defendants she attempted to add in the FAC, *see* note 5 above, those claims would have been dismissed on timeliness grounds because Plaintiff has not plausibly alleged involvement by Agnano, Byrnes, or Bohannon after August 2007.

10  As noted earlier, Plaintiff's parental rights appear to have been terminated sometime in either March or April 2008, contrary to Plaintiff's assertion at the December 22, 2015 conference that the termination occurred at April 2009. It is likely that Plaintiff was misremembering the correct date, given that her own submissions previously filed in this action acknowledge termination orders issued in April 2008. (*See* Doc. 2, at 4; Doc. 15, at 1.) Whether the termination occurred in March or April 2008 does not affect the untimeliness of Plaintiff's claim because Plaintiff did not file her complaint until December 2011.

### 3. Equitable Tolling

Where a plaintiff's claims are time-barred on the face of her own complaint, she bears the burden of pleading facts sufficient to establish that the statute of limitations should be tolled. *See Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995); *Voiceone Commc'ns*, 2014 WL 10936546, at *7. As noted, although *pro se* complaints "are held to less stringent standards than formal pleadings drafted by lawyers," *Hughes*, 449 U.S. at 9 (internal quotation marks omitted), *pro se* litigants must still show some sufficient basis justifying the applicability of equitable tolling, *see Ackerman v. Ackerman*, 549 Fed.Appx. 45, 46 (2d Cir. 2014) (summary order) (affirming dismissal where pleadings made clear *pro se* plaintiff knew of and could have brought action before statute of limitations expired); *Johnson v. Teague*, No. 12-CV-1223, 2014 WL 2515214, at *3 (D. Conn. June 4, 2014) (claim of *pro se* plaintiff dismissed where plaintiff did not "show[ ] extraordinary circumstances to warrant equitable tolling of the limitations"); *Fairley v. Collins*, No. 09-CV-6894, 2011 WL 1002422, at *6 (S.D.N.Y. Mar. 15, 2011) (*pro se* plaintiff argued that he was not provided documents on timely basis, but equitable tolling inapplicable because documents did not affect when plaintiff knew or had reason to know of injuries that provided basis for claim); *cf. Bisson v. Martin Luther King Jr. Health Clinic*, No. 07-CV-5416, 2008 WL 4951045, at *1 (2d Cir. Nov. 20, 2008) (summary order) (tolling warranted where *pro se* litigant argued that defendants' "negligence and fraud" plausibly may have prevented plaintiff from filing timely action, in part because *pro se* litigants need not be "more specific" about why equitable tolling should apply in order to avoid dismissal pursuant to Rule 12(b)(6)).

**\*6** As Ossining notes in its reply memorandum of law, (*see* Ossining Reply Mem. 1), [11] Plaintiff has not provided any reason why the applicable statutes of limitations should be tolled or why her federal claims against Ossining are otherwise untimely. I discussed these issues with Plaintiff at two pre-motion conferences, at which my law clerk took detailed notes. At the November 18, 2015 conference – before which Ossining had submitted a pre-motion letter articulating its belief that Plaintiff's claims are untimely – I told Plaintiff that none of her federal claims appeared timely because it appeared from her allegations that the relevant events occurred in 2006 and Plaintiff did not name Ossining as a party until several years after the

longest available statute of limitations expired. I further explained to Plaintiff that upon amending her complaint she would need to identify a claim with a nine-year statute of limitations (and I indicated that I was not aware of any) or, alternatively, put forth a theory as to why she should be allowed to bring those claims now. I made clear that she should focus on the timeliness of her alleged claims, but she has failed to do so.

11    "Ossining Reply Mem." refers to Reply Memorandum of Law in Further Support of Defendant Ossining's Motion to Dismiss. (Doc. 92.)

Nor has Plaintiff established that her federal claims against Westchester County should be tolled. At the December 22, 2015 conference – by which time Westchester County had, too, filed a pre-motion letter arguing that Plaintiff's claims are untimely – I told Plaintiff that the longest statute of limitations governing claims against Westchester County is three years and noted that Plaintiff brought her claims more than four years after the incident. I reiterated to Plaintiff that she would need to provide a plausible basis for extending the statute of limitations. Plaintiff responded that when the matter first arose, she did not file the case because she was working with Defendants in an effort to resolve the issue. But attempts to settle do not toll the statute of limitations. *See Bevona v. Serv. Emps. Int'l Union*, No. 05-CV-1157, 2007 WL 1378425, at *11 (S.D.N.Y. May 10, 2007). Plaintiff further conceded that after her parental rights were terminated, she waited years before filing the instant action.

Because any conceivable federal claims by Plaintiff against Defendants fall outside the applicable statutes of limitations, and because she has not alleged any facts or shown any basis to suggest that equitable tolling is appropriate, Plaintiff's federal claims are time-barred and dismissed.

### B. Municipal Liability

Even if Plaintiff's claim alleging excessive force based on a purported assault by a Westchester County case worker may be timely, she has not plausibly alleged a claim of municipal liability under 42 U.S.C. § 1983. A plaintiff can bring such claims against a municipality only where either (1) "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially

adopted and promulgated by that body's officers"; or (2) the practice of state officials that is alleged to be unconstitutional is so permanent and well settled that it "constitute[s] a custom or usage with the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) (internal quotation marks omitted). Plaintiff appears to assert that Westchester County can be held liable on the basis of *respondeat superior*, (*see, e.g.*, Doc. 43, at 2; Doc. 56, at 2), but municipalities cannot be held liable for constitutional violations of their employees "by application of the doctrine of respondeat superior," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *accord Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997) (holding that a municipality may not be found liable simply because one of its employees committed a constitutional tort). [12] Plaintiff has not come close to plausibly alleging the existence of a municipal custom or practice promoting or facilitating conduct of the kind alleged here.

12    The County might be liable under a *respondeat superior* theory for state-law torts of its employees, if they were timely pursued.

**\*7** Plaintiff's filings, construed liberally, could also be read as challenging Westchester County's conduct subsequent to the termination of her parental rights in spring 2008. To the extent she is arguing that Defendant wrongfully opposed her efforts to vacate that termination, [13] Plaintiff's appeals persisted over the next few years, which would bring Defendant's conduct within the three-year statute of limitations for claims pursuant to § 1983. For example, on October 1, 2012, [14] Plaintiff filed a petition with the Family Court of the State of New York seeking to restore her parental rights, which the court dismissed on October 18, 2012. (*See* Jones Decl. Ex. A.) This order was upheld on appeal by the Appellate Division of the New York Supreme Court on December 17, 2014. (*See id.* Ex. B.) Presumably County employees were involved in opposing Plaintiff's challenges to the 2008 order, but – apart from failing to specify what those employees did wrong, *see* Parts III.C.1 and 2 below – Plaintiff has provided no facts that would allow me to plausibly infer that they acted pursuant to a municipal custom or practice permitting the violation of Plaintiff's constitutional rights. Accordingly, the claim is dismissed.

13    Plaintiff in the first amended complaint alleges wrongdoing by Westchester County in the initial

termination proceeding, (*see* Doc. 19, at 3-4), but, as discussed above, any such conduct falls outside the relevant statute of limitations.

14    A subsequent decision by the Appellate Division of the New York Supreme Court states that Plaintiff filed her petition in October 2011, rather than October 2012. (*See* Jones Decl. Ex. B.)

C. Due Process

Even if Plaintiff had brought a claim against individual defendants relating to Westchester County's defense of the prior termination of her parental rights – presumably for violation of procedural and substantive due process rights guaranteed by the Fourteenth Amendment, (*see* Doc. 19, at 2, 5-6); *see Park v. City of N.Y.*, No. 99-CV-2981, 2003 WL 133232, at *12 (S.D.N.Y. Jan. 16, 2003) ("Although it is not entirely clear whether the Plaintiffs intend to assert a procedural due process claim, the complaint repeatedly invokes the language of due process, and the Court will consider such a claim.") – such claims would have to be dismissed.

1. Procedural Due Process

"In reviewing procedural due process claims, courts must first determine whether a person has been deprived of a protected liberty interest. The court must then determine what, if any, constitutional process is due." *Hollenbeck v. Boivert*, 330 F. Supp. 2d 324, 332 (S.D.N.Y. 2004). Because parents have a "constitutionally protected liberty interest in the care, custody and management of their children," *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999), as a general rule parents must be afforded due process before being deprived of this interest, *see Nicholson v. Scoppetta*, 344 F.3d 154, 171 (2d Cir. 2003). In the child removal context, due process ordinarily constitutes a court proceeding resulting in an order permitting removal. *See id.* Plaintiff's allegations make clear that she participated in the termination proceedings, (*see* Doc. 15) – which included the necessary "fact-finding" hearings, (*see* Jones Decl. Ex. B, at 1; *Marcel*, 2012 WL 5463926, at *3 (fact-finding hearings a critical component of New York permanent removal proceedings)) – as well as in subsequent appeals, (*see* Jones Decl. Exs. A, B), and she has not suggested that any of these hearings were not conducted "at a meaningful time and in a meaningful manner," *Villanueva v. City of N.Y.*, No. 08-CV-8793, 2010 WL 1654162, at *7 (S.D.N.Y. Apr. 14, 2010) (internal quotation marks omitted). Indeed, the termination of Plaintiff's parental rights was reviewed on appeal in state court not once, but twice. (*See* Jones Decl. Exs. A, B.) It is evident that Plaintiff received the process she was owed. *See Stein v. City of N.Y.*, 24 Fed.Appx. 68, 69 (2d Cir. 2001) (summary order) (*pro se* plaintiff argued that defendants did not provide him with prompt post-deprivation hearing, but due process claim failed because plaintiff was party to and participated in family court proceedings resulting in order placing children with Commissioner of Social Services); *Marcel*, 2012 WL 5463926, at *3 (plaintiff received due process where he participated in proceedings involving termination of parental rights and was free to appeal that decision in state court); *Hollenbeck*, 330 F. Supp. 2d at 332 (plaintiff must plausibly allege children were removed without court authorization in order to state procedural due process claim).

**\*8** Accordingly, Plaintiff has not plausibly alleged a procedural due process claim, and any such claim is dismissed.

2. Substantive Due Process

Nor has Plaintiff plausibly alleged a substantive due process claim. As a general principle, family members have a substantive due process right to remain together without the state's "coercive interference." *Anthony v. City of N.Y.*, 339 F.3d 129, 142 (2d Cir. 2003) (internal quotation marks omitted). In order to make out a violation of this right, a plaintiff must plausibly allege that a state decision or action violated its fundamental right and that "no overridingly important state interest justifie[d] that infringement." *Marcel*, 2012 WL 5463926, at *4 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). In particular, she must plausibly allege that her separation from her children was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Anthony*, 339 F.3d at 143 (internal quotation marks omitted); *see Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) ("Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional.") (internal quotation marks omitted).

Plaintiff has failed to do so. Putting aside the untimeliness of any claims related to the initial termination, Plaintiff freely admits that after an employee of Ossining purportedly agreed to place her children in foster care, she left Ossining for "many days" without ensuring that her children were actually safe, (*see, e.g.*, Doc. 25, at 3), suggesting that the state's decision to pursue the termination of her parental rights was hardly shocking, arbitrary or egregious. Further, Plaintiff has not plausibly alleged that the subsequent decisions rendered by the Family Court of the State of New York or the Appellate Division of the New York Supreme Court were anything but "deliberate and considered." *See Marcel*, 2012 WL 5463926, at *4. Indeed, both courts noted that they lacked authority to overturn the termination because, in part, one of Plaintiff's children had since been adopted and the other was over twenty-one years old. (*See* Jones Decl. Ex. A, at 1-2; *id.* Ex. B, at 2.) Finally, at no point does she plausibly allege wrongdoing by any County employee involved in defending the prior termination of Plaintiff's parental rights – let alone shocking, arbitrary or egregious behavior – nor does she allege that any such employee was aware of any violation of Plaintiff's rights during this time. Accordingly, Plaintiff has not plausibly alleged a substantive due process claim, and the claim is dismissed. [15]

[15]     As noted, I have liberally construed Plaintiff's filings to support any federal causes of action that plausibly could be alleged. Isolated references to the Sherman Act, (*see, e.g.*, Doc. 27, at 4), patent infringement, (*see, e.g., id.* at 2), and the First Amendment, (*see, e.g., id.* at 4), as well as stray mentions of claims of consumer protection or willful intent to injure, as discussed earlier, fail to plausibly allege any causes of action. The same holds true for Plaintiff's reference to equal protection. (*See, e.g., id.*) To the extent she is attempting to argue that the termination of her parental rights violated the Equal Protection Clause of the Fourteenth Amendment, she would need to plausibly allege that Defendants in removal proceedings discriminated against her on the basis of a protected characteristic, *see Porter v. City of N.Y.*, No. 03-CV-6463, 2007 WL 1791149, at *6 (E.D.N.Y. June 19, 2007), but she has not suggested – nor supplied facts plausibly supporting – that this was the case.

3. *Rooker-Feldman* Doctrine

**\*9**  Finally, even if a due process claim arising out of the termination of Plaintiff's parental rights were not untimely, and even if it were plausibly alleged, such a claim is barred by the *Rooker-Feldman* doctrine. [16] *See generally D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923). This doctrine recognizes that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). "Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (internal quotation marks omitted). This carve-out of the district courts' subject matter jurisdiction "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005).

[16]     Westchester County does not argue that the *Rooker-Feldman* doctrine applies to this case and moves to dismiss on other grounds. Because *Rooker-Feldman* implicates a court's subject matter jurisdiction, however, I may address the doctrine's applicability *sua sponte. See Morris v. Sheldon J. Rosen, P.C.*, No. 11-CV-3556, 2012 WL 2564405, at *3 (E.D.N.Y. July 2, 2012) (collecting cases), *aff'd sub nom. Morris v. Rosen*, 577 Fed.Appx. 41 (2d Cir. 2014) (summary order).

The Second Circuit has identified four requirements that must be met for *Rooker-Feldman* to divest a district court of subject matter jurisdiction:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have

been rendered before the district court proceedings commenced ....

*Hoblock*, 422 F.3d at 85 (internal quotation marks, footnote, and alterations omitted). The first and fourth requirements are "procedural," while the second and third are "substantive"; the requirement that the plaintiff "*complain of an injury* caused by a state judgment ... is the core requirement from which the others derive." *Id.* at 85, 87 (emphasis in original). If all four requirements are met, the case must be dismissed.

Here all four factors are met. Plaintiff lost in state court when her parental rights were terminated, *see Johnson v. Myers*, No. 10-CV-1964, 2014 WL 2744624, at *6 (E.D.N.Y. June 16, 2014) (collecting cases), *vacated on other grounds and remanded sub nom. Myers v. Patterson*, 819 F.3d 625 (2d Cir. 2016), and in this action complains of that injury by alleging that the state judgment violated her federal due process rights as a parent, (*see* Doc. 27, at 3-4); *see also Hoblock*, 422 F.3d at 87 (suggesting factor met where father sues in federal court for son's return on grounds that state judgment violated his substantive due process rights as parent). Plaintiff seeks vacatur of the order terminating her parental rights, (*see, e.g.*, Doc. 19, at 9, 15), and/or damages to remedy injury resulting from it, (*see, e.g.*, FAC at 4), and the state judgment was plainly rendered well before she commenced this action on December 2, 2011. Indeed, other courts have repeatedly found that the *Rooker-Feldman* doctrine bars the precise relief Plaintiff seeks in this action. *See, e.g.*, *Green*, 585 F.3d at 103 (*Rooker-Feldman* would bar federal action seeking return of plaintiff's child if family court had previously entered final order permanently removing child from custody); *Phifer v. City of N.Y.*, 289 F.3d 49, 57 (2d Cir. 2002) (court precluded under *Rooker-Feldman* from reviewing family court's determinations regarding neglect, as family court decided those issues after providing plaintiff full and fair opportunity to litigate them, and therefore plaintiff barred from requesting order from district court reversing custody determination); *Johnson*, 2014 WL 2744624, at *8 (*Rooker-Feldman* precluded *pro se* plaintiff from challenging and reversing family court's prior neglect and custody orders); *Congregation Adas Yereim v. City of N.Y.*, 673 F. Supp. 2d 94, 104 (E.D.N.Y. 2009) ("[A] father's federal court challenge to the termination of his parental rights by a state court order will run aground on the shoals of *Rooker-Feldman*

....."). Accordingly, to the extent Plaintiff seeks vacatur or rejection of the order terminating her parental rights, such a claim is barred by *Rooker-Feldman* and dismissed.

**\*10** The *Rooker-Feldman* doctrine also bars a district court from reviewing alleged constitutional claims that are "inextricably intertwined" with decisions made in state judicial proceedings. *See People United for Children, Inc. v. City of N.Y.*, 108 F. Supp. 2d 275, 285-86 (S.D.N.Y. 2000). As a result, merely "presenting in federal court a legal theory not raised in state court ... cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed." *Hoblock*, 422 F.3d at 86. The Second Circuit in *Hoblock* presented the following example to illustrate when *Rooker-Feldman* bars subject matter jurisdiction, even where a plaintiff alleges new federal claims not raised in state court:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state court judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

*Id.* at 87.

Such guidance is particularly instructive here. Plaintiff alleges that Westchester County submitted false evidence in opposing her efforts to maintain, and later restore, her parental rights, (*see, e.g.*, FAC at 3; TAC at 4), but *Rooker-Feldman* bars both Plaintiff's request to vacate the termination order as well as any due process claims related to Defendant's conduct during or after the termination proceeding, *see Stein*, 24 Fed.Appx. at 69-70 (*Rooker-*

*Feldman* barred *pro se* plaintiff from arguing that he was entitled to additional post-deprivation hearing because argument challenged "the Family Court's handling of the case, and a finding in [plaintiff's] favor would necessitate some modification or possibly overruling of the orders entered by the Family Court"); *Johnson*, 2014 WL 2744624, at *8 ("[I]t appears that Plaintiff claims that her procedural due process rights were violated by virtue of false allegations made ... in the neglect proceeding in the Family Court.... Plaintiff's procedural due process claim is traceable directly to the Family Court orders and ... improperly invites review and rejection of these orders."); *Kaminski v. Comm'r of Oneida Cty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 105-06 (N.D.N.Y. 2011) (*pro se* plaintiff alleged that defendant violated her due process rights by submitting "false evidence, contradicting statements, and perjured declarations" during state court termination proceedings, but plaintiff's due process claims "invite[d] [court to] reject[ ]" state court judgments removing children from custody, and were accordingly precluded); *Bernstein v. N.Y.*, No. 06-CV-5681, 2007 WL 438169, at *6 (S.D.N.Y. Feb. 9, 2007) (plaintiff who sought declaratory judgment "that he was denied due process in the course of, and not *as a result of*, the judicial proceedings that led to the state court judgment" barred by *Rooker-Feldman* because declaration that plaintiff was denied due process during state court proceedings would "effectively ... revers[e] a judgment of the state court") (emphasis in original); *Wu v. LeVine*, No. 05-CV-1234, 2005 WL 2340722, at *2 (E.D.N.Y. June 7, 2005) (*Rooker-Feldman* applied even where *pro se* plaintiff alleged state court judgment procured by fraud, because plaintiff's constitutional and civil rights claims arose from state court proceedings and plaintiff could not "circumvent the *Rooker-Feldman* doctrine by recasting her claims as a federal civil rights violation"), *aff'd sub nom.* 314 Fed.Appx. 376 (2d Cir. 2009) (summary order).

**\*11** Nor can Plaintiff circumvent *Rooker-Feldman* by now arguing she seeks only monetary damages, (*see* FAC at 4), rather than review of the state court's determination, *see Lomnicki v. Cardinal McCloskey Servs.*, No. 04-CV-4548, 2007 WL 2176059, at *5 (S.D.N.Y. July 26, 2007) (although plaintiff argued she was "seeking damages for a Civil Rights violation," rather than review of family court's determination, court dismissed on *Rooker-Feldman* grounds because "[t]he fact that Plaintiff is alleging a new claim – discrimination – does not change the injury about which she complains. That injury – the

removal of the children from her custody – was caused by the Family Court judgment."); *McLean v. City of N.Y.*, No. 04-CV-8353, 2007 WL 415138, at *4 (S.D.N.Y. Feb. 6, 2007) ("[B]y seeking damages for violations of their parental rights, plaintiffs are in effect asking this Court to reject the Family Court's findings and reverse its judgment ordering the children's removal from plaintiffs' custody.").

Accordingly, even if Plaintiff had plausibly alleged a due process claim, she is barred by the *Rooker-Feldman* doctrine from pursuing it in this court. Any such claims are thereby dismissed.

## IV. <u>Leave to Amend</u>

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' " *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended her complaint four times, (*see* Docs. 19, 25, 27, 71), and on the last occasion did so with the benefit of pre-motion letters from Defendants outlining their proposed grounds for dismissal, (*see* Docs. 32, 48), and my observations during the November 18, 2015 and December 22, 2015 conferences that the third amended complaint was deficient because, among other reasons, its allegations appeared on their face to be untimely. At the December 22, 2015 conference, I told Plaintiff that the FAC would be her final opportunity to amend. Plaintiff has not asked to amend again nor suggested that she possesses facts that could cure the deficiencies identified in this opinion. *See Bencel v. Deutsche Bank, AG*, 507 Fed.Appx. 71, 73 (2d Cir. 2013) (summary order) (affirming denial of leave to amend on grounds of futility because appellants' claims would be time-barred even if amendment allowed); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional

allegations leading to different result); *Pugh-Perry v. N.Y.C. Human Res. Admin.*, 402 Fed.Appx. 588, 589 (2d Cir. 2010) (summary order) (affirming denial of leave to amend because *pro se* plaintiff's complaint time-barred and additional allegations would not cure defect); *Coleman v. brokersXpress, LLC*, 375 Fed.Appx. 136, 137 (2d Cir. 2010) (summary order) (denial of leave to amend proper where district court afforded *pro se* plaintiff one opportunity to amend complaint and plaintiff made no specific showing as to how he would cure defects if given second opportunity to amend); *Moore v. City of N.Y.*, No. 15-CV-4578, 2016 WL 3963120, at *10 n.7 (S.D.N.Y. July 21, 2016) (leave to replead not granted to *pro se* plaintiff due to futility, and in part because at pre-motion conference, court "extensive[ly] discuss[ed]" timeliness of filing with plaintiff); *Rullan v. N.Y.C. Sanitation Dep't*, No. 13-CV-5154, 2014 WL 2011771, at *8 (S.D.N.Y. May 16, 2014) (denying *pro se* plaintiff leave to amend because amended complaint did not provide details court had ordered and because plaintiff did not seek to file another amended complaint or indicate how another amended complaint would differ), *aff'd*, 607 Fed.Appx. 86 (2d Cir. 2015) (summary order); *Baiul v. William Morris Agency, LLC*, No. 13-CV-8683, 2014 WL 1804526, at *13 (S.D.N.Y. May 6, 2014) (denying leave to amend on grounds of futility because second-amended complaint "fail[ed] to come close to alleging any timely claims"), *aff'd*, 601 Fed.Appx. 58 (2d Cir. 2015) (summary order). Accordingly, I decline to grant leave to amend *sua sponte*. *See Gallop*, 642 F.3d at 369 ("[N]o court can be said to have erred in failing to grant a request [to amend the complaint] that was not made."); *Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP*, 351 Fed.Appx. 472, 474 (2d Cir. 2009) (summary order) (no abuse of discretion in granting motion to dismiss without *sua sponte* granting leave to amend).

## V. State Law Claims

**\*12** Having determined that Plaintiff has failed to plausibly allege any federal claims, I must consider whether this Court can or should exercise diversity or supplemental jurisdiction over Plaintiff's remaining state law causes of action.

Pursuant to 28 U.S.C. § 1332(a)(1), district courts retain jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the parties are citizens of different states. Accordingly, "diversity jurisdiction is not ... available when any plaintiff is a citizen of the same

State as any defendant." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A person's citizenship for purposes of diversity jurisdiction is her domicile, which is defined as the state in which she is both present and intends to remain for the indefinite future, *see Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989), and a person's residence at the time the lawsuit is commenced is *prima facie* evidence of her domicile, *see Galu v. Attias*, 923 F. Supp. 590, 595 (S.D.N.Y. 1996). "When analyzing subject matter jurisdiction, the Court must determine diversity at the time Plaintiff filed his complaint." *Jennison v. Dick's Sporting Goods, Inc.*, No. 11-CV-4906, 2011 WL 6293061, at *2 (S.D.N.Y. Dec. 15, 2011) (citing *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004)); *see Brignoli v. Balch, Hardy & Scheinman, Inc.*, 696 F. Supp. 37, 40 (S.D.N.Y. 1988) ("[W]hat is relevant for purposes of diversity jurisdiction is the party's domicile at [the] time that [a] plaintiff filed [its] amended complaint ...."). Once the initial complaint is filed, "a party's change of domicile does not affect the presence or absence of diversity." *Galu*, 923 F. Supp. at 595.

Although Plaintiff in later filed complaints claims to be a citizen of Haiti, (*see* Doc. 19, at 1; Doc. 25, at 2; Doc. 27, at 2; FAC, at 2), her original complaint identifies New York as her state of citizenship and provides a New York address, (*see* Doc. 2, at 2), as do her subsequent complaints, (*see* Doc. 19, at 1; Doc. 25, at 1; Doc. 27, at 1; FAC, at 1). At the December 22, 2015 conference, I questioned Plaintiff as to her physical whereabouts and intent to reside at the time she brought her claims in December 2011. She indicated that in 2011 she was residing in New York as a temporary resident, although she claimed that even at that time she was planning to return to Haiti once she got her children back. Despite Plaintiff's arguments to the contrary, it appears evident that at the time of filing, and even now, Plaintiff's Ossining residence represents her "true fixed home and principal establishment, and to which, whenever [s]he is absent, [s]he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks omitted). By her own account she plans to remain there for the indefinite future and has no concrete plans to live anywhere else. Accordingly, Plaintiff has not alleged facts sufficient to invoke this court's diversity jurisdiction. *See Reed v. Hartford Police Dep't*, No. 03-CV-2147, 2004 WL 813028, at *4 (D. Conn. Apr. 6, 2004) (dismissing *pro se* plaintiff's § 1983 claims and finding lack

of diversity jurisdiction to consider remaining state law claims because both plaintiff and defendants were citizens of Connecticut).

 **\*13** I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction."). The "traditional 'values of judicial economy, convenience, fairness, and comity' " weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Accordingly, having determined that all of the claims over which this Court has original jurisdiction should be dismissed, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action. *See Johnson v. Ruiz*, No. 11-CV-542,

2012 WL 90159, at \*5 (D. Conn. Jan. 10, 2012) (dismissing *pro se* plaintiff's § 1983 claims and declining to exercise supplemental jurisdiction over state law claims where plaintiff failed to allege facts sufficient to invoke court's diversity jurisdiction).

## VI. Conclusion

For the reasons stated above, Defendants' motions to dismiss are GRANTED. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 75, 84), and close the case.

## SO ORDERED.

Dated: August 29, 2016.

## All Citations

Not Reported in Fed. Supp., 2016 WL 4540837

---

**End of Document**　　　　　　　　　　© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 639697
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Roger L. WILLIAMS, Plaintiff,

v.

Kellie WILLIAMS, et al., Defendants.

No. 11–CV–246S.
|
Feb. 27, 2012.

**Attorneys and Law Firms**

Roger L. Williams, Jamestown, NY, pro se.

Paula M. Eade Newcomb, Bouvier Partnership, LLP, Kim S. Murphy, Nys Attorney General's Office, Buffalo, NY, for Defendants.

**DECISION AND ORDER**

WILLIAM M. SKRETNY, Chief Judge.

**I. INTRODUCTION**

*1 Plaintiff Roger L. Williams, proceeding *pro se,* brings this personal property and civil rights action against various defendants, alleging violations of the Fourth, Eighth, and Fourteenth Amendments. Plaintiff's claims arise out of his divorced wife's alleged retention of marital and personal property that was not credited to his child support payments, resulting in the issuance of a property execution and restraining notice on his bank account. Presently before this Court is Defendants Chautauqua County Family Court Judge Judith Claire, Support Magistrate Michael Bobseine, and former Support Magistrate Lawrence Zobel's (the "State Defendants") Motion to Dismiss, as well as Defendants Chautauqua County Department of Social Services [1] and Jerry D. Hyde's (the "Chautauqua Defendants") Motion to Dismiss. [2] For the following reasons, Defendants' motions are granted. Further, this Court declines to exercise jurisdiction over Plaintiff's state law property claim against Defendant Kellie Williams.

[1] The complaint identifies as a defendant the "Chautauqua County Support Collection." On Defendants' representations, no such entity exists. Considering the factual basis for Plaintiff's complaint, and Defendants' submissions, this Court will interpret Plaintiff's complaint as instead bringing a claim against the Chautauqua County Department of Social Services, a department of Chautauqua County, New York. (*See* Steger Aff. ¶ 6, Docket No. 4–2.)

[2] In support of their motion, the Chautauqua Defendants filed the Affidavit of Betsy S. Steger, with Exhibits; the Affidavit of Jerry D. Hyde; a Memorandum of Law; and a Reply Memorandum. (Docket Nos. 4, 5, 10.) The State Defendants similarly filed a Memorandum of Law; and a Reply Declaration. (Docket Nos. 3, 9.) In opposition to these motions, Plaintiff filed a Memorandum of Law; and two Reply memoranda. (Docket Nos. 8, 11, 12.)

**II. BACKGROUND**

**A. Facts**

Plaintiff and Defendant, Kellie S. Williams, were divorced sometime prior to October 1, 2002. (Comp., p. 4, Docket No. 1.) [3] Ms. Williams allegedly convinced Plaintiff that she was entitled to sole legal possession over their marital property and evicted him under threats of arrest. (*Id.*) In addition to losing what Plaintiff considers his fair share of the marital assets, Plaintiff was also unable to recover the rest of his personal property from their formerly shared residence. (*Id.*) Plaintiff then sought to have the Chautauqua County Department of Social Services ("Social Services") credit the value of his personal belongings, left behind in Ms. Williams' possession, in satisfaction of his child support payments in arrears. (*Id.*) Social Services failed to act on his petitions, and on March 22, 2005 a property execution and restraining notice was sent to Plaintiff's bank. (Comp., p. 7; Steger Aff. ¶ 15.) This notice was enforced against Plaintiff's Jamestown Metal Products Federal Credit Union account and resulted in two checks for the amount of $385.04 and $65 being forwarded by the bank to Social Services. (Steger Aff. ¶ 15.)

[3] Plaintiff's complaint is written on several pages of a standard form used for filing civil complaints in federal court. Because the complaint's page numbers are not listed consecutively, all page citations in this

Opinion refer to pages as they electronically appear on the docket.

## B. Procedural History

Plaintiff commenced this action on March 21, 2011 by filing a complaint in the United States District Court for the Western District of New York. (Docket No. 1.) The Chautauqua Defendants filed their Motion to Dismiss on April 25, 2011 (Docket No. 4), and the State Defendants followed suit with their own Motion to Dismiss on April 26, 2011 (Docket No. 6). This Court issued a scheduling notice and Plaintiff filed a timely response on May 5, 2011. (Docket No. 8.) State Defendants and the Chautauqua Defendants each filed a reply on May 11, 2011. (Docket Nos. 9, 10.) The parties' briefs were deemed submitted as of May 23, 2011. Nevertheless, Plaintiff filed a reply to Defendants' reply memoranda on May 25, 2011 (Docket No. 12) and sought leave to amend his Complaint (Docket No. 11). Because Plaintiff failed to comply with the requirements of Local Rule 15(a), Plaintiff's Motion to Amend was denied without prejudice.

## III. DISCUSSION

### A. Standards of Review

**\*2** Defendants argue that Plaintiff's Complaint should be dismissed primarily for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and/or for failure to state a claim upon which relief could be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[4]

[4] The Chautauqua Defendants also seek dismissal under Rules 12(b) (2), 12(b)(4), and 12(b)(5).

#### 1. Rule 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). The plaintiff bears the burden of establishing the existence of federal jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Where, as here, the jurisdictional challenges are raised at the pleading stage, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Sharkey v. Quarantillo,*

541 F.3d 75, 83 (2d Cir.2008). It is "presume[d] that general [fact] allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (alterations added). The court also may consider affidavits and other evidence outside the pleadings to resolve the jurisdictional issue, but it may not rely on conclusory or hearsay statements contained in affidavits. *J.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir.2004), *cert. denied,* 544 U.S. 968, 125 S.Ct. 1727, 161 L.Ed.2d 616 (2005). Indeed, courts "must" consult factual submissions "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." *Robinson v. Gov't of Malaysia,* 269 F.3d 133, 140 n. 6 (2d Cir.2001).

#### 2. Rule 12(b)(6)

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed.R.Civ.P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1945 (quoting *Twombly,* 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. *Iqbal,* 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not

merely allege, that the pleader is entitled to relief. *Id.* at 1950; Fed.R.Civ.P. 8(a)(2). Wellpleaded allegations must nudge the claim "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

**\*3** Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. *Iqbal,* 129 S.Ct. at 1950. First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. *See Iqbal,* 129 S.Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." *Id.*

## B. Application

Plaintiff's complaint, though difficult to decipher, appears to state three causes of action. [5] One is a claim against the State and Chautauqua Defendants for repeatedly failing to credit the value of his half of the marital property, as well as the personal property left with Ms. Williams, towards his child support arrears and future child support payments. Plaintiff alleges that the State Defendants' dismissal of his petitions in New York Family Court were in contravention of New York law, and that the Chautauqua Defendants, through their attorney Jerry D. Hyde, wrongful defended these actions in bad faith.

[5]  As a *pro se* litigant, Plaintiff is entitled to broad consideration of his submissions. Federal courts routinely read *pro se* submissions liberally, and interpret them to raise the strongest arguments that they suggest. *See Haines v. Kerner,* 404 U.S. 519, 520 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). This court has considered Plaintiff's submissions accordingly.

Another claim alleges that the Chautauqua Defendants violated Plaintiff's constitutional rights by receiving checks from his federal credit union account when the amounts owed in arrears should have been covered by credit received for his marital and personal property.

Lastly, Plaintiff brings a property claim against his former wife for her retention of their, and his, property.

Both the State and Chautauqua Defendants argue that the claims against them should be dismissed pursuant to the *Rooker–Feldman* doctrine. As discussed below, this Court agrees that it is precluded from exercising jurisdiction. Further, additional, independent, grounds exist for granting Defendants' motions.

### 1. Rooker–Feldman Doctrine

Pursuant to the *Rooker–Feldman* doctrine, federal district courts lack subject matter jurisdiction over suits that are "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inciting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *see Rooker v. Fidelity trust Co.,* 263 U.S. 413, 414–15, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *D.C. Ct. of App. v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The *Rooker–Feldman* doctrine applies if: (1) the federal court plaintiff lost in state court; (2) the plaintiff's alleged injuries are caused by the state court judgment; (3) the plaintiff's claims invite the district court to review and reject that state court judgment; and (4) the state court judgment was rendered prior to the commencement of the district court proceedings. *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005).

**\*4** In the present case, Plaintiff's complaint states that he has petitioned Defendants repeatedly to credit the value of his half of the marital property, as well as the personal property left with Ms. Williams, towards his child support arrears and future child support payments. Both the State and Chautauqua Defendants argue that dismissal under Rule 12(b)(1) and 12(b)(6) is appropriate under the *Rooker–Feldman* doctrine because Plaintiff seeks to effectuate a reversal of a state court judgment by bringing a civil rights action in this district. Plaintiff resists this argument by asserting that the state courts rulings at issue dismissed his claims for lack of jurisdiction, and thus did not consider the merits of his claim.

To resolve Plaintiff's claims, and determine the applicability of the *Rooker–Feldman* doctrine, it is necessary to scrutinize the New York Family Court holdings concerning the substance of Plaintiff's petitions.

*See, e.g., Velez v. Reynolds,* 325 F.Supp.2d 293, 309 (S.D.N.Y.2004) (*Rooker–Feldman* doctrine requires that plaintiffs have full and fair opportunity to litigate issues in state court proceeding). Plaintiff's complaint is devoid of the Family Court's specific holdings, other than that they occurred from December 16, 2002 to the time he filed his complaint. Chautauqua Defendants, by contrast, have provided the affidavit of Betsy S. Steger summarizing the various proceedings before Judge Claire and Support Magistrate ("S.M.") Bobseine and former S.M. Zobel. Additionally, attached to Steger's affidavit, are copies of 66 pages-worth of family court decisions chronicling Plaintiff's frequent, and colorful, appearances in that forum. These submissions are properly before this Court and must be considered on a Rule 12(b)(1) motion. *See Attica Cent. Schs.,* 386 F.3d at 110; *Robinson,* 269 F.3d at 140 n. 6.

Reviewing the Family Court's decisions reveals that Plaintiff's petitions were indeed dismissed for lack of jurisdiction. New York State's Family Court has limited jurisdiction over matters specifically enumerated in the New York State Constitution and relevant statutes. *King v. State Educ. Dep't,* 182 F.3d 162, 163 (2d Cir.1999). In a decision dated July 25, 2005, S.M. David L. Turnbull dismissed a petition brought by Plaintiff seeking to modify a judgment of divorce because Social Services had not yet credited the value of his property. (Steger Aff. 44.) [6] The court found that "even if the proper petition was filed with this Court, the parties would need to proceed in Supreme Court to determine the value of the former marital residence" and dismissed without prejudice. (*Id.*) The following year, a decision by S.M. Zobel again dismissed, without prejudice, Plaintiff's petition for similar relief because "Family Court has no jurisdiction over land or transfer of property" and because "Family Court has nothing to do with tax liens." (*Id.* at 46.) In a decision dated March 27, 2008 Plaintiff's petition was dismissed, this time with prejudice, and again addressed claims identical to those raised in Plaintiff's complaint.

[6]  The affidavit submitted by the Chautauqua Defendants includes various exhibits, but does not number the individual pages, nor create separate docket entries for them. As with the complaint, this Court will refer to any exhibits included with the Steger Affidavit according to the page numbers as they electronically appear on the docket.

**\*5** Mr. Williams claims that he is entitled to a credit against his arrears for the value of property that Kellie allegedly stole from him. It was explained to Mr. Williams that such issue was not for this Court and that if he believed a theft occurred he should take it to the proper Court. Mr. Williams also claimed that the Support Collection Unit was willfully and intentionally disobeying New York State law in their collection efforts. Mr. Williams was advised that he needed to exhaust all administrative remedies before raising such issues with this Court.

(*Id.* at 53.)

A later decision by S.M. Timothy J. Cooper relied on this decision in applying the principle of *res judicata* to dismiss Plaintiff's renewed petition, which again alleged that his personal property, allegedly taken by Ms. Williams, should be applied to his child support arrears and future child support. (*Id.* at 66.)

Although this Court agrees with Plaintiff that these decisions make clear that his petitions were dismissed, with prejudice, on jurisdictional grounds, whether this means the *Rooker–Feldman* doctrine does not apply is another question. Some courts have found an exception under the doctrine where a plaintiff alleges that the state court lacked subject matter jurisdiction. *See Schmitt v. Schmitt,* 324 F.3d 484, 487 (7th Cir.2003) (noting void *ab initio Rooker–Feldman* exception might be appropriate in bankruptcy cases, but declining to apply it for violations of constitutional jurisdictional limits); *In re James,* 940 F.2d 46, 52 (3d Cir.1991). To date, the Second Circuit has not taken a position on this issue. *See In re Salem,* 94 Fed. Appx. 24 (2d Cir.2004) (noting circuit split on exceptions to *Rooker–Feldman* doctrine where underlying state court judgment was void for lack of jurisdiction, but declining to decide issue); *cf., In re Agard,* 444 B.R. 231, 243 (Bankr.E.D.N.Y.2011) (no exception for judgment procured by fraud or default judgments).

Here, however, Plaintiff is not alleging that the state court improperly rendered a judgment by ruling on a matter over which it lacked subject matter jurisdiction. Rather, Plaintiff is arguing the opposite—that the Family Court found it had no jurisdiction, when in actuality it could have heard his petitions. Although this is a novel point, this Court is unpersuaded that it renders the *Rooker–Feldman* doctrine inapplicable. The *RookerFeldman* doctrine blocks district courts from exercising jurisdiction over claims that are inextricably

intertwined with state court determinations. *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002) (quoting *Feldman,* 460 U.S. at 482–83 n. 16). Although "where the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not 'inextricably intertwined' and therefore not barred by *Rooker–Feldman,*" if "adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment." *Id.* at 128–29. Applying the Second Circuit's four-pronged test for whether *Rooker–Feldman* precludes federal jurisdiction makes clear that such is the case here.

**\*6** First, Plaintiff was a loser in a state court. He sought to have the Family Court resolve his claims against Ms. Williams, but had those claims dismissed with prejudice. Whether Plaintiff could bring his claims in a different state court is a matter separate from his desire to litigate in New York Family Court. In finding that it lacked jurisdiction, the Family Court disagreed with Plaintiff's contention that the issues should be addressed in that forum, and not elsewhere. Because the complaint now challenges the dismissal of the petitions by New York's Family Court as having been in violation of New York law, including the New York State Family Court Act, Plaintiff was a loser in the state court actions.

Second, Plaintiff's complaint asserts a claim on the ground that the Family Court's dismissal was in violation of New York law. He has thus alleged an injury that is caused by and the result of the state court judgment.

As to the third prong, Plaintiff did have the opportunity to present his claims as evidenced by the support magistrates clear and concise summary of them. However, Plaintiff does not appear to have litigated the merits of his substantive claims because the Family Court determined that it did not have jurisdiction. Nevertheless, by entertaining Plaintiff's claims, this Court would still find itself in a position to find the state courts' rulings erroneous. This is because, were this Court now to find the judges to have committed a constitutional violation in not exercising jurisdiction, it would, in essence, declare that the state court did have jurisdiction and it was error not to exercise that jurisdiction. "This is precisely the result that the *Rooker–Feldman* doctrine seeks to avoid[.]" *Id.* at

129. Plaintiff had the opportunity to appeal the Family Court's decisions in an effort to establish jurisdiction. He declined to do so. In filing his complaint, Plaintiff now asks this Court to act in the role of an appellate court and review the Family Court's dismissal. This it cannot do, this Court itself lacking subject matter jurisdiction. *See Phifer v. City of New York,* 289 F.3d 49, 57 (2d Cir.2002) (federal court may not review family court determinations decided after plaintiff was provided "full and fair opportunity to litigate those issues"); *Montesano v. New York,* Nos. 05 CV 9574(GBD), 05 CV 10624(GBD), 2006 WL 944285, at \*3 (S.D.N.Y. Apr. 12, 2006) (observing that a "plaintiff cannot circumvent the appropriate state appellate process by bringing a declaratory action, couched in terms of a civil rights violation, seeking federal review and vacatur of adverse state-court decisions"). [7]

[7]  Further supporting this conclusion is Defendant's request that this Court order a change of custody status, a request over which this Court clearly lacks jurisdiction. *See Phifer,* 289 F.3d at 57 (claims challenging family court decisions concerning custody, neglect, and visitation rights barred by *Rooker–Feldman* doctrine).

Finally, in satisfaction of the fourth prong, the Family Court decisions were rendered prior to the March 21, 2011 filing date of the complaint.

Having found that the *Rooker–Feldman* doctrine does apply in this case, this Court must conclude that it lacks subject matter jurisdiction. Plaintiff's claims against the State and Chautauqua Defendants will be dismissed. [8]

[8]  In reaching this conclusion, this Court has also considered Plaintiff's claim against the Chautauqua Defendants, that they improperly defended the collection of funds from his bank account. To the extent Plaintiff seeks this Court to find the Family Court's rulings concerning that collection unconstitutional, Plaintiff's claim is also dismissed pursuant to the *Rooker–Feldman* doctrine. Plaintiff could have availed himself of his state appellate remedies. His failure to do so does not now confer jurisdiction on this Court.

**2. Claims against the Chautauqua Defendants**

**\*7** Even if this Court had subject matter jurisdiction, dismissal would still be independently called for on those claims against the Chautauqua Defendants because the

claims fall outside the statute of limitations under [42 U.S.C. § 1983.](#) [9] The statute of limitations for claims arising under [§ 1983](#) in New York is three years. *[Shomo v. City of New York,](#)* 579 F.3d 176, 181 (2d cir.2009). A [§ 1983](#) claim ordinarily accrues when a plaintiff knows or has reason to know of the harm. *Id.* The proper focus is on the time of the unlawful act and when Plaintiff knows or has reason to know of the injury that is the basis of the action; not when the consequences become painful. *[Eagleston v. Guido,](#)* 41 F.3d 865, 871 (2d Cir.1994).

[9]    Plaintiff's complaint does not state under what statute he brings his constitutional civil rights claims, but [§ 1983](#) provides a civil cause of action for deprivation of federal rights. *See [Yip v. Bd. of Trs. of State Univ. of N.Y.,](#)* No. 03–CV–00959C(SR), 2004 WL 2202594, at *4 (W.D.N.Y. Sept.29, 2004) (interpreting constitutional claims as arising under [§ 1983](#)). Moreover, Plaintiff's own reply memorandum refers to his claims against the State Defendants as arising under [§ 1983.](#) (Docket No. 12.)

Plaintiff claims that the Chautauqua Defendants sent a restraining notice against his federal credit union bank account on March 22, 2005, and that thereafter on May 24, 2005 an Execution and Notice was sent against the same account. (Comp. p. 7.) Exhibits submitted by Defendants, including copies of the cancelled checks, acknowledge that on March 22, 2005 a property execution and restraining notice was sent to Plaintiff's bank, and that as a result of this notice two checks were forwarded to the Child Support Enforcement Collection Unit in June 2005. (Steger Aff. ¶ 15.) Plaintiff claims these acts were illegal and in violation of his Fourth and Eighth Amendment rights.

Regardless of the merits of Plaintiff's contentions, the statute of limitations on those claims has long since run. The alleged acts occurred in 2005, and Plaintiff's complaint was not filed until early 2011. Plaintiff does not argue that he had no knowledge of these acts or that these acts were but one of a series of similar notices that were still being sent in 2008. Instead, Plaintiff argues that the proper statute of limitations for these acts should be that applied to crimes of felony grand larceny in the second degree, which, according to Defendant is seven years.

Plaintiff's argument is without merit. Plaintiff seeks redress for constitutional violations, not extortion and theft. Moreover, there is no reason why the statute

of limitations should be tolled or that the violations are ongoing. Accordingly, Plaintiff's claims against the Chautauqua Defendants must be dismissed as untimely. [10]

[10]    Plaintiff's complaint also asserts unconstitutional conduct by attorney Jerry D. Hyde for intentionally and in bad faith defending Social Services from Plaintiff's petitions. Apart from falling outside the applicable statute of limitations, this claim can also be dismissed as lacking any factual specificity sufficient for this Court to find a constitutional violation. Conclusory allegations like those in Plaintiff's complaint, without more, fail to state a claim for which relief can be granted. *See [Barr v. Abrams,](#)* 810 F.2d 358, 363 (2d Cir.1987). Additionally, Mr. Hyde was never personally served with a summons and complaint in this matter, nor did he receive process by mail, and this Court finds that dismissal of the claim would also be warranted on this basis. (Hyde Aff. ¶ 3, Docket No. 4–3.)

**3. Claims against the State Defendants**

Similarly, the claims against the State Defendants are subject to dismissal even if the *Rooker–Feldman* doctrine were not to apply. It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities. *See generally, [Mireles v. Waco,](#)* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). "[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *[Id.](#)* at 10 (quoting *[Bradley v. Fisher,](#)* 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871)). This immunity holds fast even against allegations that a judge acted in bad faith or with malice. *[Pierson v. Ray,](#)* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). This immunity has also been found to extend to support magistrates. *[Lomtevas v. Cardozo,](#)* No. 05–CV–2779, 2006 WL 229908, at *5 (E.D .N.Y. Jan. 31, 2006) (finding support magistrates in family court act as judges and are entitled to absolute immunity).

***8** Plaintiff alleges that the State Defendants improperly dismissed his claims for lack of jurisdiction. Plaintiff does not assert, however, that, in determining whether they had jurisdiction over his claims, the State Defendants were acting outside their judicial responsibilities. "In deciding

whether absolute judicial immunity applies a court should consider the nature of the act taken, namely whether it is a function normally performed by a judge, and the expectations of the parties, namely whether they dealt with the judge in his judicial capacity." *Arena v. Dep't of Social Servs. of Nassau Cnty.,* 216 F.Supp.2d 146, 153 (E.D.N.Y.2002). Clearly, deciding whether or not it has jurisdiction, is a fundamental duty of a court that falls well within the scope of its judicial responsibilities. *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (quoting *Bradley,* 80 U.S. at 351) ("Because some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction ... the scope of the judge's jurisdiction must be constructed broadly where the issue is the immunity of the judge" (internal quotations and citations omitted)). Indeed, because New York's Family Court is a court of limited jurisdiction, it is necessary that, in carrying out this responsibility, the court first determines whether it is empowered to hear a matter. *See Matter of Suffolk Cnty. Dep't of Social Servs. v. Spinale,* 57 A.D.3d 681, 682–83, 870 N.Y.S.2d 70, 71 (2d Dep't 2008) (noting that family court jurisdiction is limited to those powers specifically enumerated in state constitution and state statutes). In making this determination, Family Court judges do not relinquish judicial immunity. *See King v.* Rell, No. 3:06–cv–1703(VLB), 2008 WL 793207, at *4 (D.Conn. Mar. 24, 2008) (appellate court's finding that probate court did not have jurisdiction "is not identical to a finding that there was a clear absence of all jurisdiction, the judicial immunity standard"); *Gross v. Rell,* 485 F.Supp.2d 72, 79 (D.Conn.2007) ("A finding of no jurisdiction is quite different from a finding of a clear absence of all jurisdiction."). Plaintiff has provided nothing else to persuade this Court that the State Defendants were acting in the clear absence of all jurisdiction. Moreover, the State Defendants had jurisdiction over the underlying family law dispute.

Plaintiff's claims against the State Defendants will therefore be dismissed. [11]

---

[11]    To the extent Plaintiff seeks non-monetary relief, such claims would also be barred under judicial immunity because Plaintiff has alleged no violation of a declaratory decree or that declaratory relief was unavailable. *See Arena,* 216 F.Supp.2d at 154.

**4. Claims against Ms. Williams**

After the other defendants' motions to dismiss are granted, the only remaining Defendant will be Ms. Kellie Williams. Plaintiff's complaint seeks the imposition of criminal penalties and restitution for property lost. Defendant alleges no constitutional violations or other grounds on which to base federal jurisdiction. Having determined that all of Plaintiff's other claims should be dismissed, this Court declines to exercise supplemental jurisdiction over the remaining state law claim against Ms. Williams. *See Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well"); *Borrelli v. Sec'y of Treasury,* 343 F.Supp.2d 249, 256 (S.D.N.Y.2004) (dismissing claims against federal defendants for lack of subject matter jurisdiction and declining to exercise supplemental jurisdiction over claims against municipal defendants).

## IV. CONCLUSION

**\*9**    For the foregoing reasons, the State Defendants' Motion to Dismiss is granted. The Chautauqua Defendants' Motion to Dismiss is also granted. Finally, this Court will not exercise supplemental jurisdiction over the claims against Ms. Williams.

## V. ORDERS

IT HEREBY IS ORDERED, that the Chautauqua Defendants' Motion to Dismiss (Docket No. 4) is GRANTED.

FURTHER, that the State Defendants' Motion to Dismiss (Docket No. 6) is GRANTED.

FURTHER, that this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim, which is hereby dismissed under 28 U.S.C. § 1367(c)(3).

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 639697

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 229908
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Peter C. LOMTEVAS, pro se, Plaintiff,
v.
Michael A CARDOZO, Esq., individually and as
Corporation Counsel of the City of New York,
Joseph Greenberg, Esq., individually and as
Assistant Corporation Counsel, New York State
Office of Court Administration, Elaine C. Clark,
Esq., individually and as Support Magistrate
of the Queens Family Court, Defendants.

No. 05-CV-2779(DLI)(LB).
|
Jan. 31, 2006.

**Attorneys and Law Firms**

Peter Christopher Lomtevas, Ozone Park, NY, pro se.

Jane R. Goldberg, Corporation Counsel of the City of
NY, Anthony J. Tomari, Attorney General State of New
York, New York, NY, for Defendants.

*MEMORANDUM AND ORDER*

DORA L. IRIZARRY, U.S. District Judge:

 **\*1** Peter C. Lomtevas ("Lomtevas" or "plaintiff")
brings this action against New York Corporation
Counsel Michael A. Cardozo, Esq. ("Cardozo"),
Assistant Corporation Counsel Joseph Greenberg, Esq.
("Greenberg"), the New York State Office of Court
Administration ("OCA"), and New York Family Court
Support Magistrate Elaine A. Clark, Esq. ("Clark")
(collectively "defendants"), pursuant to 42 U.S.C. § 1983,
alleging conspiracy to violate and violations of his First,
Fifth, Ninth, and Fourteenth Amendment rights.

Plaintiff seeks a judgment ordering that he be reunited
with his son and enjoining defendants from attempting
to assert jurisdiction in the New York State Family
Court. He seeks declaratory relief and compensatory
and punitive damages against Clark, and he seeks
compensatory and punitive damages against Cardozo and

Greenberg. He also requests that the court award him
attorney's fees.

Defendants move to dismiss under Fed.R.Civ.P. 12(b)(6)
and (1). For the foregoing reasons, defendants' motion to
dismiss is granted in its entirety.

I. Factual Background
This action arises out of plaintiff's divorce from his
wife Gisela Lomtevas (now Gisela Strom) ("Strom") on
February 2, 1987. At the conclusion of that proceeding,
the New York Supreme Court, Queens County, awarded
plaintiff custody of their child and ordered him to
pay Strom $50.00 a week in child support. (Compl.
Ex. A at 2-3.) In the divorce judgment, Judge Zelman
stated that "this court retains jurisdiction of this matter
concurrently with the Family Court for the purposes
of making such further decree with respect to alimony,
support, and visitation as it finds appropriate under the
circumstances." (*Id.* at 3.) Later that year, on June 5,
1987, Judge DePhillips of the Queens County Family
Court awarded Strom temporary custody of the child.
(Compl.Ex. C.) Lomtevas appealed that decision several
times over a period of years.

Lomtevas filed an action in the New York Supreme
Court, Queens County, to resettle the divorce judgment.
The divorce settlement was reworded to state that,
"the Supreme Court retains jurisdiction with respect
to custody, alimony, support, and visitation ...
the Family Court shall not have any concurrent
jurisdiction." (Compl. Ex. B at 3.) There was a
subsequent period of confusion concerning which court
had jurisdiction to hear the various custody claims and
appeals filed by plaintiff. Ultimately, on December 4,
1989, the Appellate Division, Second Department, in
declining to modify DePhillips' order granting Strom
temporary custody of the child, noted that Lomtevas
"may pursue his application for a change of custody in
the Supreme Court." *Lomtevas v. Lomtevas,* 156 A.D.2d
367, 548 N.Y.S.2d 901 (2d Dep't 1989). Lomtevas never
returned to the Supreme Court to apply for a change of
custody nor, apparently, did he ever try to modify the
November 5, 1987 child support order. (Compl. Ex. H at
2-3.)

Around 1991, Gisela Strom left for Germany with the
child. According to Lomtevas, he never saw his child
again. In March 2003, Strom reappeared to collect child

support arrears by petition in the Queens County Family Court. On October 28, 2003, Support Magistrate Clark of the Queens County Family Court issued a temporary order of support directing Lomtevas to pay Strom $50.00 a week effective October 31, 2003. (Compl. Ex. G at 1-2.) Plaintiff filed several orders to show cause before the Supreme Court, Queens County, seeking to dismiss the Family Court proceeding. (Compl.Ex. F.)

**\*2** Plaintiff's Order to Show Cause was adjourned several times and finally considered fully submitted on January 25, 2005. (Compl. Ex. H at 4.) On April 14, 2005, Judge Lebowitz of the Queens County Supreme Court denied the motion to dismiss the Family Court proceedings, explaining that his court did "not have the jurisdiction to dismiss a proceeding pending in another court." (*Id.*) Lebowitz recommended that Lomtevas raise the jurisdictional issue in the Family Court proceeding. Lomtevas appealed Lebowitz's decision to the Appellate Division, Second Department, but the Second Department Clerk's Office reports that the appeal was withdrawn on October 15, 2005. (*See* Goldberg Decl. at 2, Ex. B.)

As per Judge Lebowitz's recommendation, plaintiff filed a motion in Family Court to dismiss Clark's order of support for lack of subject matter jurisdiction. On June 6, 2005, Strom's petition was dismissed, and the dismissal was affirmed by Judge Lubow in the Family Court on August 10, 2005. (Goldberg Decl, Ex. C.) Corporation counsel reports that Strom will appeal Judge Lubow's decision. (Goldberg Decl. at 2.)

On June 9, 2005, Lomtevas filed this complaint. He alleges that Clark issued the order of temporary support without subject matter jurisdiction and in violation of his due process rights. He alleges that OCA, as Clark's employer and supervisor, is also culpable. He further alleges that Greenberg and Cardozo's refusal to acknowledge that the Family Court did not have jurisdiction and their zealous prosecution of Strom's child support enforcement petition violated his constitutional rights.

## II. Discussion

### Standard of Review

In reviewing a complaint under Fed.R.Civ.P. 12(b)(1), the court accepts as true all factual allegations in the plaintiff's complaint. *Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). However, "inferences favorable to the party asserting jurisdiction should not be drawn." *Id.* A case is properly dismissed under 12(b)(1) when "the district court lacks statutory or constitutional power to adjudicate it." *Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir.2000).

When evaluating a complaint under Fed.R.Civ.P. 12(b) (6), the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999). A motion to dismiss under 12(b)(6) must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 335 U.S. 41, 45-446, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### 11th Amendment Immunity

Plaintiff's complaint against OCA must be dismissed for lack of subject matter jurisdiction. "Absent consent to suit in federal court, or an express statutory waiver, the Eleventh Amendment bars a suit in federal court by a citizen of a state against that state or one of its agencies." *Bland v. New York,* 236 F.Supp.2d 526, 534 (E.D.N.Y.2003) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). New York has not consented to suits pursuant to § 1983 in federal court, nor has Congress enacted an Eleventh Amendment waiver for § 1983 claims. *See id.* Therefore, as an agency of the state, OCA is immune from suit. *Posr v. Court Officer Shield # 207,* 180 F.3d 409, 414 (2d Cir.1999).

### Abstention Under the Domestic Relations Doctrine

**\*3** The court must abstain from exercising jurisdiction over plaintiff's request that he be reunited with his son. The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). Arguably, plaintiff's request is "aimed at changing the results of [an]

order[ ] of child custody," which the court is required to dismiss under the domestic relations doctrine. *Rabinowitz v. New York,* 329 F.Supp.2d 373, 376 (E.D.N.Y.2004).

Though the domestic relations doctrine has been narrowly construed, covering only matrimonial actions, i.e., cases on the subjects of divorce, alimony, or the custody of children, *Williams v. Lambert,* 46 F.3d 1275, 1283 (2d Cir.1995), a number of courts have recognized that federal courts should nevertheless abstain from exercising jurisdiction when issues are " 'on the verge' of being matrimonial in nature" if full and fair adjudication is available in state courts. *Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990); *Melnick v. Adelson-Melnick,* 346 F.Supp.2d 499, 505 (S.D.N.Y.2004). Abstention is particularly urged for cases concerning visitation rights. *See, e.g., Melnick,* 346 F.Supp.2d at 506; *Neustein v. Orbach,* 732 F.Supp. 333, 339 (E.D.N.Y.1990). Interfering in such cases would "embroil the federal courts in matters over which the state courts have continuing supervision." *Melnick,* 346 F.Supp.2d at 506. Since consideration of plaintiff's request for relief would result in a decision regarding visitation, and both the New York Supreme Court and appellate courts are available to plaintiff concerning this matter, abstention is warranted.

Abstention under the domestic relations doctrine is also warranted when a plaintiff makes frivolous constitutional claims that are actually "impermissible attempt[s] to embroil the federal courts in matrimonial matters best left to the states." *Hernstadt v. Hernstadt,* 373 F.2d 316, 318 (2d Cir.1967); *Fariello v. Campbell,* 860 F.Supp. 54, 70 (E.D.N.Y.1994). Plaintiff's claims that Greenberg's pursuit of the petition in Family Court violated his due process rights, that Clark's alleged disparaging behavior towards him violated the equal protection clause, and that defendants' failure to reunite him with his son abridged his due process rights are such claims. (Compl.¶¶ 39, 45, 52.) Though he frames his claims in constitutional terms, he is effectively asking this court to affirm or reverse a child custody decree and determine visitation rights. Consideration of this claim would require the court to analyze the New York State Supreme Court's custody decree, determine its force and validity, and possibly modify it or subsequent custody proceedings. Since the New York courts clearly offer plaintiff a forum in which to adjudicate this claim, this court will not exercise jurisdiction.

*Younger Abstention Doctrine*

**\*4** Abstention is proper regarding plaintiff's request that the court declare Clark's order of support to have been without legal basis and, therefore, unconstitutional. Abstention is also proper inasmuch as plaintiff requests that the court enjoin defendants from continuing to violate his rights by prosecuting the matter in the Family Court. Under the *Younger* abstention doctrine, federal courts generally must abstain from adjudicating federal claims that "involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002) (citing *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). *Younger* abstention is proper when: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Constr. Corp.,* 282 F.3d at 198. All three conditions are met in the case at bar: (1) there is at least one ongoing state proceeding concerning the Family Court's exercise of jurisdiction, [1] with an appeal of Judge Lubow's decision imminent; (2) the state has a clear interest in overseeing the regulations governing the interrelationship of its courts and the proper adjudication of alimony, custody, and visitation matters, *see, e.g., Moore v. Sims,* 442 U.S. 415, 435, 99 S.Ct. 2317, 60 L.Ed.2d 994 (1979) ("Family relations are a traditional area of state concern."); *Melnick,* 346 F.Supp.2d at 505-06; *Neustein,* 732 F.Supp. at 341 (quoting *Mendez v. Heller,* 530 F.2d 457, 461 (2d Cir.1976) ("we should be especially careful to avoid unnecessary or untimely interference with the State's administration of its domestic policies"); and (3) there is no indication that plaintiff lacks the opportunity to air his complaints in New York's appellate courts. Therefore, *Younger* abstention is appropriate over this claim.

[1]     The court has no information as to why the appeal of Judge Lebowitz's decision was withdrawn.

*Absolute Judicial and Prosecutorial Immunity*

Admittedly, *Younger* abstention is "inappropriate where the litigant seeks money damages for an alleged violation of § 1983." *Rivers v. McLeod,* 252 F.3d 99, 101-02 (2d Cir.2001). However, inasmuch as plaintiff requests

punitive and compensatory damages against Clark, Greenberg, and Cardozo in their individual and official capacities, his claims must be dismissed based on the doctrines of absolute judicial and prosecutorial immunity.

The sole claims against Clark over which this court may assert jurisdiction concern her conspiracy to assert and assertion of jurisdiction in the Family Court and her allegedly intimidating and disparaging behavior. Plaintiff's request for damages flowing from these accusations is barred by the doctrine of absolute judicial immunity. *See, e.g., Pierson v. Ray,* 386 U.S. 547, 553-54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher,* 13 Wall. 335, 80 U.S. 335, 347, 20 L.Ed. 646 (1871). Judicial immunity can only be overcome for "nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity" or for actions "taken in the complete absence of all jurisdiction." *Mireless v. Waco,* 502 U.S. 9, 11-12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).

 **\*5** Plaintiff only alleges the latter situation: that Clark "overstepped her authority in issuing a temporary support enforcement order despite [p]laintiff's motion to dismiss for lack of subject matter jurisdiction." (Compl.¶ 1.) In light of § 411 of the Family Court Act, which states that "[t]he family court has exclusive original jurisdiction over proceedings for support or maintenance under this article and in proceedings under article five-B of this act, known as the uniform interstate family support act," Clark did not act in clear absence of all jurisdiction. At most, the complaint alleges that Clark assumed jurisdiction erroneously since the divorce settlement vested jurisdiction in the Supreme Court only.

Plaintiff's contention that a support magistrate is not a "judge," but only a "government attorney," does not topple Clark's entitlement to immunity. (Pl.'s Affirmation in Opp'n ¶ 14.) "Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities." *Butz v. Economou,* 438 U.S. 478, 511, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Absolute immunity is accorded to grand jurors and prosecutors under a "quasi-judicial" theory so that they "can perform their respective functions without harassment or intimidation." *Id.* at 512. Persons "performing adjudicatory functions within a federal agency" are also entitled to absolute immunity, as their role is " 'functionally comparable' to that of a judge." *Id.* at 513-14. This absolute quasi-judicial immunity is

afforded to state government officials as well. *See, e.g., Imbler v. Pachtman,* 424 U.S. 409, 420-24, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (quasi-judicial immunity afforded to a state prosecuting attorney); *Quartararo v. Catterson,* 917 F.Supp. 919, 949 (E.D.N.Y.1996) (state parole officers entitled to absolute immunity). As a support magistrate in the Family Court, Clark's actions were the same as those of a judge. Her decisions were both judicial in nature and subject to review. Therefore, she is entitled to absolute immunity for her role as a support magistrate.

Plaintiff's allegations that Clark screamed at him, "cackled 'denied' as if to belittle [him]," and "in a fit of rage and temper" ordered him to pay child support are also insufficient to overcome judicial immunity. (*See* Compl. ¶¶ 27, 29.) Judges are immune from suit even when they are accused of malicious or corrupt actions. *Stump v. Sparkman,* 435 U.S. 349, 356-64, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Bradley,* 80 U.S. at 347, 351. This immunity is not abridged regardless of how injurious the consequences of their erroneous actions may have been for the plaintiff. *Stump,* U.S. 435 at 356 n. 5, 363-64.

Plaintiff's claims that Greenberg conspired to prosecute and prosecuted in the wrong court similarly must be dismissed based on absolute prosecutorial immunity. Prosecutors are absolutely immune from suit for all "activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation." *Barrett v. United States,* 798 F.2d 565, 572 (2d Cir.1986). Activities of this type include initiating prosecution and presenting evidence to a grand jury, or choosing not to do so, and conducting plea bargaining negotiations. *Id.* Absolute immunity is not abridged even when an attorney's decision to prosecute is malicious. *Kalina v. Fletcher,* 522 U.S. 118, 124-25, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Municipal attorneys who institute civil lawsuits are also afforded absolute immunity. *Cetenich v. Alden,* 11 F.Supp.2d 238, 241 (N.D.N.Y.1998); *see also Rudow v. New York,* 822 F.2d 324 (2d Cir.1987) (municipal agency attorney held immune from suit because of absolute prosecutorial immunity).

 **\*6** Plaintiff's allegation that "Greenberg could have moved to dismiss [the] Petition, and could have advised ... Strom to file an action in Queens Supreme Court to claim her arrears" is insufficient to overcome absolute immunity. (Compl.¶ 39.) Greenberg's decision to pursue Strom's UIFSA petition in Family Court was a decision

made in his function as Assistant Corporation Counsel. As such, he is absolutely immune from suit for his conduct, and plaintiff's claims against him must be dismissed.

Finally, plaintiff's claim that Cardozo is liable for compensatory and punitive damages as Greenberg's supervisor must be dismissed. Plaintiff's only complaint is that Cardozo, "whose policy and procedure it is to enforce child support orders emanating from any Courts worldwide," supported Greenberg's child support petition in the Family Court. (Compl.¶¶ 9, 41, 42.) "[W]hen the actions of a prosecutor are subject to absolute immunity, a supervising prosecuting attorney is also covered by that immunity." *Pinaud v. County of Suffolk,* 798 F.Supp. 913, 918 (E.D.N.Y.1992) (citing *Buckley v. Fitzsimmons,* 952 F.2d 965, 966 (7th Cir.1992)), *aff'd in part, rev'd in part,* 52 F.3d 1139 (2d Cir.1995); *see also Haynesworth v. Miller,* 820 F.2d 1245, 1269 (D.C.Cir.1987). Since Greenberg has absolute immunity over the only claims that this court has jurisdiction to adjudicate, Cardozo is also immune.

*Declaratory Relief*

The only claim remaining is plaintiff's request for relief against Clark declaring that her actions in "scowling, yelling and baring her teeth" were unconstitutional. However, in order to state a claim under § 1983, the plaintiff must allege facts showing that defendants, acting "under color of any statute, ordinance, regulation, custom, or usage, of any State ... subject[ed], or cause[d] to be subjected, any citizen of the United States or other person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Plaintiff's mere allegations that Clark "cackled" at him and "in a fit of rage" ordered him to pay child support are insufficient to state a claim under § 1983 and dismissed under Fed.R.Civ.P. 12(b)(6).

III. Conclusion

For the reasons set forth above, the court grants the defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 229908

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

Robertson v. Allen, Not Reported in Fed. Supp. (2016)

2016 WL 205381

2016 WL 205381
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brian ROBERTSON et al., Plaintiffs,

v.

Jennifer ALLEN et al., Defendants.

1:15-cv-11 (GLS/CFH)
|
Signed 01/15/2016

**Attorneys and Law Firms**

Brian Robertson, 5102 Eagle Perch Way, Greensboro, NC 27407, pro se.

Keri Robertson, 5605 Devon Dr., Harrisburg, PA 17112, pro se.

Jennifer Allen, Pamela Joern, Esq., Jillian E. Jackson, Esq., Melissa Roche, Michael C. Mauceri, Esq., Ulster County Department of Social Services, Ulster County, Michael Hein, Ulster, County Public Defenders Office, Michael Ipoace [1], Maynard, O'Connor Law Firm, Route 9W, P.O. Box 180, Adam T. Mandell, Esq., of Counsel, Saugerties, NY 12477, Andrew J. Gilday, Esq., Cabaniss Casey LLP, 4 Tower Place, Suite 100, David B. Cabaniss, Esq., of Counsel, Albany, NY 12203, Barclay Damon LLP, 80 State Street, Jonathan H. Bard, Esq., of Counsel, Albany, NY 12207, Lawrence R. Shelton, Esq., No Appearance, Marian B. Cocose, Esq., Ted J. Stein, Esq., Stein Legal Services, Karen McGeeney, Office of Eric Schneider, P.O. Box 3936, Eric Schneider, Esq., of Counsel, Kingston, NY 12402, Anthony McGinty, Ulster County, Family Court, New York State Bar, Association, New York Attorney, Generals Office, New York State, Commission on Judicial Conduct, New York Department of Criminal, Justice System, Donna Weiner, Hon. Eric T. Schneiderman, New York State Attorney General, Litigation Bureau, The Capitol, Keith J. Starlin, Assistant Attorney General, of Counsel, Albany, NY 12224, Dr. Rebecca Arp Burke, Scolamiero, Mortati & Hurd, LLP, 7 Washington Square, P.O. Box 15085, Adam C. Hover, Esq., Peter M. Scolamiero, Esq., of Counsel, Albany, NY 12212, Cappy Weiner, Wilson, Elser Law Firm, 677 Broadway-9th Floor, Peter A. Lauricella, Esq., of Counsel, Albany, NY 12207, for the Defendants.

[1]     Plaintiffs incorrectly spelled Michael Ipoace's name in their complaint. (Dkt. No. 42, Attach. 1 at 1). The court directs the Clerk to amend the caption to reflect the correct spelling of "Michael Iapoce."

**MEMORANDUM-DECISION AND ORDER**

Gary L. Sharpe, Senior District Judge

**I. Introduction**

**\*1** Plaintiffs, husband and wife, Brian Robertson ("B. Robertson") and Keri Robertson ("K. Robertson") commenced this action *pro se* against twenty-five defendants [2] alleging constitutional and statutory violations in connection with New York State Family Court proceedings. (Compl., Dkt. No. 1.) Pending are motions to dismiss by state defendants, (Dkt. No. 15), Stein defendants, (Dkt. No. 20), county defendants, (Dkt. No. 42), defendant Cappy Weiner, (Dkt. No. 58), and defendant Andrew Gilday, Esq., (Dkt. No. 67), on grounds including lack of subject matter jurisdiction, lack of personal jurisdiction, improper service, and failure to state a claim. Also pending is defendant Dr. Rebecca Arp's motion for judgment on the pleadings. (Dkt. No. 54.) For the reasons that follow, the motions are granted and plaintiffs' complaint is dismissed. As such, Dr. Arp's cross claims for indemnification or contribution against all defendants are dismissed. (Dkt. No. 26 ¶¶ 70-71.) Additionally, Dr. Arp has recently passed away, (Dkt. No. 77), and ninety days have passed without a motion for her substitution by any party, (Dkt. No. 78). Accordingly, the claims by and against Dr. Arp are also dismissed for this reason. *See* Fed. R. Civ. P. 25(a).

[2]     Plaintiffs sued the following defendants: Jennifer Allen, Pamela Joern, Esq., Jillian E. Jackson, Melissa Roche, Michael C. Mauceri, Esq., Ulster County Department of Social Services, Ulster County, Michael Hein, Ulster County Public Defenders Office, and Michael Iapoce (collectively "county defendants"); Anthony McGinty, Ulster County Family Court, New York State Bar Association, New York Attorney Generals Office, New York State Commission on Judicial Conduct, New York Department of Criminal Justice System, and Donna Weiner (collectively "state defendants"); Marian

Robertson v. Allen, Not Reported in Fed. Supp. (2016)

2016 WL 205381

B. Cocose, Esq., Ted J. Stein, Esq., Stein Legal Services, and Karen McGeeney (collectively "Stein defendants"); as well as Andrew J. Gilday, Esq, Lawrence R. Shelton, Esq., Dr. Rebecca Arp, and Cappy Weiner.

## II. <u>Background</u>

### A. <u>Facts</u>

Initially, the court notes that plaintiffs filed a 156-page complaint without numbered paragraphs of which the first seventy-two pages contain almost exclusively legal conclusions. (*See generally* Compl.) Plaintiffs' complaint also includes transcript excerpts purportedly from the Family Court proceedings and diary entries replete with minute details of those proceedings. Plaintiffs appear to allege numerous causes of action, but, in most instances, fail to attribute their claims to the conduct of any particular defendant. Nonetheless, the court has endeavored to decipher plaintiffs' claims and organize a chronology of the factual background, although, much remains disjointed. To assist the court in this endeavor, it has taken judicial notice of the decisions, orders, and filings in the underlying Family Court proceedings.[3] *See Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 166 n.3 (2d Cir. 2012). The factual background is divided between the procedural history of the Family Court proceedings and, to the extent they are decipherable, the factual allegations against particular defendants.

[3]   The court takes judicial notice of the following decisions, orders, and judgments: (1) Family Court's Decision and Order dated March 29, 2013, (Dkt. No. 42, Attach. 13); (2) the June 5, 2014 Appellate Division Opinion and Order, (Dkt. No. 42, Attach. 14 at 1-3); (3) the September 11, 2014 Court of Appeals Opinion, (Dkt. No. 42, Attach. 14 at 4); (4) Family Court's Decision after Dispositional Hearing dated September 30, 2014, (Dkt. No. 42, Attach. 17); (5) the November 6, 2014 Family Court Order of Fact-Finding and Disposition, (Dkt. No. 42, Attach. 15); (6) K. Robertson's Notice of Appeal dated October 9, 2014, (Dkt. No. 42, Attach. 18); and (7) B. Robertson's Notice of Appeal dated November 19, 2014, (Dkt. No. 42, Attach. 16).

### 1. New York Family Court Procedural History

**\*2** Plaintiffs are the biological parents of minor daughter L.R. (Compl. at 76.) L.E. is the minor son of K. Robertson from a previous relationship, and B. Robertson is

his stepfather. (*Id.* at 100-01.) From 2011 through the commencement of the Family Court proceedings, plaintiffs resided together with L.R. and L.E. in Ellenville, New York. (*Id.* at 110-11.)

In March 2012, B. Robertson was designated a level three sex offender under New York's Sex Offender Registration Act (SORA). (*Id.* at 101-02; *see* N.Y. Correction Law art. 6-C. After an investigation, the Ulster County Department of Social Services (DSS) filed petitions alleging both plaintiffs neglected the children. (Compl. at 101-02.) DSS alleged that B. Robertson was a registered sex offender who resided with his two-year-old daughter and fourteen-year-old stepson. (*Id.* at 100-01.) DSS claimed that B. Robertson never participated in, or completed his sex offender treatment in violation of his post-release supervision. (*Id.*) DSS also alleged that K. Robertson allowed her husband unsupervised access to her son and daughter despite being a classified sex offender. (*Id.* at 102.) DSS contended that K. Robertson was aware that her husband was convicted of two sex crimes, which included vaginal intercourse with an eighteen-month-old child and placing his penis in the mouth of his other daughter who was two years old at the time. (*Id.*)

In March 2013, Family Court found that L.R. and L.E. had been neglected by plaintiffs for the reasons stated in the petition, and this finding was affirmed on appeal. (Dkt. No. 42, Attachs. 13, 14.) After a dispositional hearing, Family Court entered a final order. (Dkt. No. 42, Attach. 15.) The court ordered that B. Robertson be placed under the supervision of DSS for one year, have no visitation or contact with L.R. and only supervised telephone contact with L.E., attend and complete sex offender treatment, and comply with the court's order of protection. (*Id.* at 3-5.) The court granted K. Robertson custody of the children, placed her under the supervision of DSS for one year, and required her to attend counseling and to comply with the court's order of protection. (*Id.* at 8-9.) Plaintiffs separately filed notices of appeal, and the appeals remain pending. (Dkt. No. 42, Attachs. 16, 18.)

### 2. Jennifer Allen and Pamela Joern

Jennifer Allen, a case worker, and Pamela Joern, an attorney, are both employed by DSS. (Compl. at 77, 100.) Allen filed the above-referenced neglect petitions against plaintiffs. (*Id.* at 79-80, 88, 101.) At the fact-finding hearing in Family Court, Joern argued in her

Robertson v. Allen, Not Reported in Fed. Supp. (2016)

2016 WL 205381

opening statement that the evidence would establish the allegations in the neglect petitions. (*Id.* at 100.)

B. Robertson attended Christian counseling and asserts that it fulfills his mandatory sex offender treatment. (*Id.* at 83-84, 89.) Additionally, plaintiffs maintain there is "no credible evidence" that B. Robertson was left alone with the children. (*Id.* at 81.) In light of these facts, plaintiffs contend that Allen filed an illegal neglect petition, and Joern argued in support of the illegal neglect petition. (*Id.* at 91, 100.)

### 3. Marion Cocose and Pamela Joern
As required by New York law, *see* N.Y. Fam. Ct. Act § 249, Marion Cocose was appointed as attorney for the child L.R. (Compl. at 104.) During the Family Court proceedings, Cocose and Joern assisted each other by asking the witnesses questions that the other attorney forgot to ask. (*Id.*) Cocose and Joern communicated throughout the proceedings by passing notes and whispering. (*Id.*) On the basis of these facts, plaintiffs allege Cocose and Joern had a conflict of interest by colluding with each other and that Cocose failed to effectively represent L.R. because of such collusion. (*Id.* at 103-04.)

### 4. Michael Mauceri
**\*3** Mauceri represented B. Robertson at the Family Court proceedings apparently as his appointed counsel. (*Id.* at 87); *see* N.Y. Fam. Ct. Act § 262. B. Robertson informed Mauceri that DSS had filed an illegal neglect petition. (Compl. at 87.) B. Robertson drafted a motion to dismiss the petition and wanted Mauceri to file his motion. (*Id.* at 88.) Mauceri filed his own motion to dismiss, which was subsequently denied by Family Court. (*Id.* at 95.) During the fact-finding hearing, B. Robertson complained to the presiding judge, the Honorable Anthony McGinty, that Mauceri would not file a motion for summary judgment to dismiss the neglect petition. (*Id.*) Judge McGinty explained to B. Robertson that he already denied his attorney's motion to dismiss and the attorney would have a later opportunity to advocate for certain findings. (*Id.*) During the dispositional proceeding, Judge McGinty also sustained an objection to Mauceri's questioning of a witness and Mauceri abided by the court's ruling. (*Id.* at 96.) On the basis of these facts, plaintiffs contend that Mauceri ineffectively represented B. Robertson. (*Id.* at 94, 96-100.)

### 5. Judge McGinty
Judge McGinty presided over all phases of the Family Court proceedings against plaintiffs. (Dkt. No. 42, Attachs. 13, 15, 17.) Despite knowing of alleged violations that occurred during the Family Court proceedings, plaintiffs claim that Judge McGinty failed to remedy any of the conduct by Allen, Joern, Cocose, and Mauceri, *see supra* Part II.A.2-4. (Compl. at 94, 100, 104.)

### 6. Karen McGeeny
Karen McGeeny is a freelance transcriptionist who was the court reporter for the Family Court proceedings. Plaintiffs contend she falsified the transcripts of the Family Court proceedings. (*Id.* at 110.)

### 7. Cappy Weiner
Cappy Weiner is an attorney who represented plaintiffs at an unknown point in the Family Court proceedings. (*Id.*) Weiner's wife, Donna Weiner, works for Judge McGinty and plaintiffs allege Weiner had a conflict of interest because he did not inform them of his wife's employer. (*Id.*)

### B. Procedural History
Plaintiffs commenced this action on January 5, 2015 by filing a 156-page complaint. (*See generally* Compl.) Plaintiffs sent a summons and complaint by certified mail to all defendants except for Ulster County. (Dkt. No. 8.) Ulster County was not served by any method. Dr. Arp answered, asserted affirmative defenses, and cross-claimed against all defendants for indemnification or contribution. (Dkt. No. 26.) Gilday also answered and asserted affirmative defenses. (Dkt. No. 50.) All other defendants filed pre-answer motions to dismiss on various grounds. (Dkt. Nos. 15, 20, 42, 58.) Dr. Arp and Gilday subsequently filed their own motions, a motion for judgment on the pleadings and a motion to dismiss, respectively. (Dkt. Nos. 54, 67.)

### III. Standards of Review

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Robertson v. Allen, Not Reported in Fed. Supp. (2016)

2016 WL 205381

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss for lack of subject matter jurisdiction ... a district court ... may refer to evidence outside the pleadings." *Id.* "[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998).

**B. Motion to Dismiss for Lack of Personal Jurisdiction**

When a defendant calls personal jurisdiction into question by invoking Rule 12(b)(2), the plaintiff bears the burden of satisfying the court that it has jurisdiction over the moving defendant. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). In the absence of an evidentiary hearing, the plaintiff's "allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Id.* (internal quotation marks and citation omitted).

**C. Motion to Dismiss for Insufficient Service of Process**

**\*4** When a defendant moves to dismiss for insufficient service of process under Rule 12(b)(5) of the Federal Rules of Civil Procedure, "[t]he burden is on the plaintiff to establish that his service was not insufficient." *DiFillippo v. Special Metal Corp.*, 299 F.R.D. 348, 353 (N.D.N.Y. 2014) (internal quotation marks and citation omitted). "Conclusory statements that a defendant was properly served are insufficient to meet that burden." *Flemming v. Moulton*, No. 9:13-CV-1324, 2015 WL 5147035, at \*4 (N.D.N.Y. Sept. 1, 2015) (internal quotation marks and citation omitted). "In resolving the motion, the court must look to matters outside the complaint to determine what steps, if any, the plaintiff took to effect service." *Id.* (internal quotation marks and citation omitted). If service is deficient, "the court may, but is not required to, dismiss the action[, or] the court may grant leave to allow the plaintiff to cure the insufficiency." *DiFillippo*, 299 F.R.D. at 353 (internal quotation marks and citation omitted).

**D. Motion to Dismiss for Failure to State a Claim and Motion for Judgment on the Pleadings**

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 234 (2d Cir. 2012) (internal quotation marks and citation omitted). For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

**IV. Discussion**

**A. Subject Matter Jurisdiction**

County defendants argue that the court does not have jurisdiction over the action under the *Rooker-Feldman* and *Younger* doctrines. (Dkt. No. 42, Attach. 1 at 3-5.) Regarding the *Rooker-Feldman* doctrine, county defendants contend that plaintiffs ask the court to vacate the underlying Family Court order. (*Id.* at 4.) In reply, B. Robertson [4] does not address county defendants' arguments, but appears to assert that the court has both diversity and federal question jurisdiction. (Dkt. No. 70 at 5-7.)

[4]     Only B. Robertson signed the response to defendants' motions. As a *pro se* litigant, B. Robertson cannot represent the interest of other *pro se* parties. *See Snyder v. Perry*, No. 14-CV-2090, 2015 WL 1262591, at \*5 (E.D.N.Y. Mar. 18, 2015). Therefore, only B. Robertson, and not K. Robertson, responded to defendants' motions.

Under the *Rooker-Feldman* doctrine, a federal district court lacks jurisdiction over appeals from state court judgments. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). To determine if this doctrine applies, a court must assess whether the following four substantive and procedural requirements are met: (1) the plaintiff complains of an injury from a state court judgment; (2) the plaintiff seeks federal court review and rejection of the state court judgment and; (3) the federal action is commenced after the state court judgment; and (4) the same parties are in both suits. *See Hoblock*, 422 F.3d at 85, 89.

Robertson v. Allen, Not Reported in Fed. Supp. (2016)

2016 WL 205381

The *Younger* doctrine, on the other hand, requires a federal court to abstain where, "(1) there is an ongoing state proceeding; (2) an important state interest is implicated; and (3) the plaintiff has an avenue open for review of constitutional issues in the state court." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009) (internal quotation marks and citations omitted); *see also Younger v. Harris*, 401 U.S. 37 (1971). A federal court, however, may "intervene in a state proceeding upon a showing of bad faith, harassment or any other unusual circumstance that would call for equitable relief." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (internal quotation marks and citation omitted).

**\*5** First, the *Rooker-Feldman* doctrine divests this court of jurisdiction over some of plaintiffs' claims. It is clear that the neglect findings against both plaintiffs are final, (Dkt. No. 42, Attachs. 13, 14), and plaintiffs commenced this federal action after their state court appeals had been exhausted, (Compl.). It is similarly clear that plaintiffs filed the federal action against DSS, which was a party to the Family Court proceeding. (*Id.*) It also appears that plaintiffs allege they were statutorily and constitutionally injured by the neglect findings, and seek federal court review to vacate that order. (*Id.* at 77, 109.) Accordingly, the court is without jurisdiction over plaintiffs' claims against DSS attacking Family Court's neglect findings. *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) (holding that challenges to final state court custody, neglect, and visitation findings are precluded by *Rooker-Feldman*).

To the extent that plaintiffs challenge Family Court's dispositional orders, the court abstains under the *Younger* doctrine. First, this portion of the Family Court proceeding is ongoing as plaintiffs' appeals from the dispositional orders remain pending. (Dkt. No. 42, Attachs. 16, 18.); *see Kirschner v. Klemons*, 225 F.3d 227, 234 (2d Cir. 2000). Second, the suit concerns family relationships, which is a matter traditionally reserved for the state and raises important state interests. *See, e.g.*, *Fleming ex rel. Fleming v. Grosvenor*, No. 08-CV-3074, 2008 WL 3833589, at \*3 (E.D.N.Y. Aug. 15, 2008). Finally, plaintiffs may pursue their constitutional claims on appeal in state court. *See Hansel v. Town Court for Springfield*, 56 F.3d 391, 394 (2d Cir. 1995) (holding that state court review is inadequate under *Younger* only if a plaintiff is procedurally or technically barred from raising a constitutional injury). Furthermore, plaintiffs have not plausibly alleged that any exception to the *Younger* doctrine applies. *See Diamond "D" Constr. Corp.*, 282 F.3d at 198-202.

Plaintiffs' complaint, however, is not completely dismissed by either doctrine. Construing the pleading liberally, plaintiffs appear to allege injuries beyond or outside of Family Court's neglect finding or dispositional order and, thus, the complaint is not entirely dismissed on abstention grounds.

**B. Service**

Nearly all defendants move to dismiss for deficient service under either Rule 12(b)(2) or 12(b)(5) of the Federal Rules of Civil Procedure. (Dkt. No. 15, Attach. 21 at 3-7; Dkt. No. 20, Attach. 4 at 9-12; Dkt. No. 42, Attach. 1 at 2; Dkt. No. 58, Attach. 4 at 8-9; Dkt. No. 67, Attach. 2 at 2-3.) All argue that they were improperly served by certified mail, and, accordingly, the action should be dismissed. (Dkt. No. 15, Attach. 21 at 3-7; Dkt. No. 20, Attach. 4 at 9-12; Dkt. No. 42, Attach. 1 at 2; Dkt. No. 58, Attach. 4 at 8-9; Dkt. No. 67, Attach. 2 at 2-3.) In their complaint, plaintiffs aver that service was made pursuant to Rule 5 of the Federal Rules of Civil Procedure. (Compl. at 75-76.) In opposition to the motions, B. Robertson argues that New York allows service by certified mail under N.Y. C.P.L.R. § 312-a. (Dkt. No. 70 at 4.)

Service of process in a civil suit is governed by Rule 4 of the Federal Rules of Civil Procedure. *See Kurzberg v. Ashcroft*, 619 F.3d 176, 183 (2d Cir. 2010). Under Rule 4(e), the method for serving an individual within the United States is by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

Robertson v. Allen, Not Reported in Fed. Supp. (2016)

2016 WL 205381

**\*6** (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

New York allows for personal service of an individual by: (1) personal delivery; (2) "delivering and mailing"; or (3) serving a designated agent. N.Y. C.P.L.R. § 308(1)-(3); *see* Vincent C. Alexander, Practice Commentaries, McKinney's Cons. Laws of N.Y., C.P.L.R. § 308, C308:2-4. If service "cannot be made with due diligence" under either N.Y. C.P.L.R. § 308(1) or (2), then personal service may be effectuated by "affixing and mailing" the summons and complaint. N.Y. C.P.L.R. § 308(4); *see* Vincent C. Alexander, Practice Commentaries, McKinney's Cons. Laws of N.Y., C.P.L.R. § 308, C308:5. B. Robertson correctly notes that personal service may also be made by first class, certified mail under N.Y. C.P.L.R. § 312-a. However, for service to be complete, the defendant must return a signed acknowledgment of receipt to the plaintiff. *See* N.Y. C.P.L.R. § 312-a(b). Here, plaintiffs never mailed acknowledgments of receipt with their summons and complaints, and defendants never signed such an acknowledgment. (Dkt. No. 15, Attachs. 3-20; Dkt. No. 20, Attachs. 1-3; Dkt. No. 42, Attachs. 2-5; Dkt. No. 58, Attach. 3; Dkt. No. 67, Attach. 1.)

Plaintiffs also attempted to serve a corporation, state government subdivisions, and a county government, its subdivisions, and its officials. A corporation served within the United States must be served in the same manner as an individual under Fed. R. Civ. P. 4(e)(1) or:

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and — if the agent is one authorized by statute and the statute so requires — by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1)(B). A state government and its subdivisions must be served by either "delivering a copy of the summons and of the complaint to its chief executive officer" or "serving a copy of each in the manner prescribed by that state's law." Fed. R. Civ. P. 4(j)(2).

New York provides that service on the state must be made by either personal delivery to: (1) the Attorney General within the state or (2) an Assistant Attorney General at any office of the Attorney General within the state. *See* N.Y. C.P.L.R. § 307(1). Service on a state agency may be made by personal delivery on the person designated by the agency to receive service or by mailing via certified mail to such person and by personal delivery in accordance with N.Y. C.P.L.R. § 307(1). *See id.* § 307(2). New York requires that service upon a court be made by personal delivery to any judge sitting on that court. *See id.* § 312. Finally, to serve a New York county, county agency, or county official sued in his or her official capacity, a plaintiff must arrange for personal delivery on "the chair or clerk of the board of supervisors, clerk, attorney or treasurer" of that county. *Id.* § 311(a)(4); *see Baity v. Kralik*, 51 F. Supp. 3d 414, 430 (S.D.N.Y. 2014).

Here, plaintiffs attempted to serve individuals, the subdivisions of the state government, a county government and its subdivisions and officials, and a corporation. Plaintiffs did not comply with the service requirements for any of these defendants. *See supra* pp. 17-20. Rather, plaintiffs only sent a copy of the summons and the complaint by certified mail. (Compl. at 75; Dkt. No. 8.) Plaintiffs contend that they served defendants pursuant to Rule 5 of the Federal Rules of Civil Procedure. (Compl. at 75.) Rule 5, however, does not govern service of process of the original summons and complaint. *Compare* Fed. R. Civ. P. 4, *with* Fed. R. Civ. P. 5. Nor, as noted above, did plaintiffs fully comply with N.Y. C.P.L.R. § 312-a. Accordingly, plaintiffs did not properly serve any defendant.

**\*7** In actions commenced by *pro se* parties, courts liberally construe the requirements of service of process. *See Momot v. Derkowski*, No. 1:13-CV-987, 2014 WL 4637038, at *2 (N.D.N.Y. Sept. 16, 2014). Deficient service is harmless error if the defendant "has actual knowledge of the action and no prejudice results from the deficiency." *Id.* (internal quotation marks and citation omitted). Before the December 2015 amendment, a plaintiff had 120 days to serve a defendant after the complaint was filed. *See* Fed. R. Civ. P. 4(m) (amended Dec. 1, 2015). Courts must extend this time if a plaintiff

Robertson v. Allen, Not Reported in Fed. Supp. (2016)

2016 WL 205381

demonstrates "good cause" for failure to timely serve defendants. Fed. R. Civ. P. 4(m); *see Pride v. Summit Apartments*, No. 5:09-CV-861, 2010 WL 2521776, at 3 n.7 (N.D.N.Y. Jun. 16, 2010) (holding good cause existed, in part, because of plaintiff's *pro se* status and defendant was on notice of the action and not prejudiced by belated service).

Here, good cause exists to extend plaintiffs' time to effectuate service. Plaintiffs are *pro se* litigants who attempted to serve nearly all defendants by certified mail. Additionally, defendants are on notice of the action as they have appeared and filed motions to dismiss. Thus, defendants will not be prejudiced by remedial service.

## C. Failure to State a Claim & Judgment on the Pleadings

Nearly all defendants argue that plaintiffs do not meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and, thus, the action should be dismissed or the court should order a judgment on the pleadings in defendants' favor. (Dkt. No. 15, Attach. 21 at 7-9; Dkt. No. 20, Attach. 4 at 6-9; Dkt. No. 54, Attach. 9 at 6-8; Dkt. No. 58, Attach. 4 at 5-8; Dkt. No. 67, Attach. 2 at 4-8.) In reply, B. Robertson cites the general principles of pleading requirements. (Dkt. No. 70 at 5.)

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and, similarly, a Rule 12(c) motion for judgment on the pleadings calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Id.* at 677–78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679. To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does

require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *Transhorn, Ltd. v. United Techs. Corp.* (In re *Elevator Antitrust Litig.*), 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).

Pleadings drafted by *pro se* plaintiffs must be construed liberally and held to lesser standards than those drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As such, reading a *pro se* complaint, the court must "interpret [the complaint] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (internal quotation marks and citation omitted). However, the "special solicitude" afforded to *pro se* litigants does not allow courts to read into a pleading claims that are inconsistent with the pleading's allegations, nor does it "exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citation omitted).

**\*8** After reviewing plaintiffs' hefty and cluttered complaint, the court has deciphered two claims: a Fourteenth Amendment substantive due process claim and a state law ineffective assistance of counsel claim.[5] For the reasons below, these claims are dismissed. Additionally, allegations against certain defendants are dismissed for more fundamental reasons as discussed below.

[5]     In response to defendants' motions, B. Robertson more definitively outlines his factual allegations as they relate to specific defendants. (Dkt. No. 70 at 8-16.) While B. Robertson's opposition motion may be treated as effectively amending the complaint, *see Darvie v. Countryman*, No. 9:08-CV-0715, 2009 WL 161219, at \*4 (N.D.N.Y. Aug. 11, 2008), the court declines to do so here because it would be unduly cumbersome and K. Robertson did not sign the opposition to the motions.

### 1. 14th Amendment Substantive Due Process

Plaintiffs allege defendants interfered with their family in violation of their substantive due process rights under the Fourteenth Amendment. (*See generally* Compl.) "Parents have a substantive right under the Due Process Clause to remain together [with their children] without the coercive interference of the ... state." *Southerland v. City*

Robertson v. Allen, Not Reported in Fed. Supp. (2016)

2016 WL 205381

*of New York*, 680 F.3d 127, 142 (2d Cir. 2011) (internal quotation marks and citation omitted). Yet, "this interest is counterbalanced by the compelling governmental interest in the protection of minor children, particularly ... where the protection is considered necessary as against the parents themselves." *Id.* at 152 (internal quotation marks and citation omitted). A claim is only actionable if interference with a parent's liberty right is "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Id.*

Here, plaintiffs do not direct their claim to any particular defendant, but generally argue that their substantive due process rights have been violated because B. Robertson can no longer reside with his children pursuant to a Family Court order. (Compl. at 43-46, 149.) Although plaintiffs contend that the allegations in the neglect petition were false, Family Court found that plaintiffs neglected their children because B. Robertson posed a risk to his children as he was a level three sex offender convicted of sex crimes against minors. (Dkt. No. 42, Attach. 13 at 17-22.) In fact, B. Robertson conceded that he was a registered sex offender, and K. Robertson acknowledged his designation and still allowed him to reside with her minor children. (Compl. at 103, 111.) Thus, plaintiffs fail to demonstrate that the Family Court order was at all shocking, arbitrary, or egregious. Consequently, plaintiffs fail to state a substantive due process claim.

### 2. *Ineffective Assistance of Counsel*

Plaintiffs allege ineffective assistance of counsel claims against Mauceri, B. Robertson's Family Court counsel, and Cocose, L.R.'s court-appointed counsel. (Compl. at 94, 96-99, 104.) As an initial matter, *pro se* litigants, who are not licensed attorneys, may not represent another's interest in federal court. *See Machadio v. Apfel*, 276 F.3d 103, 106 (2d Cir. 2002). As such, "a parent not admitted to the bar cannot bring an action *pro se* ... on behalf of his or her child." *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). Thus, plaintiffs lack standing to assert their daughter's claims, and the court dismisses claims against Cocose asserted on behalf of L.R.

**\*9** Traditionally, there is no right to counsel in a civil case and client grievances must be pursued through separate malpractice actions. *See James v. United States*, 330 F. App'x 311, 313 (2d Cir. 2009). New York law, however, provides the right to counsel in neglect proceedings in

Family Court. *See* N.Y. Fam. Ct. Act § 262(a)(iv). Thus, a client has cognizable claim for ineffective assistance if the client demonstrates that he or she received less than meaningful representation and suffered actual prejudice as a result. *See Matter of Julian P.* (*Colleen Q.*), 129 A.D.3d 1222, 1224 (3d Dep't 2015). Nonetheless, because all other claims are dismissed as discussed above and below, the court declines to exercise its supplemental jurisdiction over plaintiffs' state ineffective assistance claim. *See* 28 U.S.C. § 1367(c)(3).

### 3. *42 U.S.C. § 1983*

Plaintiffs appear to allege claims pursuant to 42 U.S.C. § 1983 against all defendants. (*See generally* Compl.) At the outset, a plaintiff must allege that a defendant is personally involved in the allegedly unconstitutional conduct to prevail on a Section 1983 claim. *See Grullon v. City of New Haven*, 720 F.3d 133, 138-39 (2d Cir. 2013). Here, plaintiffs fail to allege the personal involvement of defendants Roche, Jackson, Hein, Dr. Arp, Shelton, Iapoce, and Stein, and, consequently, these claims are dismissed.

### 4. *Eleventh Amendment Immunity*

Plaintiffs allege claims against defendants Ulster County Family Court, State of New York Office of the Attorney General, New York State Commission on Judicial Conduct, and New York State Division of Criminal Justice Services.[6] (Compl. at 1.) The Eleventh Amendment bars all federal court actions "against a state or its agencies absent a waiver of immunity or congressional legislation specifically overriding immunity." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010). Because New York has not waived its immunity as to any of the claims alleged and these defendants are arms of the state, the claims are dismissed. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Gollomp v. Spitzer*, 568 F.3d 355, 365-67 (2d Cir. 2009); *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004).

6       Plaintiffs named the New York State Attorney General's Office and the New York Department of Criminal Justice System as defendants in their complaint. (Compl.) State defendants contend there are not properly named state agencies. (Dkt. No. 15, Attach. 21 at 1.) The court agrees and substitutes the above-referenced names. State defendants also

Robertson v. Allen, Not Reported in Fed. Supp. (2016)

2016 WL 205381

claim that plaintiffs incorrectly sued the New York State Bar Association rather than the Committee on Professional Standards for the Third Judicial Department, (*id.*); however, there is no indication in plaintiffs' complaint that this was their intent.

### 5. *Judicial Immunity*

Plaintiffs assert numerous claims against Judge McGinty essentially alleging bias and failure to correct alleged violations that occurred during the Family Court proceedings. (*See generally* Compl.) Plaintiffs contend that Judge McGinty does not have judicial immunity because Family Court did not have jurisdiction over a proceeding commenced by an allegedly illegal neglect petition. (*Id.* at 106.) Judges have absolute immunity from liability for their judicial actions, *see Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009), and are subject to liability only for non-judicial actions or judicial actions "taken in the complete absence of all jurisdiction," *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Accordingly, "even allegations of bad faith or malice cannot overcome judicial immunity" for a judge's official actions. *Bliven*, 579 F.3d at 209. As a Family Court judge, Judge McGinty clearly had jurisdiction over the neglect proceedings even if the allegations within the petitions proved to be false. *See Stump v. Sparkman*, 435 U.S. 349, 357 n.7 (1978). Accordingly, he is absolutely immune from liability, and plaintiffs' claims against him are dismissed.

### 6. *Absolute Immunity for DSS Attorneys and Caseworkers*

**\*10** Plaintiffs allege that Allen, a DSS caseworker, and Joern, a DSS attorney, filed false neglect petitions against them in violation of the law. (Compl. at 77-78, 100.) "[A]gency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." *Butz v. Economou*, 438 U.S. 478, 515 (1978). Attorneys who "initiate[ ] and prosecute[ ] child protective orders and represent[ ] the interests of [DSS] in Family Court [are] entitled to absolute immunity" from section 1983 liability. *Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) (internal quotation marks and citation omitted). Accordingly, Joern is absolute immune from suit for her representation of DSS in the Family Court proceedings.

Although caseworkers are generally entitled to qualified immunity for their investigative duties, *see id.*, plaintiffs, here, complain that Allen filed a false neglect petition. This

alleged conduct is more analogous to that of a prosecutor than an investigator, and, thus, Allen is also entitled to absolute immunity. *See Emerson v. City of New York*, 740 F. Supp. 2d 385, 392-93 (S.D.N.Y. 2010) (holding that caseworkers were absolutely immune from suit for filing abuse and neglect petitions).

### 7. *Other Claims*

To the extent that plaintiffs allege additional claims, such claims are dismissed under Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a) requires that plaintiffs provide defendants with adequate notice of the claims alleged against them. *See Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004). Adequate notice is "that which will enable the adverse party to answer and prepare for trial." *Id.* (internal quotation marks and citation omitted). Although plaintiffs' complaint put defendants on notice of certain claims, *see supra* Part IV.C.1-2, the remainder of the complaint is ambiguous, confusing, and vague, and requires dismissal. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Nonetheless, because plaintiffs are *pro se* litigants, the court grants plaintiffs leave to amend their complaint in compliance with this order.

### V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motions (Dkt. Nos. 15, 20, 42, 54, 58, 67) are **GRANTED** as follows:

**GRANTED** with respect to claims challenging Family Court's neglect finding or dispositional order against Ulster County Department of Social Services, which are **DISMISSED WITH PREJUDICE**; and

**GRANTED** with respect to claims pursuant 42 U.S.C. § 1983 against defendants Melissa Roche, Jillian E. Jackson, Esq., Michael Hein, Dr. Rebecca Arp, Lawrence R. Shelton, Esq., Michael Iapoce, and Ted J. Stein, Esq., which are **DISMISSED WITHOUT PREJUDICE**, and the Clerk is directed to terminate the parties from this action; and

**GRANTED** with respect to all claims against defendants Ulster County Family Court, the State of New York Office of the Attorney General, New York State

**Robertson v. Allen, Not Reported in Fed. Supp. (2016)**

2016 WL 205381

Commission on Judicial Conduct, and New York State Division of Criminal Justice Services, which are **DISMISSED WITH PREJUDICE**, and the Clerk is directed to terminate these parties from this action; and

**GRANTED** with respect to all claims against defendant Judge Anthony McGinty, which are **DISMISSED WITH PREJUDICE**, and the Clerk is directed to terminate this defendant from this action; and

**GRANTED** with respect to claims pursuant to 42 U.S.C. § 1983 against defendants Jennifer Allen and Pamela Joern, Esq., which are **DISMISSED WITH PREJUDICE**; and

**GRANTED** with respect to all claims raised on behalf of L.R. against Martin B. Cocose, Esq., which are **DISMISSED WITH PREJUDICE**; and

**GRANTED** with respect to plaintiffs' state law ineffective assistance of counsel claim against Michael C. Mauceri, Esq., which is **DISMISSED WITHOUT PREJUDICE**; and

**\*11 GRANTED** with respect to plaintiffs' Fourteenth Amendment substantive due process claim, which is **DISMISSED WITH PREJUDICE**; and

**GRANTED** with respect to all other claims against the remaining defendants: Ulster County, Ulster County Public Defenders Office, Andrew J. Gilday, Esq., Stein Legal Services, Karen McGeeney, New York State Bar Association, Donna Weiner, Cappy Weiner, which are

**DISMISSED WITHOUT PREJUDICE**, and the Clerk is directed to terminate these defendants; and it is further

**ORDERED** that Dr. Arp's cross claims (Dkt. No. 26) are **DISMISSED**; and it is further

**ORDERED** that claims by and against Dr. Arp are further **DISMISSED** pursuant to Fed. R. Civ. P. 25(a); and it is further

**ORDERED** that plaintiffs are granted leave to file an amended complaint in full compliance with the Local Rules within thirty (30) days of the date of this Order; and it is further

**ORDERED** that should plaintiffs file an amended complaint they must serve the named defendants according to Fed. R. Civ. P. 4; and it is further

**ORDERED** that should plaintiffs fail to file an amended complaint, the Clerk shall close this case without further order, and it is further

**ORDERED** that the Clerk provide a copy of this Order to the parties in accordance to the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 205381

---

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 2306493
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

May OGDEN, Plaintiff,
v.
MARSHALL COUNTY DEPARTMENT
OF SOCIAL SERVICES, Defendant.

Civil Action No. 3:18-CV-0373 (BKS/DEP)
|
Signed 04/10/2018

**Attorneys and Law Firms**

MAY OGDEN, 39 St. John Ave, 3rd Floor, Binghamton, NY 13905, pro se

ORDER, REPORT, AND, RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** This is a civil rights action brought by *pro se* plaintiff May Ogden pursuant to 42 U.S.C. § 1983. Although her complaint identifies the Marshall County (Alabama) Department of Social Services as the named defendant, plaintiff's claims center upon a determination by the Marshall County, Alabama Juvenile Court terminating her parental rights with respect to her five children.

Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been forwarded to me for review. Although I find that plaintiff qualifies for leave to proceed without prepayment of fees, because her claims are precluded by the domestic relations exception to federal court jurisdiction and the *Rooker-Feldman*[1] doctrine, I recommend that her complaint be dismissed without leave to replead.

[1]    *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

I. BACKGROUND
Plaintiff commenced this action on March 27, 2018. Dkt. No. 1. Plaintiff's complaint names the Marshall County Department of Social Services, Child Protective Services,

located in Guntersville, Alabama, as the sole defendant.[2] *Id.* at 1. In her complaint, plaintiff alleges that her rights were violated when, on petition of defendant, her five children were removed from her custody and her parental rights terminated by order issued by Marshall County, Alabama Juvenile Court Judge John M. Mastin on the ground of abandonment. *Id.* at 1-11. As relief, in her complaint plaintiff seeks a retrial of the proceeding during which her parental rights were terminated. *Id.* at 7.

[2]    A municipal department has no separate legal existence and therefore is not separately amenable to suit. *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999). Because in part II.B.2. of this report I recommend that the action be dismissed based on a lack of subject matter jurisdiction, however, I have not recommended the substitution of a proper defendant.

Plaintiff's complaint is accompanied by an application for the appointment of counsel and an IFP application. Dkt. Nos. 2, 3. Those documents reflect that plaintiff's only sources of income are food stamps in the sum of $45 and disability payments in the amount of $750. *Id.*

II. DISCUSSION

A. Plaintiff's IFP Application
When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that she is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).[3] In this instance, because I conclude that plaintiff meets the requirements for IFP status, her application for leave to proceed without prepayment of fees is granted.[4]

[3]    The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367

(Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

4    Plaintiff is reminded that, although her IFP application has been granted, she will still be required to pay fees that she incurs in this action, including copying and/or witness fees.

### B. Sufficiency of Plaintiff's Complaint

#### 1. Standard of Review

**\*2** Because I have found that plaintiff satisfies the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in her complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision

that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

#### 2. Analysis

**\*3** As was stated earlier, the primary thrust of the complaint in this action is a challenge to an Alabama court determination terminating plaintiff's parental rights with respect to her five children. Two separate legal doctrines require dismissal of plaintiff's complaint. The first concerns the domestic relations exception to federal court jurisdiction. Indeed, federal district courts are courts

of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). In accepting matters for adjudication, district courts must insure that the subject matter requirement is met, and may raise the question of jurisdiction *sua sponte* at any point in the litigation. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 107 (2d Cir. 1997) ("[A] challenge to subject matter jurisdiction ... may be raised ... *sua sponte.*" (quotation marks and alterations omitted) ). "Where jurisdiction is lacking, ... dismissal is mandatory." *United Food & Commercial Workers Union, Local 919, AFL–CIO v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Plaintiffs' federal claims in this action are brought under 42 U.S.C. § 1983, and are couched in terms of constitutional deprivations. *See generally* Dkt. No. 1. Ordinarily, the court would possess subject matter jurisdiction over such claims. 28 U.S.C. §§ 1331, 1343. A judicially recognized exception to federal subject matter jurisdiction exists, however, in matters involving domestic relations. *Ankenbrandt v. Richards*, 504 U.S. 689, 701-04 (1992); *Thomas v. N.Y.C.*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has "recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.' " [5] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004) (quoting *Ankenbrandt*, 504 U.S. at 703).

[5]      "[A]lthough the domestic relations exception originated in the context of diversity cases, some courts have applied the exception in cases based upon federal question jurisdiction since the policy considerations which underlie the domestic relations exception may apply with equal force in cases arising under the court's federal question jurisdiction." *Thomas*, 814 F. Supp. at 1146 (citations omitted).

The exception recognizes that "the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack." *Thomas*, 814 F. Supp. at 1146 (citing *Ankenbrandt*, 504 U.S. at 703-04). "The doctrine also rests on the idea that state courts are peculiarly suited to enforce state regulations and domestic relations decrees involving

alimony and child custody particularly in light of the fact that such decrees often demand substantial continuing judicial oversight." *Id.*

While plaintiff has invoked her constitutional rights in this case, it is clear from her complaint that the primary thrust of her claims is aimed at regaining custody of her children. *See, e.g.,* Dkt. No. 1 at 7 (requesting a rehearing concerning whether she is fit to maintain custody of her children and "immediate [sic] return of the children to [her] care"). As the Second Circuit has noted, where tort claims "begin and end in a domestic dispute," state courts are better suited to adjudicate the claims. *See Schottel v. Kutyba*, No. 06-1577, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009) (affirming, based on the domestic relations exception, the district court's dismissal of the plaintiff's complaint alleging, *inter alia*, that the defendants "fraudulently misrepresented to the court the former couple's residence in order to file divorce proceedings in New York," and, as a result, plaintiff was "deprived of custody and visitation rights"). Because the complaint in this case concerns state law domestic relations matters, and in particular, because plaintiff seeks to have determinations regarding custody overturned and the return of their children, I recommend the complaint be dismissed for lack of subject matter jurisdiction. *Schottel*, 2009 WL 230106, at *1; *Chadee v. Kaufman*, No. 12-CV-3098, 2012 WL 2564408, at *2 (E.D.N.Y. June 26, 2012) (dismissing the plaintiff's claims challenging the order granting custody of her child to the father, notwithstanding the fact that the plaintiff had invoked her constitutional rights); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 519-20 (E.D.N.Y. Mar. 29, 2010) (dismissing those claims that (1) claim injury from the family court's custody orders, (2) allege breach of custody agreement, and (3) challenge the specific placement of a child pursuant to the family court's order).

**\*4** The second impediment to plaintiff's pursuit of claims in this action is the *Rooker-Feldman* doctrine. That doctrine recognizes that, except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). Under the *Rooker-Feldman* doctrine, a district court lacks jurisdiction to consider a plaintiff's claim when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state

court judgment was entered before the plaintiff's federal suit commenced." *McKithen*, 626 F.3d at 154 (citation omitted). The *Rooker-Feldman* doctrine relates to "lack of subject matter jurisdiction, and may be raised at any time by either party or sua sponte by the court." *Moccio v. N.Y.S. Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

This preclusion "merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, a role that Congress has reserved to [the Supreme Court]." *Verizon Md. Inc. v. Public Svc. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002). In other words, district courts do not have jurisdiction to hear cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

"A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment 'simply by casting his complaint in the form of a civil rights action.' " *Rabinowitz v. N.Y.*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993) ). "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *McKithen*, 481 F.3d at 97 (quotation marks omitted).

Because the gravamen of plaintiff's complaint challenges an Alabama court determination regarding custody, plaintiff's claims are precluded by the limitation on this court's jurisdiction. Accordingly, I recommend that plaintiff's complaint in this action be dismissed.

### C. Whether to Permit Amendment
Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine*

*Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

**\*5** In this instance, the deficiencies identified in this report are substantive in nature and extend beyond the mere sufficiency of plaintiff's complaint. Accordingly, because I find that any amendment that might be offered by plaintiff would be futile, I recommend against granting her leave to amend. [6]

6    Even if plaintiff's claims in this action were not subject to dismissal based on lack of subject matter jurisdiction as described above in part II.B.2., dismissal is also likely appropriate based upon the lack of personal jurisdiction over a county in Alabama. *See generally* N.Y. C.P.L.R. § 302; *Int'l Shoe v. State of Wash., Office of Unemp't Comp. & Placement*, 326 U.S. 310 (1945).

### D. Motion to Appoint *Pro Bono* Counsel
Accompanying plaintiff's complaint and IFP application is a motion for the appointment of *pro bono* counsel. Dkt. No. 3. In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in determining whether to grant a request for the appointment of *pro bono* counsel. In particular, the court should first determine whether the plaintiff's position seems likely to be of substance. *Terminate Control Corp.*, 28 F.3d at 1341 (citing *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986) ). If the claim meets this threshold requirement, the court should then consider a number of other factors, including the following:

the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986); *accord, Terminate Control Corp.*, 28 F.3d at 1341. Of these criteria, the Second Circuit has "stressed the importance of the apparent merits of the indigent's claims." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989). While a plaintiff need not demonstrate that she can win her case without the aid of counsel, she does have to show "likely merit." *McDowell v. State of N.Y.*, No. 91-CV-2440, 1991 WL 177271, at *1 (S.D.N.Y. 1991).

In this case, as discussed above in part II.B.2., plaintiff's claims in this action are subject to dismissal based on the court's lack of subject matter jurisdiction over the claims asserted in plaintiff's complaint. Accordingly, I find that plaintiff has not demonstrated entitlement to the appointment of counsel and, therefore, her request is denied.

## III. SUMMARY, ORDER, AND RECOMMENDATION

Based upon a review of plaintiff's IFP application, I find that she qualifies for leave to proceed in this action without prepayment of fees. Turning to the merits of

plaintiff's complaint, however, I conclude that her claims are barred by the domestic relations exception to this court's jurisdiction and the *Rooker-Feldman* doctrine.

Accordingly, it is hereby

ORDERED that plaintiff's motion for leave to proceed in this action *in forma pauperis* (Dkt. No. 2) is GRANTED, and her application for the assignment of counsel (Dkt. No. 3) is DENIED based upon the recommendation set forth below; and it is further respectfully

**\*6** RECOMMENDED that plaintiff's complaint in this action (Dkt. No. 1) be DISMISSED in all respects without leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [7] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

[7]    If you are proceeding *pro se* and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report, and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

## All Citations

Slip Copy, 2018 WL 2306493

2018 WL 3748156
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Arlene MEYERS, Plaintiff,

v.

Hon. Matthew G. HUGHES, Gary Rosenthal,
Pat Alheidt, Jacob Kutnicky, Margaret Mary
Trainor, Carolyn King, Ademola Kolawak,
Thomas W. McNally, Loretta Meyers, Defendants.

18-CV-4399 (JS) (GRB)
|
Signed 08/07/2018

**Attorneys and Law Firms**

Arlene Meyers, 87-31 164th Street, Jamaica, NY 11432,
pro se.

No appearances for Defendants.

MEMORANDUM & ORDER

Joanna Seybert, U.S.D.J.

 **\*1** On July 26, 2018, Arlene Meyers ("Meyers" or
"Plaintiff"), acting pro se, filed a Complaint in the
United States District Court for the Southern District
of New York together with an application to proceed in
forma pauperis and an application seeking "Immediate
Emergency Relief." By Transfer Order also dated July
26, 2018, Chief United States District Judge Colleen
McMahon transferred the case to this Court and, on
August 3, 2018, it was assigned to the undersigned. This
action seeks to challenge rulings concerning visitation
with and custody of Plaintiff's daughter made during
an on-going neglect action brought by the Department
of Social Services in the Family Court of the State
of New York, County of Suffolk ("State Court")
under Docket Numbers NN-8154-16, NN-8166-16, and
NN-8154-16/17C. By Electronic Order dated August 6,
2018, Plaintiff's Motion for Emergency Relief was denied.

For the reasons that follow, Plaintiff's application to
proceed in forma pauperis is GRANTED. However,
the Complaint is sua sponte DISMISSED WITHOUT

PREJUDICE for lack of subject matter jurisdiction
pursuant to FED. R. CIV. P. 12(h)(3).

BACKGROUND [1]

[1]   Excerpts from the Complaint are reproduced here
exactly as they appear in the original. Errors in
spelling, punctuation, and grammar have not been
corrected or noted.

Plaintiff's brief, handwritten Complaint is submitted
on the Southern District's general complaint form and
seeks to challenge rulings made in an underlying state
court child neglect case, including a temporary order of
removal granting sole custody of her daughter to Loretta
Meyers, who is alleged to be Plaintiff's adoptive mother. [2]
(See Compl., Docket Entry 2.) Although difficult to
comprehend, Plaintiff claims a "due process violation/
forced trial by porgery, right to fair/hearing/trial violation
right to raise child, kidnapping, freedom of speech
violation." (Comp. ¶ I.) In its entirety, Plaintiff statement
of facts alleges:

> Matthew Hughes knowingly and
> unlawfully allowed bribery and
> purgery in his courtroom wherein
> my daughter was left in the care of a
> documented child molester/abuser.
> Then unlawfully withheld from me
> while falsely claiming permanent
> neglect on my behalf. Carolyn King,
> Pat Alheidt, Ademola Kolawale
> broke Social Service Law 378-
> a by disregarding a criminal
> background before placing a child,
> also withholding primary evidence
> stifling case progression. Also
> purgerizing testimonies under oath
> and lying in legal documentation
> furthermore accused me, plaintiff
> of forging government paperwork
> in order to stop my child from
> returning for financial gain. Thomas
> McNally, Margaret Trainor—
> forcing me into a trial! Gary
> Rosenthal and Jacob Kutnicky are
> attorneys who unlawfully stole legal

documents, coached testimonies, and withheld evidence in order to deceive the courts and try to make way legally to give my child into a harmful environment. Loretta Meyers is my adoptive mother who adopts and fosters children for financial gain while neglecting and physically abusing them and has been known to pay off officials.

**\*2** (Compl. ¶ III.) In the space on the form Complaint that calls for a description of any claimed injuries, Plaintiff alleges that she was

assaulted by 3 family court officers and incarcerated suffering a concussion, corneal abrasions, fractured bone underneath my eye and semi-permanent swelling in bruising to my left eye. Forced to plead guilty in order to return to fight for my child.

(Compl. ¶ III.) For relief, Plaintiff alleges that she

was a 23 year old woman with no criminal history and suddenly began to accumulate criminal charges. Putting forth respectfully emotional distress claim, slander, and loss of wages seeing as I lost 3 jobs coming back and forth to Court. Also seeking immediate return of my daughter and police brutality by physical harm.

(Compl. ¶ IV.)

2    Annexed to the Complaint are an additional sixty-five pages of exhibits which appear to be copies of documents filed in the underlying family court case.

## DISCUSSION

### I. In Forma Pauperis Application

Upon review of Plaintiff's declarations in support of her application to proceed in forma pauperis, the Court finds that Plaintiff is qualified to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's request to proceed in forma pauperis is GRANTED.

### II. Application of 28 U.S.C. § 1915

Section 1915 of Title 28 requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). The Court is required to dismiss the action as soon as it makes such a determination.

Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While " 'detailed factual allegations' " are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Further, a district court has the inherent power to dismiss a case, sua sponte, if it determines that the court lacks jurisdiction over the matter. FED. R. CIV. P. 12(h)(3).

### III. The Domestic Relations Exception Bars Plaintiff's Claims

Under the domestic relations exception, "divorce, alimony, and child custody decrees" remain outside federal jurisdictional bounds. Marshall v. Marshall, 547 U.S. 293, 308, 126 S. Ct. 1735, 1746, 164 L.Ed. 2d 480, 495 (2006) (internal quotation marks and citation omitted); Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (dismissing pro se complaint seeking to challenge state court child custody order because federal court review was barred by the domestic relations exception) (citing Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S. Ct. 2206, 2214-15, 119 L.Ed. 2d 468 (1992); Mitchell-Angel v. Cronin, 101 F.3d 108 (2d Cir. 1996) (unpublished opinion); American Airlines v. Block, 905 F.2d 12, 14 (2d Cir. 1990) ). This exception is based upon a "policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which the federal courts lack." Thomas v. N.Y. City, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

**\*3** As is readily apparent, Plaintiff's claims here seek to challenge determinations in the state family court: (1) placing her child in the custody of the Department of Social Services who, in turn, has placed the child with Plaintiff's adoptive mother, Loretta Meyers; and (2) limiting Plaintiff's visitation with her daughter. Such claims unquestionably implicate the judicially recognized exception to federal subject matter jurisdiction in cases involving domestic relations. Specifically, the Supreme Court has recognized "that [t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." Ankenbrandt, 504 U.S. at 703, 112 S. Ct. at 2214 (internal quotation marks and citation omitted); Sobel v. Prudenti, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees.") (internal quotation marks and citation omitted); see also Hernstadt v. Hernstadt, 373 F.2d 316, 317 (2d Cir. 1967) ("Since the very early dicta [of] In re Burrus, 136 U.S. 586, 10 S. Ct. 850, 34 L.Ed. 500 (1890), it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and, a fortiori, rights of visitation.").

Although Plaintiff styles some of her claims as raising constitutional issues, the allegations stem from a state domestic relations matter and are thus outside this Court's jurisdiction. McArthur v. Bell, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) (former husband's 42 U.S.C. § 1983 action in which he claimed that his constitutional rights were violated in proceedings in which former wife obtained upward adjustment of child support would require the court to "re-examine and re-interpret all the evidence brought before the state court" in the earlier state proceedings and, therefore, the district court did not have subject matter jurisdiction) (citing Neustein v. Orbach, 732 F. Supp. 333 (E.D.N.Y. 1990) (district court lacked jurisdiction because it could not resolve factual disputes connected to domestic relations) ); see also Sullivan v. Xu, 10-CV-3626, 2010 WL 3238979, at *2 (E.D.N.Y. Aug. 13, 2010) (no jurisdiction over the plaintiff's challenges to child custody and child support orders).

Accordingly, because Plaintiff seeks a determination that she was improperly denied custody and/or visitation with her child, the Court lacks jurisdiction and this action is barred by the domestic relations exception to this Court's jurisdiction. The Complaint is thus DISMISSED pursuant to FED. R. CIV. P. 12(h)(3). See Neustein, 732 F. Supp. at 339 (an action is barred by domestic relations exception if, "in resolving the issues presented, the federal court becomes embroiled in factual disputes concerning custody and visitation....").

## IV. The Rooker-Feldman Doctrine Also Bars Plaintiff's Claims

Even if Plaintiff's Complaint was not barred by the domestic relations exception, the Rooker-Feldman doctrine precludes review of Plaintiff's claims in this Court. Coalescing the Supreme Court's holdings in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L.Ed. 2d 206 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-17, 44 S. Ct. 149, 150, 68 L.Ed. 362 (1923), the Rooker-Feldman doctrine prohibits federal district courts from considering collateral attacks to state court judgments. There are four requirements for the application of the Rooker-Feldman doctrine: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff's injuries must be caused by the state court judgment; (3) the plaintiff's claims must invite the district court to review and reject the state court judgment; and (4) the state-court judgment must have been rendered prior to the commencement of the district court proceedings. See Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). "A plaintiff may not overcome the doctrine and seek a reversal of a state

court judgment simply by casting his [or her] complaint in the form of a civil rights action." [Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004)](internal quotation marks and citation omitted).

**\*4** Here, Plaintiff's allegations seek to collaterally attack the state court's orders against Plaintiff relating to the custody and visitation of her daughter. Plaintiff who has lost in state court and who now complains of injuries caused by the state court, invites this Court to review and reject the state court orders, all of which were issued on or before January 11, 2018, well before Plaintiff filed her Complaint in this Court on July 26, 2018. [3] Thus, because all of the Rooker-Feldman requirements are satisfied, the Court lacks jurisdiction to adjudicate Plaintiff's claims. Accordingly, the Complaint is DISMISSED pursuant to [FED. R. CIV. P. 12(h)(3)](https://...) on the additional ground that the Rooker-Feldman doctrine divests this Court of jurisdiction.

[3]      See Compl. at ECF p. 39, ¶ 5, referencing the Permanency Hearing Order, dated Jan. 11, 2018, continuing the placement of the child in the custody of the Department of Social Services.

V. Leave to Amend

Given the Second Circuit's guidance that a pro se complaint should not be dismissed without leave to amend unless amendment would be futile, [Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)](https://...), the Court has carefully considered whether leave to amend is warranted here. Because the defects in Plaintiff's claims is substantive and would not be cured if afforded an opportunity to amend, leave to amend the Complaint is DENIED.

CONCLUSION

For the reasons set forth above, Plaintiff's application to proceed in forma pauperis is GRANTED. However, the Complaint is sua sponte DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction pursuant to [FED. R. CIV. P. 12(h)(3)](https://...).

The Court certifies pursuant to [28 U.S.C. § 1915(a)(3)](https://...) that any appeal from this Order would not be taken in good faith and therefore leave to appeal in forma pauperis is DENIED for the purpose of any appeal. See [Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L.Ed. 2d 21 (1962)](https://...).

SO ORDERED.

**All Citations**

Slip Copy, 2018 WL 3748156